# EXHIBIT A

19STCV02732

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Michael Stern

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 11:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk

QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (Bar No. 90378)
johnquinn@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Aaron Perahia (Bar No. 304554)
aaronperahia@quinnemanuel.com
Rukayatu Tijani (Bar No. 320756)
rukayatutijani@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**LOS ANGELES COUNTY**

PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST BRANDS, LLC, a Delaware limited liability corporation; KANYE WEST, an individual; and YE WORLD PUBLISHING, INC., a Delaware corporation, also doing business as YE WORLD MUSIC,

Plaintiffs,

vs.

EMI APRIL MUSIC, INC., a Connecticut corporation; EMI BLACKWOOD MUSIC, INC., a Connecticut corporation; and DOES 1-10,

Defendants.

Case No.

**COMPLAINT FOR:**

1. **DECLARATORY RELIEF**
2. **RESTITUTION/UNJUST ENRICHMENT**
3. **CONSTRUCTIVE TRUST**

Plaintiffs Please Gimme My Publishing, Inc., West Brands, LLC, Ye World Publishing, Inc., Ye World Music, and Kanye West ("Plaintiffs"), for their complaint against EMI April Music, Inc. and EMI Blackwood Music, Inc. ("EMI"), and Does 1-10, allege as follows:

**NATURE OF THE DISPUTE**

1. Kayne West brings this action to obtain his freedom from a contract with EMI that he has been laboring under since 2003. Even if the contract were not lopsided in EMI's favor (it is), even if its terms valued Mr. West's artistic contributions in line with the spectacular success he has achieved for EMI (they do not), and even if EMI had not underpaid Mr. West what it owes him (EMI has), he would be entitled to be set free from its bonds. California law, as embodied in Labor Code section 2855, prohibits EMI from enforcing obligations under a personal services contract more than seven years after the commencement of services under that contract. Yet that is exactly what EMI has knowingly, misleadingly, and unlawfully done to control and exploit one of the world's most iconic, multi-faceted, and productive talents.

2. It makes no difference under section 2855 whether the contract is otherwise fair, or whether the employer has fulfilled its end of the bargain. It matters only whether the services began more than seven years ago. There can be no dispute that this happened here. The seven year period ended under this contract on October 1, 2010. For more than eight years thereafter—more than ***double*** the maximum seven year period California law allows—EMI has enforced rights in violation of California law, depriving Mr. West of the "breathing period" that California law mandates.

3. The principle that one who renders personal services is entitled to a regular "moment of freedom" to decide whether to continue working for the same employer is an essential pillar of California public policy. It has existed since 1872 for the protection of all who render personal services in the State. In 1931, the Legislature codified the specific period of seven years. So important is this law that it may not be waived by a writing extracted from the employee.

4. Mr. West has been working for EMI under the 2003 contract for over 15 years. EMI has unjustly earned millions of dollars by tethering Mr. West's songwriting efforts for an unlawful term. He is entitled to his freedom. By this lawsuit, Mr. West seeks a judicial

declaration that EMI may no longer enforce that contract against him. Mr. West also seeks a declaration that EMI may not exploit the compositions he wrote and delivered to EMI once the contract became unenforceable, in October 2010. To allow otherwise would allow EMI to obtain the benefit of an unenforceable contract. Instead, the Court should declare that Mr. West is entitled to ownership of those works, free and clear of any obligations to EMI. In addition, EMI should be ordered to restore to Mr. West the portion of revenue his songs generated that EMI retained after the contract was no longer enforceable, for at least the four years before Mr. West filed this lawsuit.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to Sections 410.10 and 1060 of the California Code of Civil Procedure.

6. This action is properly filed with this Court because Mr. West is a resident of Los Angeles County, EMI maintains offices and does business within, and/or has continuous and systematic contacts with entities and persons and entities in Los Angeles County, and the wrongful acts of EMI were intended to, and did, cause harm to Mr. West in Los Angeles County.

## THE PARTIES

7. Plaintiff Kanye West is an individual who resides and works in Los Angeles County. He has rendered services under the contract at issue in this case at various locations throughout the City and County of Los Angeles.

8. Plaintiff West Brands, LLC is a limited liability corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles County. It exists to, among other reasons, furnish the services of and own assets created by Mr. West.

9. Plaintiff Ye World Publishing, Inc, also doing business as Ye World Music, is a corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles County. It exists to, among other reasons, furnish the services of and own assets created by Mr. West.

10. Plaintiff Please Gimme My Publishing, Inc. is a corporation organized under the laws of the State of New York, with its principal place of business in Los Angeles County. It

exists to, among other reasons, furnish the services of and own assets created by Plaintiff Kanye West.

11. Defendant EMI April Music, Inc. is a corporation organized under the laws of the State of Connecticut and is an affiliate of Defendant EMI Blackwood Music, Inc. Plaintiffs are informed and believe that EMI April Music handles publishing activities for compositions whose public performance rights are licensed to the American Society of Composers, Authors, and Publishers ("ASCAP").

12. Defendant EMI Blackwood Music, Inc. is a corporation organized under the laws of the State of Connecticut and is an affiliate of Defendant EMI April Music, Inc. Plaintiffs are informed and believe that EMI Blackwood Music handles publishing activities for compositions whose public performance rights are licensed to Broadcast Music Inc. ("BMI").

13. These sister corporations claim to be among the largest music publishers in the world, controlling the publishing rights to millions of compositions. EMI maintains corporate offices and conducts extensive business activities in Los Angeles County.

14. Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, and therefore sues these Defendants by such fictitious names. Plaintiffs are informed and believes, and on that basis alleges, that each of such fictitiously named Defendants was acting as the agent, partner, or joint venturer of the other Defendants and is jointly and severally responsible for the acts and omissions alleged herein.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. Kanye West becomes a force in the music business.

15. In a career that has thus far spanned over twenty years, and is far from peaking, Kayne West has established himself as one of the preeminent and commercially successful songwriters, music producers, recording artists, fashion designers, and trendsetters of our time. In April 2015, *Time* magazine named him of the "100 Most Influential People in the World."

16. Mr. West was born in Atlanta in 1977 and grew up mostly in Chicago. Although offered a scholarship to study painting at Chicago's American Academy of Art, he enrolled at Chicago State University, intending to major in English.

17. By the time he began college, Mr. West had already pursued his interest in music by producing records for other artists in the Chicago area. His talents first came to the attention of the industry through his skill to create hits, starting in the mid-1990s, while he was still in his late teens, for such performers as Foxy Brown, Harlem World, Nas, and D-Dot.

18. The year 2000 turned into a breakout year for Mr. West. He produced what has come to be regarded as one of the most influential hip-hop albums of all time, *The Blueprint*, for recording artist Jay Z. Mr. West also co-wrote four of the songs. In addition to helping revitalize Jay Z's career, Mr. West's work on that album caused other recording artists, including Beanie Sigel, Freeway, and Cam'ron, to seek him out to produce their recordings. During this period, he also gained significant recognition as a songwriter, capable of writing hits for other performers, such as Janet Jackson, Alicia Keys, and Ludacris.

19. Mr. West moved to California in the early 2000s and continued to write and produce hit records. In 2002, he was injured in a near-fatal car accident, which resulted in his jaw being wired shut for several weeks. While in the hospital, he wrote a song about the experience, "Through the Wire," when his mouth was still wired shut—a fact he references in the lyrics. The song became the lead single on his first solo album, *College Dropout*. Rock-A-Fella Records released the album in February 2004 and "Through the Wire" quickly rose to reach the #2 position in *Billboard* magazine's Hot 200 list of the top-selling singles in the country. Another hit single from the album, "Jesus Walks," won a Grammy award in 2005. The album debuted in the #2 spot on *Billboard*, and reached "platinum" status (one million units sold) within two months. It has sold more than 4 million units. To date, Mr. West has won 21 Grammy awards and received 69 nominations, making him one of the top Grammy winners in history and among the most decorated hip-hop artists in the world.

**B. <u>Mr. West signs a contract with EMI in 2003 for the publishing rights to his songs</u>.**

20. A music publisher represents a songwriter in several aspects of the music business. It acts as a representative for the composer if a recording artist wants to record one of the songwriter's works or if someone, such as the producer of a movie or commercial advertisement, wants to use a recording of the song in a movie or TV ad. A publisher typically retains a

percentage of the license fees paid for those and other uses of the work. It often agrees to advance the songwriter funds against royalties from works the songwriter will create.

21. EMI claims to be one of the largest, if not ***the*** largest music publishers in the world. It claims to have more than two million songs in its catalog and generate more than $4 billion annually from their exploitation.

22. During the recording of *College Dropout*, EMI approached Mr. West to negotiate a contract for the music publishing aspects of his career. Pursuant to an agreement that purported to be effective as of October 1, 2003, Mr. West and Ye World Publishing, Inc., the company through which he then conducted his songwriting activities, entered into an agreement with EMI (the "2003 EMI Contract"), which Plaintiffs incorporate herein in full by this reference. Plaintiffs will lodge a true and correct copy of the contract with the Court, upon entry of a protective order, as "Exhibit A."

23. The 2003 EMI Contract is an agreement by which EMI obtained Mr. West's personal services as a songwriter. It states that, during its "Term" (as EMI defined that, and as discussed below), Mr. West will not "either directly or indirectly write musical compositions for" anyone other than EMI. *See* ¶ 16.02. It requires Mr. West to deliver to EMI—and only EMI—the publishing rights to every song Mr. West writes during that "Term." *See* ¶ 2.01.

24. Under the 2003 EMI Contract, Mr. West agreed to write and deliver to EMI a minimum number of new songs (or "Compositions") every "Contract Year" (as EMI defined that term and as discussed below) that were good enough to be chosen to be recorded on an album released by one of the major record companies. If those albums were successful enough, EMI would pay "royalties" to Mr. West, as defined in the contract. EMI agreed to pay Mr. West an advance of a few hundred thousand dollars against those potential royalties.

25. When EMI put that in writing, it was not nearly that simple. The 2003 EMI Contract is 45 pages long and contains dozens of provisions. EMI defined key contract terms to mean something other (or more) than what one would expect them to mean in plain English. In so doing, EMI placed significant, additional burdens on Mr. West's work.

26. The 2003 EMI Contract's "Term" consists of three "Contract Years" plus one optional "Contract Year." *See* ¶¶ 3.02 & 3.03. The contract requires Mr. West to write and deliver to EMI, in each "Contract Year" during the "Term," at least three "Full New Compositions."

27. As defined by EMI, the term "Full New Compositions" does not mean merely an original song that Mr. West has written during the contract term. Each such song must also be "embodied" on a studio (as opposed to a concert) record album having a playing time of at least 35 minutes, released by one of a handful of listed "Major" record labels, during the applicable "Contract Period." *See* ¶¶ 1.03, 1.09 & 4.01. In addition, a "Composition" counts only if the record company has agreed to pay a specific, minimum mechanical royalty for the use of his composition. *See* ¶ 4.01(b).

28. EMI defined the word "Full" (as used in the term "Full New Compositions") to impose additional requirements on Mr. West. "Full" means that, if Mr. West is not recognized as the sole writer of the composition, that composition counts towards his minimum number only as to the fractional amount of credit Mr. West receives for it. But under the contract, EMI further reduced the credit for such a song, using a formula tilted in EMI's favor. *See* ¶¶ 4.01 & 5.04(b). In a business where a song written by one person often gets added to by others during the studio recording process, that can mean that Mr. West has to write and have recorded many more than three new songs in a "Contract Year" to satisfy EMI.

29. To determine how long Mr. West is required to render his services exclusively to EMI, the 2003 EMI Contract defines the term "Contract Year" to mean something more than 12 months. To EMI, a contract, a "Contract Year" means the ***longer*** of either 12 months from the commencement of that "year" or ***however long*** it might take Mr. West to write the minimum number of qualifying songs required of him in any "Contract Year." *See* ¶ 3.04. Thus, if in a given "Contract Year" Mr. West is required to write three "Full New Compositions," that contract year would span ***at least*** 12 months from when it began. But for purposes of determining the term of Mr. West's servitude to EMI, that "year" would not actually ***end*** until Mr. West wrote and delivered to EMI the last of those three "Full New Compositions," that is, until major record

companies released enough studio albums containing enough songs, written in whole or in part by Mr. West, that added up, under EMI's song credit formula, to three such "Full New Compositions." Depending on numerous factors beyond Mr. West's contract, that could take one calendar year, two calendar years, or many more calendar years. As a result, EMI could purport to require Mr. West to continue to render exclusive services to EMI for years, perhaps even for the rest of his life.

30. EMI's ownership interest in Mr. West's songs was not confined to those that were eventually recorded. Instead, EMI obtained ownership of ***every*** song Mr. West would write during the Term, regardless of whether it was recorded on an album released by a major record company, recording on an album released by some other company, or never recorded by anyone. EMI owns them all. *See* ¶¶ 2.01, 5 & 8.01.

31. Nor do EMI's rights end at the end of the contract's "Term." No matter when the contract term ends, the contract states that EMI retains its rights to all new compositions for the ***longer*** of 12 years (later reduced to 10 years), or when EMI has recouped all advances it made to Mr. West, or when he has paid EMI 120% of all unrecouped advances. *See* ¶ 7.01(a)-(c). Only then, if ever, do the publishing rights to Mr. West's compositions revert to him.

32. Under the contract, Mr. West was eligible to receive additional money from EMI for his songs. That would depend on whether the albums on which recording of his songs were included generated enough revenue to EMI (which held the right to license the use of Mr. West's songs to a record company that wanted to record them) to exceed the advance EMI paid Mr. West.

33. That determination is made under the "royalty" provisions of the contract. *See* ¶ 10. From the revenues that EMI would receive from the licensing of Mr. West's songs, EMI first recoups all costs associated with generating revenue from the compositions. This includes an EMI "Administration Fee" (as defined), the cost of collecting all income, payments made to co-composers, the cost of lead sheets and copyright registrations, fees paid to ASCAP, BMI, the Harry Fox Agency, and others for licensing performance and synchronization rights, certain EMI legal fees, and any other "reasonable and customary" out-of-pocket expenses related to Mr. West's compositions and EMI's exploitation of them. *See* ¶ 1.10. EMI agreed to "credit" Mr. West's

royalty account with certain percentages of whatever remains, depending on the territory and nature of the revenue.

**C. <u>EMI extends the 2003 EMI contract through 2017 and beyond</u>.**

34. Mr. West's career exploded after the February 2004 release of *College Dropout*. Over the next nine years, he released five new studio albums that sold millions of copies. He appeared live in concert hundreds of times to entertain millions of fans. And he became one of the most influential and successful entertainers on the planet. Those studio albums were *Late Registration* (2005), *Graduation* (2007), *808s & Heartbreak* (2008), *My Beautiful Dark Twisted Fantasy* (2010), and *Yeezus* (2013). Mr. West wrote many of the songs on those albums, and wrote more during these years for others to record.

35. During those nine years, none of this escaped EMI's attention. At every turn, it sought to extend the term of its exclusive control over Mr. West's songwriting services and, as alleged in more detail below, EMI did so knowing that it was violating Mr. West's fundamental rights under California law.

**<u>The 2005 EMI Extension</u>**

36. Pursuant to a document entered into as of May 1, 2005, which Plaintiffs incorporate herein in full by this reference, EMI obtained an option to extend the "Term" of the contract for an additional "Contract Year" and to have Mr. West write an additional three "New Compositions" during that period (the "2005 Extension"). Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit B."

**<u>The 2006 Extension</u>**

37. Pursuant to a document entered into as of October 1, 2006 (the "2006 Extension"), which Plaintiffs incorporate herein in full by this reference, EMI purported to extend the "Term" of the contract. Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit C."

38. Under the 2006 Extension, EMI replaced the 2005 grant of an optional "Contract Year" with an entirely new "Contract Period" (the "Second Contract Period") that would begin on October 1, 2006 and run continuously for three new "Contract Years." In addition, EMI

purportedly obtained an additional "Option Period" to commence "immediately upon the expiration" of the Second Contract Period, that would be of equal duration to the Option Period EMI had obtained in the 2003 EMI Contract, that is, the longer of 12 months or the date by which Mr. West wrote and delivered the required number of "New Compositions." EMI also purportedly obtained a "Second Option Period" that, if exercised, would commence "immediately upon the expiration" of the "First Option Period" and end when Mr. West had written and delivered the required number of "New Compositions." At a minimum, coupled with the 2003 EMI Contract, EMI obtained under the 2006 extension a continuous period of Mr. West's exclusive songwriting services of at least six calendar years, plus two optional calendar years, which required Mr. West to write and deliver the minimum number of New Compositions every "Year." If he did not do so within those periods, the term of the contract had no end.

39. Further, EMI raised the bar on its requirements for Mr. West's songwriting during the two Option Years. Mr. West had to write ***twice*** the number of songs (a total of six in that "Year"). And to qualify as "New Compositions," three of Mr. West's six new annual songs would have to be released on an album by an artist whose immediately prior album had sold at least 600,000 units (100,000 more than required to reach the Recording Industry Association of America's "Gold" status) or on any album recorded by Mr. West himself. As a practical matter, this pressured Mr. West to increase his pace of recording his own studio albums.

40. There was no break in the services Mr. West was obligated to render under the 2003 EMI Contract and the new term provided under the 2006 Extension.

41. The 2006 Extension contains a paragraph that reflects EMI's awareness that its contract with Mr. West violated California public policy, and particularly the Seven Year Rule embodied in California Labor Code section 2855. Paragraph 10 in pertinent part disclaims that "for purposes of California law," neither the 2003 EMI Contract nor the 2006 Extension "constitute contracts for any of your personal services." Instead, the contract requires Mr. West merely to "deliver" to EMI his ownership interest in the songs he writes. It states further that Mr. West would not "make any claims that you are not required, under California law or otherwise, to fulfill all obligations set forth in the [2003 EMI Contract] and/or this Modification." And it says

that Plaintiffs "acknowledge that this paragraph is to avoid compromise of [EMI]'s rights by reason of a finding of applicability of California law but does not contain an admission by [EMI] that California law is actually applicable." In short, EMI inserted self-serving language in the contract to avoid the fact that EMI was seeking to enforce a personal services agreement against Mr. West more than seven years after he commenced his services under it, which is a direct violation of California Labor Code section 2855.

42. In addition, the waiver EMI sought to obtain is itself unlawful. Given that, by its own acclaim, EMI is one of the biggest music publishers in the world, the lawyers in its legal department were well aware that the California Court of Appeal had, nearly 70 years earlier, declared that such employer-inserted clauses were unenforceable. *See De Havilland v. Warner Bros.*, 67 Cal. App. 2d 225, 236 (1944) (the rights granted an employee under Section 2855 "may not be contravened by private agreement"). That remains the law today.

43. Not only are the provisions of paragraph 10 of the 2006 Extension unenforceable, they are comically inconsistent with a paragraph in the contract that appears right above it. Whereas EMI sought in paragraph 10 to avoid application of Labor Code Section 2855 to Mr. West's services by writing that the contract did not constitute one for his personal services, EMI took the opposite position in paragraph 8. There, EMI wrote:

> You (Mr. West) hereby represent and warrant that to [EMI] that You will, throughout the entire Term as extended by this Modification, remain actively involved in writing, recording and producing Compositions and Major Label Albums, as Your principle occupation. At no time during the Term will you seek to retire as a songwriter, recording artist or producer or take any extended hiatus during which you are not actively pursuing Your musical career in the same basic manner as You have pursued such career to date. (The preceding representation shall not be deemed to prevent You from taking a vacation of limited duration.)

44. EMI would have had no interest in ensuring that Mr. West continued to write, record, and produce songs, and continue to "actively" pursue his music career, unless it was party to a contract with Mr. West that required him to render personal songwriting, recording, and

producing services. Under the 2003 EMI Contract, only Mr. West can discharge the songwriting obligations. A song written by anyone else does not satisfy his obligations to EMI.

45. Other aspects of the 2003 EMI Contract make clear that it is an agreement for Mr. West's personal services and not merely for the "delivery" of "rights." For example, it states that, if Mr. West desires during the Term to write new compositions for use in a movie or TV program, EMI shall "furnish Your writing services on a 'loan out' basis to write such Film music." *See* ¶ 8.05(d). Another provision gives EMI the right to secure insurance securing Mr. West's life and capacity, in whatever amount EMI choses and to require Mr. West to attend any reasonable medical examinations required by the insurer. *See* ¶ 15.01. These are expected provisions of a personal services agreement, particularly one where the services are valuable and unique.

46. The statement in paragraph 10 of the 2006 Extension that disclaims that Mr. West is rendering personal services is thus a mere legal fiction, invented by EMI to hide the fact that the contract plainly requires Mr. West to render personal services to EMI, and that EMI was planning to have Mr. West do so for more than seven years. (That said, Mr. West appreciates that EMI has been willing during these years to allow him to take vacations "of limited duration.")

**The 2009 Extension**

47. Three years (and a month) after the parties signed the 2006 Extension, EMI purportedly obtained a new extension of the 2003 EMI Contract (the "2009 Extension"). Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit D."

48. Under the 2009 Extension, EMI inserted an additional "Contract Period" (the "Third Contract Period") that would begin on November 1, 2009 and run continuously for three new "Contract Years," that is, to the latter of October 31, 2012 or delivery of the required number of New Compositions. At the end of that period, EMI would retain its prior options for two additional "Optional Years." Mr. West purportedly became obligated to write and deliver 18 New Compositions during the new, "Third Contract Period," with each composition subject to the same requirements found in the prior contract and extension.

49. The 2009 Extension contains the same self-serving and unenforceable disclaimer regarding Mr. West's personal services that the 2006 Extension contains (found in paragraph 9 in the 2009 Extension), and the same contradictory representation and warranty from Mr. West that he will continue to remain actively involved in writing, recording, and producing New Compositions throughout the term, again subject to taking "a vacation of limited duration" (found in paragraph 7 in the 2009 extension).

50. There was no break in the services Mr. West was obligated to render under the 2003 EMI Contract and the new term provided under the 2009 Extension.

**The 2011 Extension**

51. Two years after the parties signed the 2009 Extension, on November 1, 2011, EMI purportedly obtained a new extension of the 2003 EMI Contract (the "2011 Extension"). EMI has a copy of the 2011 Extension. Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit E."

52. When Mr. West signed the 2011 extension, more than seven years had passed since he began rendering his personal services to EMI under the 2003 EMI Contract. In fact, it had been eight years and one month. Even so, EMI obtained his signature on a contract extension that would purportedly extend the uninterrupted period of his services even further.

53. In the 2011 Extension, EMI acknowledged that the Term of the existing contract, as extended, required Mr. West to render services under the Third Contract Period until ***the later of*** November 31, 2012 (more than ***nine years*** after he began rendering services under it), or 30 days after he wrote, recorded, and delivered the required number of New Compositions.

54. Notwithstanding that, EMI purportedly obtained three "Option Periods," the first of which would begin, if exercised, immediately upon the expiration of the Third Contract Period, the second immediately upon the expiration of the first, and the third immediately upon expiration of the second, so that Mr. West would be obligated to continue to render his personal services until the later of October 31, 2015 or 30 days after he fulfilled his obligation to deliver the required number of New Compositions for each of those "Option Periods." At that point, Mr. West's service to EMI under the 2003 EMI Contract would have spanned ***more than 12 years***.

55.     EMI also required Mr. West to write and deliver at least six new songs during each new "Option Period," three of which would have to be recorded by Mr. West or an artist whose immediately prior album had sold at least 400,000 units.

56.     As with the prior two extensions, the 2011 Extension contains the same self-serving and unenforceable disclaimer regarding Mr. West's personal services that the 2006 Extension contains (found in paragraph 8 in the 2011 Extension), and the same contradictory representation and warranty from Mr. West that he will continue to remain actively involved in writing, recording, and producing New Compositions throughout the term, again subject to taking "a vacation of limited duration" (found in paragraph 7 in the 2009 extension).

57.     By the end of 2011, Mr. West had written, solely or with other writers, more than 200 compositions and delivered the rights to those compositions to EMI.   Those songs include many of the most influential and successful songs written in recent years.

**The 2014 Extension**

58.     Three years after the parties signed the 2011 Extension, on November 5, 2014, EMI purportedly obtained a further extension of the 2003 EMI Contract (the "2014 Extension"). Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit F."

59.     The 2014 Extension recites that the "Third Contract Period" granted EMI under the 2009 Extension was then still currently in effect, and that Mr. West still needed to write and have recorded eight "New Compositions" to fulfill his obligations to EMI for that part of the contract's Term.  Had the contract's "years" actually been tied to the calendar, and not to the number of songs Mr. West wrote and recorded during an artificial amount of time, the "Third Contract Period" would have ended in 2012; yet two years later, it was still ongoing.

60.     Nonetheless, EMI agreed that the "Third Contract Period" would be deemed to end on December 31, 2014, at which point the first of EMI's three "Option Periods" would immediately begin, during which Mr. West had to write and record six New Compositions.

61.     The 2014 Extension also contains an acknowledgement from EMI that it had underpaid royalties to Mr. West, from the beginning of 2014, by using improper rates.

62. The 2014 Extension contains the same self-serving and unenforceable disclaimer regarding Mr. West's personal services and the same contradictory representation and warranty from Mr. West that he will continue to remain actively involved in writing, recording, and producing New Compositions throughout the term.

63. When Mr. West signed the 2014 extension, more than seven years had passed since he began rendering his personal services to EMI under the 2003 EMI Contract. In fact, it had been ***eleven years*** and one month. Even so, EMI obtained his signature on a contract extension that would extend the uninterrupted period of his services from 2003 even further.

64. EMI contends that the 2003 EMI Contract is still in effect. According to EMI, at the end of the "Third Contract Period" it exercised its right to the "First Option Period" granted under the 2014 Extension, and thereafter to the "Second Option Period" and "Third Option Period." EMI also contends that Mr. West needs to write and have recorded more songs to satisfy his minimum number of "Full New Compositions" to bring the "Second Option Period" to a close. At that point, to satisfy EMI, he will have to write and have recorded *seven* more songs. In other words, although Mr. West has been rendering personal services to EMI continuously since 2003, from EMI's point of view, the term of this contract has no end in sight.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

65. Plaintiffs re-allege and incorporate herein by reference the allegations contained in Paragraphs 1 through 64 above, as though fully set forth.

66. The 2003 EMI Contract, 2006 Extension, 2009 Extension, 2011 Extension, and 2014 Extension are referred to herein collectively as the "EMI Contract and Extensions."

67. The EMI Contract and Extensions constitutes a personal services contract within the meaning of California Labor Code section 2855.

68. More than seven years has passed since Mr. West began to render his personal services under the EMI Contract and Extensions.

69. At no point since the commencement of Mr. West's services under the EMI Contract and Extensions in 2003 has he enjoyed any "moment of freedom," that is, any moment

during which he was freed from his obligations under the contract and able to offer his services to anyone else, take a break from his songwriting career, or even retire from it altogether.

70. There now exists a dispute between Plaintiffs and Defendant EMI regarding the parties' rights and obligations to one another under the EMI Contract and Extensions.

71. Plaintiffs desire a judicial declaration of their rights under the EMI Contract and Extensions, including that:

a. Pursuant to California Labor Code section 2855, EMI has no further right to enforce Plaintiffs' obligations under the EMI Contract and Extensions and no further right to their services under that contract or otherwise.

b. Insofar as Paragraph 11 of the EMI Contract's 2006, 2009, 2011, and 2014 Extensions deprives Plaintiffs of the protections of California law and public policy, including California Labor Code section 2855, it violates California law and public policy and is unenforceable.

c. The Term of the EMI Contract and Extensions should be deemed to have ended on October 1, 2010.

d. All rights in and to any intellectual property created by Plaintiffs on or after October 1, 2010 should revert and be conveyed to Plaintiffs immediately, subject to no financial or other obligations to EMI.

72. A declaration of the parties' foregoing rights under the EMI Contract and Extensions is necessary and appropriate at this time so that Plaintiffs and Defendants can ascertain their rights and obligations to one another and avoid further disputes.

**SECOND CAUSE OF ACTION**

**(Restitution/Unjust Enrichment)**

73. Plaintiffs re-allege and incorporate herein by reference the allegations contained in Paragraphs 1 through 64 above, as though fully set forth.

74. As of October 1, 2010, when the parties' contract ceased being enforceable under California law, EMI no longer possessed the right to receive Plaintiffs' services.

75. Despite that: (a) Plaintiffs continued to provide substantial and valuable services and benefits to EMI; (b) EMI has continued to receive the results and proceeds of Plaintiffs' services; and (c) EMI has substantially benefitted from those services, including by taking assignments of Plaintiffs' rights to the compositions Mr. West delivered to EMI on and after October 1, 2010 and receiving licensing and other revenues from the exploitation, on and after that date, of compositions written both before and after October 1, 2010.

76. As a result of the foregoing, EMI has become unjustly enriched, and owes restitution to Plaintiffs for those rights, assets, and revenues, in an amount to be determined at trial but substantially in excess of the jurisdictional minimum of this Court.

**THIRD CAUSE OF ACTION**

**(Constructive Trust)**

77. Plaintiffs re-allege and incorporate herein by reference the allegations contained in Paragraphs 1 through 64 above, as though fully set forth.

78. Beginning on and after October 1, 2010, EMI has been holding the following property and gains that belong to Plaintiffs: (a) the ownership interest Plaintiffs conveyed to EMI in each musical composition delivered to EMI on or after October 1, 2010, and (b) the monies EMI received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of any musical composition Plaintiffs delivered to EMI, both before and after October 1, 2010, less any monies EMI has already paid to Plaintiffs with respect to such exploitation.

79. Plaintiffs are entitled to have the Court impose a constructive trust for Plaintiffs' benefit on the foregoing property and gains, and compel EMI to convey them to Plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. For a judicial declaration of Plaintiffs' rights, as set forth above;

B. For an award to Plaintiffs of all monies EMI received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of

any musical composition Plaintiffs delivered to EMI on or after October 1, 2010, less any monies EMI has already paid to Plaintiffs from such exploitation.

C. For the imposition of a constructive trust for the benefit of Plaintiffs with regard to: (1) the ownership interest Plaintiffs conveyed to EMI in each musical composition delivered to EMI on or after October 1, 2010, and (2) all monies EMI received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of any musical composition Plaintiffs delivered to EMI on or after October 1, 2010, less any monies EMI has already paid to Plaintiffs from such exploitation.

D. For an Order conveying from EMI to Plaintiffs all right, title, and interest in each musical composition Plaintiffs delivered to EMI on or after October 1, 2010;

E. For Plaintiffs' attorneys' fees and costs; and

F. For such other and further relief as the Court deems appropriate and proper.

Dated: January 25, 2019.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By [signature]
Robert M. Schwartz
Attorneys for Plaintiffs

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 11:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk 19STCV02732

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

EMI APRIL MUSIC, INC., a Connecticut corporation; EMI BLACKWOOD MUSIC, INC., a Connecticut corporation; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST BRANDS, LLC, a Delaware limited liability corporation; KANYE WEST, an individual; and YE WORLD PUBLISHING, INC., a Delaware corporation, also doing business as YE WORLD MUSIC

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of Los Angeles County
Stanley Mosk Courthouse
111 N. Hill Street, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Quinn Emanuel, John Quinn, 865 S. Figueroa Street, 10th FL, Los Angeles, CA 90012, (213) 441-3000

DATE: 01/25/2019 Sherri R. Carter Executive Officer / Clerk of Court
*(Fecha)*
Clerk, by *(Secretario)* Kristina Vargas, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [X] on behalf of *(specify)*: EMI APRIL MUSIC, INC., a Connecticut corporation

under: [X] CCP 416.10 (corporation) [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
[ ] other *(specify)*:

4. [ ] by personal delivery on *(date)*:

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

Reserved for Clerk's File Stamp

FILED
Superior Court of California
County of Los Angeles
01/25/2019
Sherri R. Carter, Executive Officer / Clerk of Court
By: Kristina Vargas Deputy

**NOTICE OF CASE ASSIGNMENT**

**UNLIMITED CIVIL CASE**

**Your case is assigned for all purposes to the judicial officer indicated below.**

CASE NUMBER:
19STCV02732

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Michael L. Stern | 62 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on 01/31/2019 (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By Kristina Vargas, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

***Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 ... 19STCV02782 Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Aaron Perahia (SBN 304554)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
TELEPHONE NO.: 213-443-3000 FAX NO.: 213-443-3100
ATTORNEY FOR (Name): Plaintiffs

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

CASE NAME:
Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. et al.

## CIVIL CASE COVER SHEET

- [✓] **Unlimited** (Amount demanded exceeds $25,000)
- [ ] **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
- [ ] **Counter**
- [ ] **Joinder**

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER:

JUDGE:

DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [✓] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: Three
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 25, 2019
Aaron Perahia
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

**Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

| SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☑ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment With Damages<br>☐ A6123 Workplace Harassment With Damages<br>☐ A6124 Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name/Change of Gender<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

| SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☑ 9. ☐ 10. ☐ 11. | | | ADDRESS: 111 N. Hill St. Los Angeles, CA 90012 |
|---|---|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: January 25, 2019

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ______________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ____________ (INSERT DATE) for the complaint, and ____________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lacourt.org under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR PLAINTIFF)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE** (pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: ______________ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: ______________ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR _______________)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR _______________)

Date:

_______________________________ ➢ _______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR _______________)

**THE COURT SO ORDERS.**

Date: _______________________________ _______________________________
JUDICIAL OFFICER

# Superior Court of California
# County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

**Advantages of ADR**

- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- **Mediation**

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - **Mediation may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

- **Arbitration**

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

**Settlement Conferences are appropriate in any case where settlement is an option.** Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program. Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995



| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Aaron Perahia<br>865 S. Figueroa St., 10th Fl.<br>Los Angeles, CA 90017<br>(213) 443-3000<br>ATTORNEY FOR (Name): Plaintiffs Please Gimme My Publishing, Inc., et al. | STATE BAR NUMBER: 304554 | *Reserved for Clerk's File Stamp*<br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br>FEB 14 2019<br>Sherri R. Carter, Executive Officer/Clerk<br>By: Isabel Jaime, Deputy |
|---|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: 111 N. Hill St., Los Angeles, CA 90012 | | |
| PLAINTIFF/PETITIONER: Please Gimme My Publishing, Inc., et al. | | |
| DEFENDANT/RESPONDENT: EMI April Music, Inc., et al. | | |
| **PEREMPTORY CHALLENGE TO JUDICIAL OFFICER (Code Civ. Proc., § 170.6)** | | CASE NUMBER: 19STCV02732 |

| Name of Judicial Officer: (PRINT) | Dept. Number: |
|---|---|
| Hon. Michael L. Stern | 62 |
| ☑ Judge ☐ Commissioner | ☐ Referee |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

## DECLARATION

**I declare under penalty of perjury, under the laws of the State of California, that the information entered on this form is true and correct.**

Filed on behalf of: Please Gimme My Publishing Inc.
Name of Party

☑ Plaintiff/Petitioner ☐ Cross Complainant
☐ Defendant/Respondent ☐ Cross Defendant
☐ Other: ______

Dated: February 14, 2019

[signature]
Signature of Declarant

Aaron Perahia
Printed Name

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

February 15, 2019, I served true copies of the following document(s) described as **PEREMPTORY CHALLENGE TO JUDICIAL OFFICER** on the interested parties in this action as follows:

EMI April Music, Inc.
c/o Corporation Service Company d/b/a
CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

EMI Blackwood Music, Inc.
c/o Corporation Service Company d/b/a
CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 15, 2019, at Los Angeles, California.

Candy Tamai

CM-015

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Aaron Perahia (SBN 304554)
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017
TELEPHONE NO.: (213) 443-3000 FAX NO. *(Optional):* (213) 443-3100
E-MAIL ADDRESS *(Optional):* aaronperahia@quinnemanuel.com
ATTORNEY FOR *(Name):* Plaintiffs (Please Gimme My Publishing, Inc. et al.)

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk

PLAINTIFF/PETITIONER: Please Gimme My Publishing, Inc. et al.

DEFENDANT/RESPONDENT: EMI April Music, Inc. et al.

CASE NUMBER: 19STCV02732

JUDICIAL OFFICER: Hon. Michael L. Stern

DEPT.: 62

**NOTICE OF RELATED CASE**

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. et al.
   b. Case number: 19STCV02598
   c. Court: ☑ same as above
   ☐ other state or federal court *(name and address):*
   d. Department: 62
   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*
   f. Filing date: January 25, 2019
   g. Has this case been designated or determined as "complex?" ☐ Yes ☑ No
   h. Relationship of this case to the case referenced above *(check all that apply):*
   ☑ involves the same parties and is based on the same or similar claims.
   ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
   ☐ involves claims against, title to, possession of, or damages to the same property.
   ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
   ☐ Additional explanation is attached in attachment 1h
   i. Status of case:
   ☑ pending
   ☐ dismissed ☐ with ☐ without prejudice
   ☐ disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: ☐ same as above
   ☐ other state or federal court *(name and address):*
   d. Department:

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courtinfo.ca.gov*

CM-015

| PLAINTIFF/PETITIONER: Please Gimme My Publishing, Inc. et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: EMI April Music, Inc. et al. | 19STCV02732 |

2. *(continued)*

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☐ pending

☐ dismissed ☐ with ☐ without prejudice

☐ disposed of by judgment

3. a. Title:

b. Case number:

c. Court: ☐ same as above

☐ other state or federal court *(name and address)*:

d. Department:

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above *(check all that apply)*:

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed ☐ with ☐ without prejudice

☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: ______

Date: February 12, 2019

Aaron Perahia
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Please Gimme My Publishing, Inc. et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: EMI April Music, Inc. et al. | 19STCV02732 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

***(NOTE: You cannot serve the* Notice of Related Case *if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)***

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:
      Street address:
      City:
      State and zip code:
   b. Name of person served:
      Street address:
      City:
      State and zip code:
   c. Name of person served:
      Street address:
      City:
      State and zip code:
   d. Name of person served:
      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(TYPE OR PRINT NAME OF DECLARANT) ▶ (SIGNATURE OF DECLARANT)

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

On February 12, 2019, I served true copies of the following document(s) described as **NOTICE OF RELATED CASE** on the interested parties in this action as follows:

EMI April Music, Inc.
c/o Corporation Service Company d/b/a
CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

EMI Blackwood Music, Inc.
c/o Corporation Service Company d/b/a
CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Quinn Emanuel Urquhart & Sullivan, LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 12, 2019, at Los Angeles, California.

Candy Tamai

**quinn emanuel** trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017

Hasler
02/12/2019
US POSTAGE $000.50[0]
FIRST-CLASS MAIL
ZIP 90017
011E11672605

EMI April Music, Inc.
c/o Corporation Service Company d/b/a CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

08844-00001

9583383502 R034

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 62

**19STCV02732**
**PLEASE GIMME MY PUBLISHING, INC., A NEW YORK CORPORATION , et al. vs EMI APRIL MUSIC, INC., A CONNECTICUT CORPORATION , et al.**

February 21, 2019
1:37 PM

Judge: Honorable Michael L. Stern
Judicial Assistant: M. Alaniz
Courtroom Assistant: S. Alexander

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order

The matter is not called for hearing.

The Court has received a peremptory challenge filed by plaintiff on February 14, 2019 pursuant to Code of Civil Procedure section 170.6. This action was filed by plaintiff on January 25, 2019. Under Code of Civil Procedure section 170.6 (a) (2), a peremptory challenge must ne exercised within 15 days after a case is assigned to an all purpose judge.

The instant challenge therefore is tardy and is denied as it was filed more than 15 days after the action was filed.

Clerk is to give notice

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>02/21/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: M. Alaniz Deputy |
| PLAINTIFF/PETITIONER:<br>Please Gimme My Publishing, Inc., a New York corporation et al | |
| DEFENDANT/RESPONDENT:<br>EMI April Music, Inc., a Connecticut corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>19STCV02732 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Aaron H. Perahia
Quinn Emanuel Urquhart & Sullivan
865 S Figueroa St Fl 10
Los Angeles, CA 90017

Robert M. Schwartz
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 02/22/2019

By: M. Alaniz
Deputy Clerk