# EXHIBIT B

1    MANATT, PHELPS & PHILLIPS, LLP
     ROBERT A. JACOBS (Bar No. CA 160350)
2    MAURA K. GIERL (Bar No. CA 287430)
     MOLLY K. WYLER (Bar No. CA 299881)
3    11355 West Olympic Boulevard
     Los Angeles, CA  90064-1614
4    Telephone:  (310) 312-4000
     Facsimile:  (310) 312-4224
5
     *Attorneys for Defendants*
6    EMI APRIL MUSIC INC. and
     EMI BLACKWOOD MUSIC INC.
7

8

9

10                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      FOR THE COUNTY OF LOS ANGELES

12

13   PLEASE GIMME MY PUBLISHING,          Case No.  19STCV02732
     INC., a New York corporation; WEST
14   BRANDS, LLC, a Delaware limited      **NOTICE TO STATE COURT AND TO**
     liability corporation; KANYE WEST, an **ADVERSE PARTIES OF REMOVAL**
15   individual; and YE WORLD
     PUBLISHING, INC., a Delaware         Complaint Filed:  January 25, 2019
16   corporation, also doing business as YE
     WORLD MUSIC,
17
                 Plaintiffs,
18
           v.
19
     EMI APRIL MUSIC INC., a Connecticut
20   corporation; EMI BLACKWOOD MUSIC
     INC., a Connecticut corporation; and
21   DOES 1-10,
22               Defendants.
23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES
                    NOTICE TO STATE COURT AND TO ADVERSE PARTY OF REMOVAL

1  **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2      PLEASE TAKE NOTICE that on March 1, 2019, Defendants EMI April Music Inc. and

3  EMI Blackwood Music Inc. (collectively, "Defendants"), under 28 U.S.C. §§ 1331, 1441, and

4  1446, filed a Notice of Removal of this action with the Clerk of the United States District Court

5  for the Central District of California, and, thus, removed this action to the United States District

6  Court for the Central District of California.  Accordingly, all further proceedings in this action

7  shall be in said United States District Court.

8      A true and correct copy of the Notice of Removal and supporting papers as filed in the

9  United States District Court is attached hereto as **Exhibit A**.

10 Dated:  March 1, 2019                    MANATT, PHELPS & PHILLIPS, LLP

11

12                                   By: _____

13                                       Robert A. Jacobs
                                         Maura K. Gierl
14                                       Molly K. Wyler
                                         *Attorneys for Defendants*
15                                       EMI APRIL MUSIC INC. and
                                         EMI BLACKWOOD MUSIC INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1  MANATT, PHELPS & PHILLIPS, LLP
2  ROBERT A. JACOBS (State Bar No. 160350)
   E-mail: rjacobs@manatt.com
3  MAURA K. GIERL (State Bar No. 287430)
   E-mail: mgierl@manatt.com
4  MOLLY K. WYLER (State Bar No. 299881)
   11355 West Olympic Boulevard
5  Los Angeles, California 90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:   (310) 312-4224

7  *Attorneys for Defendants*
8  EMI APRIL MUSIC INC. and
   EMI BLACKWOOD MUSIC INC.
9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  PLEASE GIMME MY PUBLISHING,        No. 2:19-cv-_____
    INC., a New York corporation; WEST
14  BRANDS, LLC, a Delaware limited     **NOTICE OF REMOVAL**
    liability corporation; KANYE WEST, an
15  individual; and YE WORLD
    PUBLISHING, INC., a Delaware
16  corporation, also doing business as YE
    WORLD MUSIC,
17
18          Plaintiffs,
19      v.
20  EMI APRIL MUSIC INC., a Connecticut
21  corporation; EMI BLACKWOOD
    MUSIC INC., a Connecticut corporation;
22  and DOES 1-10,
23          Defendants.
24

25

26

27

28

1     Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants EMI April

2   Music Inc. ("EMI April") and EMI Blackwood Music Inc. ("EMI Blackwood")

3   (collectively, "Defendants") give notice of the removal of the above-captioned

4   matter to the United States District Court for the Central District of California.  As

5   grounds for removal, Defendants state as follows:

6   **I.     NATURE OF REMOVED CASE**

7     1.     On January 25, 2019, Plaintiffs Please Gimme My Publishing, Inc.

8   ("Please Gimme"); West Brands, LLC ("West Brands"); Kanye West ("West"); and

9   Ye World Publishing, Inc. ("Ye World") (collectively, "Plaintiffs") filed their

10   complaint (the "Complaint" or "Cplt.") in the action captioned *Please Gimme My*

11   *Publishing, Inc.; West Brands, LLC; Kanye West; and Ye World Publishing, Inc. v.*

12   *EMI April Music, Inc. and EMI Blackwood Music, Inc.*, in the Superior Court of

13   California, County of Los Angeles (the "Action").  The Action was assigned Case

14   Number 19STCV02732.[1]

15     2.     Defendants were served on February 1, 2019.

16     3.     In the Complaint, Plaintiffs allege that they or their predecessors

17   entered into an agreement with Defendants as of October 1, 2003 (the "2003

18   Agreement") under which Defendants acquired a 50 percent share of the copyrights

19   in certain musical compositions written or co-written by West (the "Compositions")

20   for a specified period of time.  (Cplt. ¶ 22)[2]  Plaintiffs also granted Defendants the

21   right to administer and exploit the Compositions during that period for West's and

22

23   [1] On the same day, Plaintiffs filed a highly redacted, though seemingly almost
identical, complaint in the action captioned *Please Gimme My Publishing, Inc.;*

24   *West Brands, LLC; Kanye West; and Ye World Publishing, Inc. v. EMI April Music,*
*Inc. and EMI Blackwood Music, Inc.*, in the Superior Court of California, County of

25   Los Angeles (the "Redacted Action").  The Redacted Action was assigned Case
Number 19STCV02598.  The Redacted Action is the subject of a separate notice of

26   removal, which Defendants will file forthwith, along with a notice of related cases.

27   [2] Although Plaintiffs did not attach a copy of the 2003 Agreement to the Complaint,
they incorporate it into the Complaint "in full".  (Cplt. ¶ 22)  A true and correct

28   copy of relevant excerpts from the 2003 Agreement is attached as Exhibit A to the
Declaration of Robert A. Jacobs ("Jacobs Declaration" or "Jacobs Decl.").

Defendants' mutual benefit.  In exchange, Defendants paid West certain advances and rendered accountings and payments to him for royalties derived from the exploitation of the Compositions.  (*See* Jacobs Decl. ¶ 2, Exh. A)

4.     The parties entered into multiple agreements modifying and extending the 2003 Agreement (each a "Modification" and, collectively, the "Modifications"), including in 2005, 2006, 2009, 2011, and 2014, each of which Plaintiffs reference and incorporate in, but do not attach as exhibits to, the Complaint.  (*See* Cplt. ¶¶ 36, 37, 47, 51, 58, 66)  Plaintiffs, however, fail to mention in the Complaint itself that the parties entered into additional modification agreements in 2004 and 2012, the latter of which (among other things), as discussed in detail below, makes clear that West and West Brands are the only proper plaintiffs in this case because West long ago dissolved Ye World and Please Gimme, and merged them into West Brands, making each of them a mere d/b/a or trade name of West Brands with no separate legal existence, and, therefore, no capacity or standing to sue.[3]

5.     Notwithstanding the great success that West has enjoyed during his relationship with Defendants, Plaintiffs now seek a declaration that (i) the 2003 Agreement and the Modifications are unenforceable, and have been for the last eight and a half years; and (ii) Defendants' bargained-for copyright ownership and other rights in the Compositions should revert to West.  (Cplt. ¶¶ 1, 71)

6.     Plaintiffs further allege that they are entitled to "restitution" based on the fact that Defendants benefited "by taking assignments of Plaintiffs' rights to the

---

[3] Notwithstanding Plaintiffs' decision not to reference the 2004 and 2012 Modifications, the Modifications are still incorporated into the Complaint because *each* of the 2005, 2006, 2009, 2011, and 2014 Modifications – which Plaintiffs expressly reference and incorporate into the Complaint – specifically refers to and ratifies the 2004 Modification, as does the 2014 Modification with respect to the 2012 Modification.  Thus, for example, the 2014 Modification referenced in paragraphs 59-64, 66, and 71 of the Complaint states that the "2003 Agreement, as modified by the ***2004 Modification***, 2005 Modification, 2006 Modification, 2009 Modification, 2011 Modification and ***2012 Modification***" comprise the "Basic Agreement", and that the "Basic Agreement is hereby ratified and confirmed and shall remain in full force and effect."  (Jacobs Decl. ¶ 4, Exh. C at ¶¶ 1.02 & 11 (emphasis added))

1   [C]ompositions" that West delivered to them on or after October 1, 2010 (seven

2   years after the 2003 Agreement), and by "receiving licensing and other revenues

3   from the exploitation" of Compositions delivered before and after October 1, 2010.

4   (Cplt. ¶ 75)

5       7.      Finally, Plaintiffs allege that Defendants have wrongfully withheld

6   from Plaintiffs Defendants' bargained-for rights and interests in the Compositions,

7   and the portion of the monies generated by exploitation of the Compositions that

8   Defendants retained as co-owners of the copyrights in the Compositions.  (Cplt. ¶

9   78)  Specifically, Plaintiffs allege that Defendants are withholding "the ownership

10  interest Plaintiffs conveyed to [Defendants] in each musical composition delivered

11  to [them] on or after October 1, 2010", and "the monies [Defendants] received . . .

12  from the exploitation of any musical composition Plaintiffs delivered to

13  [Defendants] both before and after October 1, 2010, less any monies [Defendants]

14  ha[ve] already paid to Plaintiffs".  (*Id*. ¶ 78)

15      8.      In addition to the above, in their Prayer for Relief, Plaintiffs

16  specifically seek "an Order conveying from [Defendants] to Plaintiffs all right, title,

17  and interest in each musical composition" that Plaintiffs delivered after October 1,

18  2010.  (Cplt., Prayer for Relief ¶ D)

19      9.      Based on the above, Plaintiffs bring three causes of action:

20              a.  Declaratory Relief (Cplt. ¶¶ 65-72);

21              b.  Restitution/Unjust Enrichment (*id.* ¶¶ 73-76); and

22              c.  Constructive Trust (*id.* ¶¶ 77-79).

23      10.     This Court has federal diversity jurisdiction because complete

24  diversity exists between Plaintiffs, on the one hand, and the named Defendants, on

25  the other hand, and because the amount in controversy is over $75,000, exclusive of

26  interest and costs.  This Court also has federal question jurisdiction because two of

27  the three claims arise under the United States Copyright Act, 17 U.S.C. § 101 *et.*

28  *seq.* (the "Copyright Act").

## II.   THIS REMOVAL IS PROCEDURALLY PROPER

11.   This notice of removal is timely under 28 U.S.C. § 1446(b)(1) because the date of filing is within 30 days of the date of service on all Defendants on February 1, 2019.

12.   Removal to this venue is proper pursuant to 28 U.S.C. § 1441(a) because the United State District Court for the Central District of California includes Los Angeles, California, where the state court action is pending. However, Defendants do not waive and reserve their right to have Plaintiffs' claims in this Action adjudicated by the federal or state courts in New York County, New York, as mandated by the exclusive New York forum selection clause in the 2003 Agreement and Modifications.  (Jacobs Decl. ¶ 2, Exh. A)

13.   All Defendants are parties to and consent to this removal.

14.   Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, or orders filed in the state court action are attached hereto as **Exhibit A**.

15.   Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal is being provided to all adverse parties, and a copy of this Notice is being filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.  A true and correct copy of the written notice required by 28 U.S.C. § 1446(d) is attached hereto as **Exhibit B**.

## III.   GROUNDS FOR FEDERAL SUBJECT MATTER JURISDICTION

### A.   **This Court Has Diversity Jurisdiction.**

16.   This Court is vested with diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs, on the one hand, and the named Defendants, on the other hand, and because the amount in controversy is greater than $75,000, exclusive of interest and costs.  Diversity jurisdiction is determined at the time of removal.  *See Jong v. Gen. Motors Corp.*, 359 F. Supp. 223, 226 (N.D. Cal. 1973) ("whether diversity exists between the plaintiffs and the defendants for removal purposes must be made on the record as it

1    stands at the time the removal petition is filed").

2         17.     To show citizenship for diversity purposes, a natural person must "(1)

3    be a citizen of the United States, and (2) be domiciled in the state." *Kantor v.*

4    *Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A limited liability

5    company is considered a "citizen of every state of which its owners/

6    members are citizens".  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894,

7    899 (9th Cir. 2006).  A corporation is a "citizen" of both the state in which it was

8    incorporated and the state where it has its principal place of business.  28 U.S.C.

9    § 1332(c).  *See also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th

10   Cir. 2009) (citing 28 U.S.C. §1332(c)(1)).

11        18.     Here, Plaintiffs allege in the Complaint that West is a resident of Los

12   Angeles County, California.  (Cplt. ¶ 7)  Accordingly, for purposes of diversity, he

13   is considered a citizen of California.  *See State Farm Mut. Auto. Ins. v. Dyer*, 19

14   F.3d 514, 520 (9th Cir. 1994) (individual's residence is *prima facie* evidence of

15   domicile).

16        19.     Plaintiffs further allege that West Brands is a Delaware limited

17   liability company, with its principal place of business in California.  (Cplt. ¶ 8)  As

18   set forth in the 2012 Modification, West is the sole member of West Brands.

19   (Jacobs Decl. ¶ 3, Exh. B ¶ 2.01(b))  Accordingly, West Brands also is considered a

20   citizen of California for diversity purposes.  *Johnson*, 437 F.3d at 899.

21        20.     Finally, Plaintiffs allege that Ye World is a Delaware corporation with

22   its principal place of business in California, and that Please Gimme is a New York

23   corporation with its principal place of business in California.  (Cplt. ¶¶ 9, 10)

24   However, records maintained by the Department of State of the State of Delaware

25   and the Department of State of the State of New York confirm that Ye World and

26   Please Gimme have been dissolved since at least May 19, 2004 and January 27,

27   2010, respectively.  (Jacobs Decl. ¶¶ 5-6, Exhs. D-E)  Indeed, West and West

28   Brands expressly acknowledge the dissolution of Ye World and Please Gimme in

the 2012 Modification, and that each of Ye World and Please Gimme is merely a

d/b/a of West Brands, and expressly agree that they will "not reinstate either Ye

World or Please Gimme as an independent corporate entity." (Jacobs Decl. ¶ 3,

Exh. B at ¶¶ 2.01(c), 2.03, 3.07)  In addition, the 2012 Modification and the 2014

Modification make clear that each of Ye World and Please Gimme is included in

them solely as a d/b/a of West Brands.  (Jacobs Decl. ¶ 3, Exh. B at 1; *id.* ¶ 4, Exh.

C at 1)

21.     Thus, Ye World and Please Gimme are not – and have not been for

years – independent legal entities that have capacity or standing to sue.  *See The*

*Capital Gold Grp., Inc. v. Nortier*, 176 Cal. App. 4th 1119, 1127 (2009)

(corporation that lacks capacity to sue in its home state based on a lack of corporate

status also lacks capacity to sue in California); *Moran Enters., Inc. v. Hurst*, 888

N.Y.S.2d 109 (App. Div. 2009) ("A dissolved corporation . . . does not enjoy the

right to bring suit in the courts of this state" except in limited circumstances); *In re*

*Dow Chemical Int'l, Inc.*, Case No. 3972-CC, 2008 WL 4603580, at *2 (Del. Ch.

Oct. 14, 2008) (dissolved Delaware corporation has no standing to sue to resolve

claims that were not pending three years after date of dissolution).  Instead, each is

simply a d/b/a of West Brands that has no distinct legal existence separate from

West Brands.  *See Tr. of Constr. Indus. & Laborers Health & Welfare Tr. v. C & W*

*Enters., Inc.*, F. App'x 566, 567 (9th Cir. 2008) ("The designation 'd/b/a' is merely

descriptive of a corporation that does business under some other name and does not

create a distinct corporate entity"); *PB Farradyne, Inc. v. Peterson*, Case No. C 05-

3447, 2006 WL 132182, at *5 (N.D. Cal. Jan. 17, 2006) (a d/b/a "is not a separate

legal entity capable of . . . asserting any claims of infringement"); *Cusano v.*

*Horipro Entm't Grp.*, 301 F. Supp. 2d 272, 277 (S.D.N.Y. 2004) ("Use of a

fictitious business name [including the d/b/a designation] does not create a separate

legal entity" distinct from its owner) (*citing Pinkerton's, Inc. v. Superior Court*, 49

Cal. App. 4th 1342, 1348 (1996)).  Ye World and Please Gimme, therefore, are

1    improper Plaintiffs and irrelevant to the determination of the citizenship of the

2    parties for these reasons alone.

3         22.    Ye World and Please Gimme also are improper plaintiffs and

4    irrelevant to the determination of the parties' citizenship because West merged

5    them into West Brands.  The 2012 Modification unambiguously states that Ye

6    World and Please Gimme transferred all of their "rights, title, interests and assets,

7    including, without limitation, all retained copyright interests in the Compositions . .

8    . under the [2003] Agreement" to West Brands, and that West Brands would

9    assume all "obligations" and "grant all rights" of Ye World and Please Gimme to

10   Defendants under the agreement.  (Jacobs Decl. ¶ 3, Exh. B at ¶¶ 2.01(b), 2.02)

11   These provisions confirm that Ye World and Please Gimme were merged into West

12   Brands.  *See Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 301

13   (S.D.N.Y. 2006) (acquisition of all assets of company sufficient to establish *de*

14   *facto* merger); *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44-45 (2d Cir.

15   2003) (recognizing *de facto* merger where there is, in substance, a consolidation or

16   merger of seller and purchaser).  For these reasons, too, neither Ye World nor

17   Please Gimme has capacity or standing to sue, making West and West Brands the

18   only relevant plaintiffs to consider for purposes of evaluating diversity jurisdiction.

19   *See Sentry Mktg., Inc. v. Unisource Worldwide, Inc.*, 42 F. Supp. 2d 188, 191

20   (N.D.N.Y. 1999) (prior citizenship of New York corporation ceased to be

21   determinative of diversity upon merger with Delaware corporation); *accord*

22   *Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (prior citizenship

23   of California corporation ceased to be determinative of diversity upon merger with

24   Delaware corporation); *accord Westside Fed. Sav. & Loan Ass'n of N.Y.C. v.*

25   *Fitzgerald*, 524 N.Y.S.2d 54, 55 (App. Div. 1988) (company that merges into

26   another no longer had capacity to sue).  As a result, only West's and West Brand's

27   citizenship is relevant to the determination of diversity.

28        23.    This conclusion is consistent with the 2012 Modification and 2014

Modification, which, as already noted in paragraph 20 above, confirm that each of Ye World and Please Gimme is a mere d/b/a of West Brands, and shall not be reinstated as an independent corporate entity.  (*See* Jacobs Decl. ¶¶ 3-4, Exhs. B-C (referring to Ye World and Please Gimme as "d/b/a's" of West Brands))  Accordingly, Ye World's and Please Gimme's purported Delaware and New York citizenship, respectively, are not relevant to, and do not affect, diversity jurisdiction, because they have no citizenship separate and apart from West Brand's California citizenship.

24.     Unlike West and West Brands, Defendants are now, and were at the time that Plaintiffs commenced the Action, Connecticut corporations with their principal places of business in New York.  (Cplt. ¶¶ 11-12)  Defendants, therefore, are considered citizens of Connecticut and New York for purposes of evaluating diversity jurisdiction.  Because West and West Brands are California citizens and Defendants are not, complete diversity exists between Plaintiffs, on the one hand, and Defendants, on the other.

25.     Federal diversity jurisdiction also requires that the amount in controversy exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Although Plaintiffs avoid placing a specific dollar figure on the disgorgement and other recovery they seek, the Complaint leaves no doubt that the amount in controversy far exceeds $75,000, exclusive of interest and costs.  (*See, e.g*., Cplt. ¶ 4 (Defendants have "unjustly earned ***millions of dollars*** by tethering . . . West's songwriting efforts for an unlawful term") (emphasis added))  Indeed, the breadth of the relief that Plaintiffs seek inarguably shows that the amount at stake in *each* of the three purported claims is substantially higher than the $75,000 threshold for diversity jurisdiction.

26.     Here, Plaintiffs seek "an award . . . of all monies [Defendants] received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of any musical composition Plaintiffs delivered

to [Defendants] on or after October 1, 2010, less any monies [Defendants] ha[ve] already paid to Plaintiffs from such exploitation." (Cplt., Prayer for Relief ¶ B; *see also* Cplt. ¶¶ 75, 76,78)  The monies that Defendants have received and retained during the past four years from Compositions delivered to them on or after October 1, 2010 pursuant to the 2003 Agreement and Modifications are well in excess of $75,000.[4]  (*See* Declaration of Thomas Foley ("Foley Decl."), ¶ 2)

27.     Through each of their three purported claims, Plaintiffs also seek the reversion of the copyrights and other interests "in each musical composition Plaintiffs delivered to [Defendants] on or after October 1, 2010". (Cplt., Prayer for Relief ¶ D; *see also* Cplt. ¶¶ 71(d), 75, 76, 78, Prayer for Relief ¶ C(1)).  The value of such copyrights and interests, by themselves, also is much greater than $75,000. (*See* Foley Decl. ¶ 3)

28.     In addition to the monies and rights that Plaintiffs seek to disgorge, they also expressly demand an award of "Plaintiffs' attorneys' fees." (Cplt., Prayer for Relief ¶ E)  Plaintiffs do not specify whether they base this demand on a particular fee-shifting statute or provision in the parties' agreements; however, under Ninth Circuit law, the amount in controversy for evaluating diversity jurisdiction includes "attorneys' fees awarded under fee-shifting statutes or contracts", including future attorneys' fees accruing after the commencement of litigation. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).  Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") represents Plaintiffs in this matter.  Although Defendants are not privy to Plaintiffs' fee arrangements with Quinn, the Complaint indicates that two senior partners, John B. Quinn and Robert M. Schwartz, and two mid-level associates, Aaron Perahia and Rukayatu Tijani, are working on this matter.  (*See* Cplt. at 1)  An attorneys' fee application

---

[4] By placing a value on the claims at issue, Defendants do not concede that Plaintiffs are entitled to any relief whatsoever.  *See Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

that Quinn filed in this Court in November 2018 indicates that Quinn's standard hourly rates for its senior partners and mid-level associates at that time were approximately $1,360 and $800, respectively.  (Jacobs Decl. ¶ 7, Exh. F)  These rates are consistent with similar applications filed by Quinn in other jurisdictions.  (*Id.* ¶¶ 8-9, Exhs. G-H)  Taken together, these applications indicate that the average standard hourly rate that Quinn charges for the attorneys staffed on this matter is approximately $1,080.  At this rate, Quinn's fees would surpass $75,000 after the firm bills just 69.5 hours.  Even if Plaintiffs were receiving a partial discount on Quinn's standard rates (and Defendants have no reason to believe they are), Plaintiffs' attorneys' fees will no doubt exceed $75,000 at the early stages of this litigation, assuming their fees do not exceed the $75,000 threshold already.  Accordingly, the potential attorneys' fee award alone satisfies the amount in controversy requirement for diversity jurisdiction.

## B. This Court Also Has Federal Question Jurisdiction Because Two Of The Three Claims At Issue Arise Under The Copyright Act.

29.    The Complaint purports to state three causes of action, two of which – the unjust enrichment and constructive trust claims – require adjudication of the parties' copyright ownership in and rights to the Compositions.  (Cplt. ¶¶ 4, 65-79)  While Defendants do not concede that Plaintiffs can allege a valid claim under the Copyright Act, the unjust enrichment and constructive trust causes of action as plead in the Complaint, and as described in paragraphs 6 and 7 above, are within the original jurisdiction of this Court, pursuant to 28 U.S.C. §§ 1331 and 1441, because the matter in controversy arises under and is completely preempted by the Copyright Act under well-settled law.

30.    "If a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 24 (1983).  Although "the Ninth Circuit has not yet had

1   occasion to decide whether removal jurisdiction is properly predicated upon

2   complete preemption under [the Copyright Act], several circuit court opinions, as

3   well as decisions in this district, have so held." *Pizarro v. Aguilar*, Case No. CV

4   10-2252, 2010 WL 11598015, at *2 (C.D. Cal. July 6, 2010) (collecting cases).

5        31.   Indeed, copyright preemption is broad. *G.S. Rasmussen & Assocs.,*

6   *Inc. v. Kalitta Flying Serv., Inc.*, 958, F.2d 896, 904 (9th Cir. 1992), *cert. denied*,

7   508 U.S. 959 (1993).  The Copyright Act completely preempts a state law claim

8   when "the work involved . . . fall[s] within the subject matter of the Copyright

9   Act", and "the rights that a plaintiff asserts under state law. . . are equivalent to

10  those protected by the Copyright Act". *Kodadek v. MTV Networks, Inc.*, 152 F.3d

11  1209, 1212 (9th Cir. 1998)) (internal quotations omitted); *see also* 17 U.S.C. §

12  301(a) (same); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir.

13  2006) (same).  Here, there can be doubt that Plaintiffs' unjust enrichment and

14  constructive trust causes of action satisfy both prongs of preemption, and are

15  completely preempted by the Copyright Act.

16       32.   *First*, the Compositions at issue in this Action, including those that are

17  the subject of Plaintiffs' unjust enrichment and constructive trust causes of action,

18  are within the subject matter of the Copyright Act.  *See ABKCO Music, Inc. v.*

19  *LaVere*, 217 F.3d 684, 688 (9th Cir. 2000) (original musical compositions have

20  enjoyed copyright protection since 1831).  Although Plaintiffs attempt to steer clear

21  of the Copyright Act by almost entirely avoiding the word "copyright", their efforts

22  fail.

23       33.   In fact, Plaintiffs' unjust enrichment and constructive trust causes of

24  action reference West's "rights to" and "ownership interest" in the "musical

25  compositions" at issue. (Cplt. ¶¶ 75, 78)  The rights to, ownership interest in, and

26  exploitation of copyrightable musical compositions are *precisely* the subject matter

27  of the Copyright Act.  *See* 17 U.S.C. § 102(a)(2) (the Copyright Act applies to

28  "musical works, including any accompanying words").  Specifically, in Plaintiffs'

1   unjust enrichment claim, they allege that EMI took "**assignments of Plaintiffs'**

2   **rights to the compositions** . . . and receiv[ed] licensing and other revenues from the

3   exploitation" thereof.  (Cplt. ¶ 75 (emphasis added))  Similarly, in Plaintiffs'

4   constructive trust claim, they allege that EMI wrongfully has withheld property

5   belonging to Plaintiffs as a result of "the **ownership interest** Plaintiffs conveyed to

6   EMI **in each musical composition** delivered to EMI" before October 1, 2010, and

7   the money resulting "from the **exploitation of any musical composition** Plaintiffs

8   delivered to EMI" after October 1, 2010.  (Cplt. ¶ 78 (emphasis added))  Because

9   the subject matter of Plaintiffs' unjust enrichment and constructive trust causes of

10  action are the same as the Copyright Act, the first prong of complete preemption is

11  satisfied with respect to both claims.

12       34.     *Second*, the purported rights that Plaintiffs seek to protect through their

13  unjust enrichment and constructive trust causes of action are equivalent to those

14  protected by the Copyright Act.  "To survive preemption, the state cause of action

15  must protect rights which are qualitatively different from the copyright rights", and

16  must include an "extra element" that alters the *nature* of the action.  *Del Madera*

17  *Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other*

18  *grounds*, *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir.

19  2011).  However, "[t]he mere presence of an additional element" does not save a

20  claim from preemption, but rather, "[t]he extra element must transform the nature

21  of the action."  *Laws*, 448 F.3d at 1144.  "Although the elements of [a plaintiff's]

22  state law claims may not be *identical* to the elements in a copyright claim", if the

23  "underlying nature" of the state law claims are "part and parcel of a copyright

24  claim", the state law claims are preempted.  *Id.*

25       35.     Here, Plaintiffs' constructive trust cause of action seeks to protect the

26  same rights in the Compositions that the Copyright Act protects, and, therefore,

27  cannot survive preemption.  Several courts within the Ninth Circuit have

28  determined that constructive trust claims arising from the exploitation of

copyrightable works, like the constructive trust claim at issue here, are preempted. *See, e.g.*, *Pizarro*, 2010 WL 11598015 at *2-3 (constructive claim that sought to "vindicate [plaintiff's] rights as an alleged copyright holder" tantamount to copyright infringement claim); *see also Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1428 (C.D. Cal. 1994) (constructive trust claim "in essence merely assert[ed] a protectable interest in [the copyrighted work] and defendants' unauthorized use thereof" and thus was "not qualitatively different" from a copyright claim). This body of case law confirms that Plaintiffs' constructive trust claim is preempted. As set forth above, through their constructive trust claim, Plaintiffs specifically seek to recover Defendants' copyright and other ownership interests in many of the Compositions, and a substantial amount of the revenues that Defendants derived from the exploitation of the Compositions. (Cplt. ¶ 78) In other words, Plaintiffs allege that they own the entirety of the copyrights in the Compositions that West delivered on or after October 1, 2010, and that, because Defendants do not own any portion of the copyrights in these Compositions, Plaintiffs are entitled to all monies that Defendants have retained from their exploitation. Because these allegations are cut from the same cloth as a copyright ownership claim, Plaintiffs' constructive trust claim is preempted. *See Pizarro*, 2010 WL 11598015 at *2-3; *Trenton*, 865 F. Supp. at 1428.

36. Plaintiffs' unjust enrichment claim fares no better. As a threshold matter, "unjust enrichment" is not a valid cause of action in California, and is more "synonymous with restitution". *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). Nevertheless, several courts have independently determined that unjust enrichment claims are preempted when, like here, they are premised on the same rights protected by the Copyright Act. *See, e.g.*, *Ryoo Dental, Inc. v. Han*, Case No. CV 15-308, 2015 WL 4208580, at *4 (C.D. Cal. July 9, 2015) (unjust enrichment claim preempted where it "rests on the same facts and asserts the same rights as a copyright claim"); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115,

1128 (N.D. Cal. 2001) (unjust enrichment claim preempted where it was based on the allegation that "defendants unfairly benefitted from their unauthorized use of" copyrightable work, which is "equivalent to the rights protected in . . . the Copyright Act"); *Melchior*, 106 Cal. App. 4th at 791-93 (unjust enrichment claim preempted where plaintiff sought restitution based on defendant's use and distribution of plaintiff's copyrightable work); *accord Falcon Enters., Inc. v. Nobel Devs., Inc.*, Case No. CV 06-1404, 2007 WL 737347, at *2 (W.D. Wash. Mar. 5, 2007) (unjust enrichment claim derivative of an unfair competition claim preempted "when a plaintiff expressly bases an unfair competition claim on rights granted by the Copyright Act").  In fact, "[w]hile a claim for unjust enrichment may require proof that a benefit was conferred on the defendant, where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue, the rights the plaintiff holds in the copyrighted work, and does not avoid preemption." *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003).

37.    Here, Plaintiffs' unjust enrichment claim seeks recovery based on Defendants' alleged "taking [of] assignments of Plaintiffs' rights to the [C]ompositions . . . and receiving licensing and other revenues from the[ir] exploitation".  (Cplt. ¶ 75)  In other words, Plaintiffs' unjust enrichment claim is premised on Defendants' supposedly improper assertion of copyright interests in, and receipt and retention of monies from exploitations of, the Compositions. Plaintiffs' unjust enrichment claim is virtually identical to unjust enrichment claims in *Zito* and *Melchior*, and, just as the courts there found the latter claims to be preempted, so, too, should this Court determine here.

38.    For these reasons, Plaintiffs' unjust enrichment and constructive trust claims are completely preempted by the Copyright Act, and, as such, give rise to federal question subject matter jurisdiction.

1  **IV.    CONCLUSION**

2         39.    For all of the foregoing reasons, this Court has original jurisdiction of

3  this action pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

4         40.    Accordingly, Defendants hereby remove the above-captioned matter to

5  the United States District Court for the Central District of California.

6  Dated:  March 1, 2019                    MANATT, PHELPS & PHILLIPS, LLP

7                                           By: /s/ Robert A. Jacobs

8                                              Robert A. Jacobs
                                               Maura K. Gierl
9                                              Molly K. Wyler

10                                             *Attorneys for Defendants*
                                               EMI APRIL MUSIC INC. and EMI
11                                             BLACKWOOD MUSIC INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

19STCV02732

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Michael Stern

Court of California, County of Los Angeles on 01/25/2019 11:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas, Deputy Clerk

1  QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2  John B. Quinn (Bar No. 90378)
    johnquinn@quinnemanuel.com
3  Robert M. Schwartz (Bar No. 117166)
    robertschwartz@quinnemanuel.com
4  Aaron Perahia (Bar No. 304554)
    aaronperahia@quinnemanuel.com
5  Rukayatu Tijani (Bar No. 320756)
    rukayatutijani@quinnemanuel.com
6  865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
7  Telephone:     (213) 443-3000
    Facsimile:      (213) 443-3100
8
    Attorneys for Plaintiffs
9

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **LOS ANGELES COUNTY**

| | |
|---|---|
| 12  PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST | Case No. |
| 13  BRANDS, LLC, a Delaware limited liability corporation; KANYE WEST, an | **COMPLAINT FOR:** |
| 14  individual; and YE WORLD PUBLISHING, INC., a Delaware | **1. DECLARATORY RELIEF** |
| 15  corporation, also doing business as YE WORLD MUSIC | **2. RESTITUTION/UNJUST ENRICHMENT** |
| 16              Plaintiffs, | **3. CONSTRUCTIVE TRUST** |
| 17      vs. | |
| 18  EMI APRIL MUSIC, INC., a Connecticut | |
| 19  corporation; EMI BLACKWOOD MUSIC, INC., a Connecticut corporation; and | |
| 20  DOES 1-10, | |
| 21              Defendants. | |

22

23

24

25

26

27

28

0911

1    Plaintiffs Please Gimme My Publishing, Inc., West Brands, LLC, Ye World Publishing,

2    Inc., Ye World Music, and Kanye West ("Plaintiffs"), for their complaint against EMI April

3    Music, Inc. and EMI Blackwood Music, Inc. ("EMI"), and Does 1-10, allege as follows:

4                                    <u>**NATURE OF THE DISPUTE**</u>

5        1.      Kayne West brings this action to obtain his freedom from a contract with EMI that

6    he has been laboring under since 2003.   Even if the contract were not lopsided in EMI's favor

7    (it is), even if its terms valued Mr. West's artistic contributions in line with the spectacular success

8    he has achieved for EMI (they do not), and even if EMI had not underpaid Mr. West what it owes

9    him (EMI has), he would be entitled to be set free from its bonds.   California law, as embodied in

10   Labor Code section 2855, prohibits EMI from enforcing obligations under a personal services

11   contract more than seven years after the commencement of services under that contract.   Yet that

12   is exactly what EMI has knowingly, misleadingly, and unlawfully done to control and exploit one

13   of the world's most iconic, multi-faceted, and productive talents.

14       2.      It makes no difference under section 2855 whether the contract is otherwise fair, or

15   whether the employer has fulfilled its end of the bargain.   It matters only whether the services

16   began more than seven years ago.   There can be no dispute that this happened here.   The seven

17   year period ended under this contract on October 1, 2010.   For more than eight years thereafter—

18   more than *double* the maximum seven year period California law allows—EMI has enforced

19   rights in violation of California law, depriving Mr. West of the "breathing period" that California

20   law mandates.

21       3.      The principle that one who renders personal services is entitled to a regular

22   "moment of freedom" to decide whether to continue working for the same employer is an essential

23   pillar of California public policy.   It has existed since 1872 for the protection of all who render

24   personal services in the State.   In 1931, the Legislature codified the specific period of seven years.

25   So important is this law that it may not be waived by a writing extracted from the employee.

26       4.      Mr. West has been working for EMI under the 2003 contract for over 15 years.

27   EMI has unjustly earned millions of dollars by tethering Mr. West's songwriting efforts for an

28   unlawful term.   He is entitled to his freedom.   By this lawsuit, Mr. West seeks a judicial

1911

1  declaration that EMI may no longer enforce that contract against him.  Mr. West also seeks a

2  declaration that EMI may not exploit the compositions he wrote and delivered to EMI once the

3  contract became unenforceable, in October 2010.  To allow otherwise would allow EMI to obtain

4  the benefit of an unenforceable contract.  Instead, the Court should declare that Mr. West is

5  entitled to ownership of those works, free and clear of any obligations to EMI.  In addition, EMI

6  should be ordered to restore to Mr. West the portion of revenue his songs generated that EMI

7  retained after the contract was no longer enforceable, for at least the four years before Mr. West

8  filed this lawsuit.

9  **JURISDICTION AND VENUE**

10  5.  This Court has jurisdiction over the subject matter of this action pursuant to

11  Sections 410.10 and 1060 of the California Code of Civil Procedure.

12  6.  This action is properly filed with this Court because Mr. West is a resident of Los

13  Angeles County, EMI maintains offices and does business within, and/or has continuous and

14  systematic contacts with entities and persons and entities in Los Angeles County, and the wrongful

15  acts of EMI were intended to, and did, cause harm to Mr. West in Los Angeles County.

16  **THE PARTIES**

17  7.  Plaintiff Kanye West is an individual who resides and works in Los Angeles

18  County.  He has rendered services under the contract at issue in this case at various locations

19  throughout the City and County of Los Angeles.

20  8.  Plaintiff West Brands, LLC is a limited liability corporation organized under the

21  laws of the State of Delaware, with its principal place of business in Los Angeles County.  It

22  exists to, among other reasons, furnish the services of and own assets created by Mr. West.

23  9.  Plaintiff Ye World Publishing, Inc, also doing business as Ye World Music, is a

24  corporation organized under the laws of the State of Delaware, with its principal place of business

25  in Los Angeles County.  It exists to, among other reasons, furnish the services of and own assets

26  created by Mr. West.

27  10.  Plaintiff Please Gimme My Publishing, Inc. is a corporation organized under the

28  laws of the State of New York, with its principal place of business in Los Angeles County.  It

COMPLAINT

1  exists to, among other reasons, furnish the services of and own assets created by Plaintiff Kanye

2  West.

3       11.    Defendant EMI April Music, Inc. is a corporation organized under the laws of the

4  State of Connecticut and is an affiliate of Defendant EMI Blackwood Music, Inc.   Plaintiffs are

5  informed and believe that EMI April Music handles publishing activities for compositions whose

6  public performance rights are licensed to the American Society of Composers, Authors, and

7  Publishers ("ASCAP").

8       12.    Defendant EMI Blackwood Music, Inc. is a corporation organized under the laws

9  of the State of Connecticut and is an affiliate of Defendant EMI April Music, Inc.   Plaintiffs are

10 informed and believe that EMI Blackwood Music handles publishing activities for compositions

11 whose public performance rights are licensed to Broadcast Music Inc. ("BMI").

12      13.    These sister corporations claim to be among the largest music publishers in the

13 world, controlling the publishing rights to millions of compositions.   EMI maintains corporate

14 offices and conducts extensive business activities in Los Angeles County.

15      14.    Plaintiffs are unaware of the true names and capacities of the Defendants sued

16 herein as DOES 1 through 10, and therefore sues these Defendants by such fictitious names.

17 Plaintiffs are informed and believes, and on that basis alleges, that each of such fictitiously named

18 Defendants was acting as the agent, partner, or joint venturer of the other Defendants and is jointly

19 and severally responsible for the acts and omissions alleged herein.

20           **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21 A.    **Kanye West becomes a force in the music business.**

22      15.    In a career that has thus far spanned over twenty years, and is far from peaking,

23 Kayne West has established himself as one of the preeminent and commercially successful

24 songwriters, music producers, recording artists, fashion designers, and trendsetters of our time.   In

25 April 2015, *Time* magazine named him of the "100 Most Influential People in the World."

26      16.    Mr. West was born in Atlanta in 1977 and grew up mostly in Chicago.   Although

27 offered a scholarship to study painting at Chicago's American Academy of Art, he enrolled at

28 Chicago State University, intending to major in English.

1    – 17.– By the time he began college, Mr. West had already pursued his interest in music

2    by producing records for other artists in the Chicago area.   His talents first came to the attention

3    of the industry through his skill to create hits, starting in the mid-1990s, while he was still in his

4    late teens, for such performers as Foxy Brown, Harlem World, Nas, and D-Dot.

5        18.    The year 2000 turned into a breakout year for Mr. West.   He produced what has

6    come to be regarded as one of the most influential hip-hop albums of all time, *The Blueprint*, for

7    recording artist Jay Z.   Mr. West also co-wrote four of the songs.   In addition to helping

8    revitalize Jay Z's career, Mr. West's work on that album caused other recording artists, including

9    Beanie Sigel, Freeway, and Cam'ron, to seek him out to produce their recordings.   During this

10    period, he also gained significant recognition as a songwriter, capable of writing hits for other

11    performers, such as Janet Jackson, Alicia Keys, and Ludacris.

12    19.  Mr. West moved to California in the early-2000s and continued to write and

13    produce hit records.   In 2002, he was injured in a near-fatal car accident, which resulted in his jaw

14    being wired shut for several weeks.   While in the hospital, he wrote a song about the experience,

15    "Through the Wire," when his mouth was still wired shut—a fact he references in the lyrics.   The

16    song became the lead single on his first solo album, *College Dropout*.   Rock-A-Fella Records

17    released the album in February 2004 and "Through the Wire" quickly rose to reach the #2 position

18    in *Billboard* magazine's Hot 200 list of the top-selling singles in the country.   Another hit single

19    from the album, "Jesus Walks," won a Grammy award in 2005.   The album debuted in the #2 spot

20    on *Billboard*, and reached "platinum" status (one million units sold) within two months.   It has

21    sold more than 4 million units.   To date, Mr. West has won 21 Grammy awards and received 69

22    nominations, making him one of the top Grammy winners in history and among the most

23    decorated hip-hop artists in the world.

24    **B.**    <u>**Mr. West signs a contract with EMI in 2003 for the publishing rights to his songs**</u>.

25    20.    A music publisher represents a songwriter in several aspects of the music business.

26    It acts as a representative for the composer if a recording artist wants to record one of the

27    songwriter's works or if someone, such as the producer of a movie or commercial advertisement,

28    wants to use a recording of the song in a movie or TV ad.   A publisher typically retains a

1   percentage of the license fees paid for those and other uses of the work.   It often agrees to
2   advance the songwriter funds against royalties from works the songwriter will create.
3       21.   EMI claims to be one of the largest, if not *the* largest music publishers in the world.
4   It claims to have more than two million songs in its catalog and generate more than $4 billion
5   annually from their exploitation.
6       22.   During the recording of *College Dropout*, EMI approached Mr. West to negotiate a
7   contract for the music publishing aspects of his career.   Pursuant to an agreement that purported
8   to be effective as of October 1, 2003, Mr. West and Ye World Publishing, Inc., the company
9   through which he then conducted his songwriting activities, entered into an agreement with EMI
10   (the "2003 EMI Contract"), which Plaintiffs incorporate herein in full by this reference.   Plaintiffs
11   will lodge a true and correct copy of the contract with the Court, upon entry of a protective order,
12   as "Exhibit A."
13       23.   The 2003 EMI Contract is an agreement by which EMI obtained Mr. West's
14   personal services as a songwriter.   It states that, during its "Term" (as EMI defined that, and as
15   discussed below), Mr. West will not "either directly or indirectly write musical compositions for"
16   anyone other than EMI.   *See* ¶ 16.02.   It requires Mr. West to deliver to EMI—and only EMI—
17   the publishing rights to every song Mr. West writes during that "Term."   *See* ¶ 2.01.
18       24.   Under the 2003 EMI Contract, Mr. West agreed to write and deliver to EMI a
19   minimum number of new songs (or "Compositions") every "Contract Year" (as EMI defined that
20   term and as discussed below) that were good enough to be chosen to be recorded on an album
21   released by one of the major record companies.   If those albums were successful enough, EMI
22   would pay "royalties" to Mr. West, as defined in the contract.   EMI agreed to pay Mr. West an
23   advance of a few hundred thousand dollars against those potential royalties.
24       25.   When EMI put that in writing, it was not nearly that simple.   The 2003 EMI
25   Contract is 45 pages long and contains dozens of provisions.   EMI defined key contract terms to
26   mean something other (or more) than what one would expect them to mean in plain English.   In
27   so doing, EMI placed significant, additional burdens on Mr. West's work.
28

COMPLAINT

26.     The 2003 EMI Contract's "Term" consists of three "Contract Years" plus one optional "Contract Year."  *See* ¶¶ 3.02 & 3.03.   The contract requires Mr. West to write and deliver to EMI, in each "Contract Year" during the "Term," at least three "Full New Compositions."

27.    As defined by EMI, the term "Full New Compositions" does not mean merely an original song that Mr. West has written during the contract term.   Each such song must also be "embodied" on a studio (as opposed to a concert) record album having a playing time of at least 35 minutes, released by one of a handful of listed "Major" record labels, during the applicable "Contract Period."  *See* ¶¶ 1.03, 1.09 & 4.01.   In addition, a "Composition" counts only if the record company has agreed to pay a specific, minimum mechanical royalty for the use of his composition.  *See* ¶ 4.01(b).

28.     EMI defined the word "Full" (as used in the term "Full New Compositions") to impose additional requirements on Mr. West.   "Full" means that, if Mr. West is not recognized as the sole writer of the composition, that composition counts towards his minimum number only as to the fractional amount of credit Mr. West receives for it.   But under the contract, EMI further reduced the credit for such a song, using a formula tilted in EMI's favor.  *See* ¶¶ 4.01 & 5.04(b).   In a business where a song written by one person often gets added to by others during the studio recording process, that can mean that Mr. West has to write and have recorded many more than three new songs in a "Contract Year" to satisfy EMI.

29.     To determine how long Mr. West is required to render his services exclusively to EMI, the 2003 EMI Contract defines the term "Contract Year" to mean something more than 12 months.   To EMI, a contract, a "Contract Year" means the *longer* of either 12 months from the commencement of that "year" or *however long* it might take Mr. West to write the minimum number of qualifying songs required of him in any "Contract Year."  *See* ¶ 3.04.   Thus, if in a given "Contract Year" Mr. West is required to write three "Full New Compositions," that contract year would span *at least* 12 months from when it began.   But for purposes of determining the term of Mr. West's servitude to EMI, that "year" would not actually *end* until Mr. West wrote and delivered to EMI the last of those three "Full New Compositions," that is, until major record

1   companies released enough studio albums containing enough songs, written in whole or in part by

2   Mr. West, that added up, under EMI's song credit formula, to three such "Full New

3   Compositions."  Depending on numerous factors beyond Mr. West's contract, that could take one

4   calendar year, two calendar years, or many more calendar years.   As a result, EMI could purport

5   to require Mr. West to continue to render exclusive services to EMI for years, perhaps even for the

6   rest of his life.

7         30.   EMI's ownership interest in Mr. West's songs was not confined to those that were

8   eventually recorded.  Instead, EMI obtained ownership of *every* song Mr. West would write

9   during the Term, regardless of whether it was recorded on an album released by a major record

10  company, recording on an album released by some other company, or never recorded by anyone.

11  EMI owns them all.  *See* ¶¶ 2.01, 5 & 8.01.

12        31.   Nor do EMI's rights end at the end of the contract's "Term."   No matter when the

13  contract term ends, the contract states that EMI retains its rights to all new compositions for the

14  *longer* of 12 years (later reduced to 10 years), or when EMI has recouped all advances it made to

15  Mr. West, or when he has paid EMI 120% of all unrecouped advances.  *See* ¶ 7.01(a)–(c).   Only

16  then, if ever, do the publishing rights to Mr. West's compositions revert to him.

17        32.   Under the contract, Mr. West was eligible to receive additional money from EMI

18  for his songs.   That would depend on whether the albums on which recording of his songs were

19  included generated enough revenue to EMI (which held the right to license the use of Mr. West's

20  songs to a record company that wanted to record them) to exceed the advance EMI paid Mr. West.

21        33.   That determination is made under the "royalty" provisions of the contract.  *See*

22  ¶ 10.  From the revenues that EMI would receive from the licensing of Mr. West's songs, EMI

23  first recoups all costs associated with generating revenue from the compositions.   This includes an

24  EMI "Administration Fee" (as defined), the cost of collecting all income, payments made to co-

25  composers, the cost of lead sheets and copyright registrations, fees paid to ASCAP, BMI, the

26  Harry Fox Agency, and others for licensing performance and synchronization rights, certain EMI

27  legal fees, and any other "reasonable and customary" out-of-pocket expenses related to Mr. West's

28  compositions and EMI's exploitation of them.  *See* ¶ 1.10.   EMI agreed to "credit" Mr. West's

1  royalty account with certain percentages of whatever remains, depending on the territory and

2  nature of the revenue.

3  **C.**    **EMI extends the 2003 EMI contract through 2017 and beyond**.

4        34.    Mr. West's career exploded after the February 2004 release of *College Dropout*.

5  Over the next nine years, he released five new studio albums that sold millions of copies.   He

6  appeared live in concert hundreds of times to entertain millions of fans.   And he became one of

7  the most influential and successful entertainers on the planet.   Those studio albums were *Late*

8  *Registration* (2005); *Graduation* (2007), *808s & Heartbreak* (2008); *My Beautiful Dark Twisted*

9  *Fantasy* (2010), and *Yeezus* (2013).   Mr. West wrote many of the songs on those albums, and

10  wrote more during these years for others to record.

11       35.    During those nine years, none of this escaped EMI's attention.   At every turn, it

12  sought to extend the term of its exclusive control over Mr. West's songwriting services and, as

13  alleged in more detail below, EMI did so knowing that it was violating Mr. West's fundamental

14  rights under California law.

15  **The 2005 EMI Extension**

16       36.    Pursuant to a document entered into as of May 1, 2005, which Plaintiffs incorporate

17  herein in full by this reference, EMI obtained an option to extend the "Term" of the contract for an

18  additional "Contract Year" and to have Mr. West write an additional three "New Compositions"

19  during that period (the "2005 Extension").   Plaintiffs will lodge a true and correct copy of the

20  document with the Court, upon entry of a protective order, as "Exhibit B."

21  **The 2006 Extension**

22       37.    Pursuant to a document entered into as of October 1, 2006 (the "2006 Extension"),

23  which Plaintiffs incorporate herein in full by this reference, EMI purported to extend the "Term"

24  of the contract.   Plaintiffs will lodge a true and correct copy of the document with the Court, upon

25  entry of a protective order, as "Exhibit C."

26       38.    Under the 2006 Extension, EMI replaced the 2005 grant of an optional "Contract

27  Year" with an entirely new "Contract Period" (the "Second Contract Period") that would begin on

28  October 1, 2006 and run continuously for three new "Contract Years."   In addition, EMI

1  purportedly obtained an additional "Option Period" to commence "immediately upon the

2  expiration" of the Second Contract Period, that would be of equal duration to the Option Period

3  EMI had obtained in the 2003 EMI Contract, that is, the longer of 12 months or the date by which

4  Mr. West wrote and delivered the required number of "New Compositions."   EMI also

5  purportedly obtained a "Second Option Period" that, if exercised, would commence "immediately

6  upon the expiration" of the "First Option Period" and end when Mr. West had written and

7  delivered the required number of "New Compositions."   At a minimum, coupled with the 2003

8  EMI Contract, EMI obtained under the 2006 extension a continuous period of Mr. West's

9  exclusive songwriting services of at least six calendar years, plus two optional calendar years,

10  which required Mr. West to write and deliver the minimum number of New Compositions every

11  "Year."   If he did not do so within those periods, the term of the contract had no end.

12      39.   Further, EMI raised the bar on its requirements for Mr. West's songwriting during

13  the two Option Years.   Mr. West had to write *twice* the number of songs (a total of six in that

14  "Year").   And to qualify as "New Compositions," three of Mr. West's six new annual songs

15  would have to be released on an album by an artist whose immediately prior album had sold at

16  least 600,000 units (100,000 more than required to reach the Recording Industry Association of

17  America's "Gold" status) or on any album recorded by Mr. West himself.   As a practical matter,

18  this pressured Mr. West to increase his pace of recording his own studio albums.

19      40.   There was no break in the services Mr. West was obligated to render under the

20  2003 EMI Contract and the new term provided under the 2006 Extension.

21      41.   The 2006 Extension contains a paragraph that reflects EMI's awareness that its

22  contract with Mr. West violated California public policy, and particularly the Seven Year Rule

23  embodied in California Labor Code section 2855.   Paragraph 10 in pertinent part disclaims that

24  "for purposes of California law," neither the 2003 EMI Contract nor the 2006 Extension

25  "constitute contracts for any of your personal services."   Instead, the contract requires Mr. West

26  merely to "deliver" to EMI his ownership interest in the songs he writes.   It states further that Mr.

27  West would not "make any claims that you are not required, under California law or otherwise, to

28  fulfill all obligations set forth in the [2003 EMI Contract] and/or this Modification."   And it says

1  that Plaintiffs "acknowledge that this paragraph is to avoid compromise of [EMI]'s rights by
2  reason of a finding of applicability of California law but does not contain an admission by [EMI]
3  that California law is actually applicable."   In short, EMI inserted self-serving language in the
4  contract to avoid the fact that EMI was seeking to enforce a personal services agreement against
5  Mr. West more than seven years after he commenced his services under it, which is a direct
6  violation of California Labor Code section 2855.

7        42.     In addition, the waiver EMI sought to obtain is itself unlawful.   Given that, by its
8  own acclaim, EMI is one of the biggest music publishers in the world, the lawyers in its legal
9  department were well aware that the California Court of Appeal had, nearly 70 years earlier,
10  declared that such employer-inserted clauses were unenforceable.   *See De Havilland v. Warner*
11  *Bros.*, 67 Cal. App. 2d 225, 236 (1944) (the rights granted an employee under Section 2855 "may
12  not be contravened by private agreement").   That remains the law today.

13       43.     Not only are the provisions of paragraph 10 of the 2006 Extension unenforceable,
14  they are comically inconsistent with a paragraph in the contract that appears right above it.
15  Whereas EMI sought in paragraph 10 to avoid application of Labor Code Section 2855 to Mr.
16  West's services by writing that the contract did not constitute one for his personal services, EMI
17  took the opposite position in paragraph 8.   There, EMI wrote:

18         You (Mr. West) hereby represent and warrant that to [EMI] that You will,
19         throughout the entire Term as extended by this Modification, remain actively
20         involved in writing, recording and producing Compositions and Major Label
21         Albums, as Your principle occupation.   At no time during the Term will you seek
22         to retire as a songwriter, recording artist or producer or take any extended hiatus
23         during which you are not actively pursuing Your musical career in the same basic
24         manner as You have pursued such career to date.   (The preceding representation
25         shall not be deemed to prevent You from taking a vacation of limited duration.)

26       44.     EMI would have had no interest in ensuring that Mr. West continued to write,
27  record, and produce songs, and continue to "actively" pursue his music career, unless it was party
28  to a contract with Mr. West that required him to render personal songwriting, recording, and

1  producing services.   Under the 2003 EMI Contract, only Mr. West can discharge the songwriting

2  obligations.   A song written by anyone else does not satisfy his obligations to EMI.

3       45.     Other aspects of the 2003 EMI Contract make clear that it is an agreement for Mr.

4  West's personal services and not merely for the "delivery" of "rights."   For example, it states that,

5  if Mr. West desires during the Term to write new compositions for use in a movie or TV program,

6  EMI shall "furnish Your writing services on a 'loan out' basis to write such Film music."   *See*

7  ¶ 8.05(d). Another provision gives EMI the right to secure insurance securing Mr. West's life and

8  capacity, in whatever amount EMI choses and to require Mr. West to attend any reasonable

9  medical examinations required by the insurer.   *See* ¶ 15.01.   These are expected provisions of a

10  personal services agreement, particularly one where the services are valuable and unique.

11       46. ..  The statement in paragraph 10 of the 2006 Extension that disclaims that Mr. West

12  is rendering personal services is thus a mere legal fiction, invented by EMI to hide the fact that the

13  contract plainly requires Mr. West to render services to EMI, and that EMI was planning

14  to have Mr. West do so for more than seven years.   (That said, Mr. West appreciates that EMI has

15  been willing during these years to allow him to take vacations "of limited duration.")

16  **The 2009 Extension**

17       47.     Three years (and a month) after the parties signed the 2006 Extension, EMI

18  purportedly obtained a new extension of the 2003 EMI Contract (the "2009 Extension").

19  Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a

20  protective order, as "Exhibit D."

21  .. ---48. .  Under the 2009 Extension, EMI inserted an additional "Contract Period" (the

22  "Third Contract Period") that would begin on November 1, 2009 and run continuously for three

23  new "Contract Years," that is, to the latter of October 31, 2012 or delivery of the required number

24  of New Compositions.   At the end of that period, EMI would retain its prior options for two

25  additional "Optional Years."   Mr. West purportedly became obligated to write and deliver 18

26  New Compositions during the new, "Third Contract Period," with each composition subject to the

27  same requirements found in the prior contract and extension.

28

1    49.    The 2009 Extension contains the same self-serving and unenforceable disclaimer

2    regarding Mr. West's personal services that the 2006 Extension contains (found in paragraph 9 in

3    the 2009 Extension), and the same contradictory representation and warranty from Mr. West that

4    he will continue to remain actively involved in writing, recording, and producing New

5    Compositions throughout the term, again subject to taking "a vacation of limited duration" (found

6    in paragraph 7 in the 2009 extension).

7    50.    There was no break in the services Mr. West was obligated to render under the

8    2003 EMI Contract and the new term provided under the 2009 Extension.

9    **The 2011 Extension**

10    51.    Two years after the parties signed the 2009 Extension, on November 1, 2011, EMI

11    purportedly obtained a new extension of the 2003 EMI Contract (the "2011 Extension").   EMI

12    has a copy of the 2011 Extension.   Plaintiffs will lodge a true and correct copy of the document

13    with the Court, upon entry of a protective order, as "Exhibit E."

14    52.    When Mr. West signed the 2011 extension, more than seven years had passed since

15    he began rendering his personal services to EMI under the 2003 EMI Contract.   In fact, it had

16    been eight years and one month.   Even so, EMI obtained his signature on a contract extension that

17    would purportedly extend the uninterrupted period of his services even further.

18    53.    In the 2011 Extension, EMI acknowledged that the Term of the existing contract, as

19    extended, required Mr. West to render services under the Third Contract Period until *the later of*

20    November 31, 2012 (more than *nine years* after he began rendering services under it), or 30 days

21    after he wrote, recorded, and delivered the required number of New Compositions.

22    54.    Notwithstanding that, EMI purportedly obtained three "Option Periods," the first of

23    which would begin, if exercised, immediately upon the expiration of the Third Contract Period,

24    the second immediately upon the expiration of the first, and the third immediately upon expiration

25    of the second, so that Mr. West would be obligated to continue to render his personal services until

26    the later of October 31, 2015 or 30 days after he fulfilled his obligation to deliver the required

27    number of New Compositions for each of those "Option Periods."   At that point, Mr. West's

28    service to EMI under the 2003 EMI Contract would have spanned *more than 12 years*.

55.     EMI also required Mr. West to write and deliver at least six new songs during each new "Option Period," three of which would have to be recorded by Mr. West or an artist whose immediately prior album had sold at least 400,000 units.

56.     As with the prior two extensions, the 2011 Extension contains the same self-serving and unenforceable disclaimer regarding Mr. West's personal services that the 2006 Extension contains (found in paragraph 8 in the 2011 Extension), and the same contradictory representation and warranty from Mr. West that he will continue to remain actively involved in writing, recording, and producing New Compositions throughout the term, again subject to taking "a vacation of limited duration" (found in paragraph 7 in the 2009 extension).

57.     By the end of 2011, Mr. West had written, solely or with other writers, more than 200 compositions and delivered the rights to those compositions to EMI.   Those songs include many of the most influential and successful songs written in recent years.

**The 2014 Extension**

58.     Three years after the parties signed the 2011 Extension, on November 5, 2014, EMI purportedly obtained a further extension of the 2003 EMI Contract (the "2014 Extension"). Plaintiffs will lodge a true and correct copy of the document with the Court, upon entry of a protective order, as "Exhibit F."

59.     The 2014 Extension recites that the "Third Contract Period" granted EMI under the 2009 Extension was then still currently in effect, and that Mr. West still needed to write and have recorded eight "New Compositions" to fulfill his obligations to EMI for that part of the contract's Term.  Had the contract's "years" actually been tied to the calendar, and not to the number of songs Mr. West wrote and recorded during an artificial amount of time, the "Third Contract Period" would have ended in 2012; yet two years later, it was still ongoing.

60.     Nonetheless, EMI agreed that the "Third Contract Period" would be deemed to end on December 31, 2014, at which point the first of EMI's three "Option Periods" would immediately begin, during which Mr. West had to write and record six New Compositions.

61.     The 2014 Extension also contains an acknowledgement from EMI that it had underpaid royalties to Mr. West, from the beginning of 2014, by using improper rates.

1911

1    62.    The 2014 Extension contains the same self-serving and unenforceable disclaimer

2    regarding Mr. West's personal services and the same contradictory representation and warranty

3    from Mr. West that he will continue to remain actively involved in writing, recording, and

4    producing New Compositions throughout the term.

5    63.    When Mr. West signed the 2014 extension, more than seven years had passed since

6    he began rendering his personal services to EMI under the 2003 EMI Contract.   In fact, it had

7    been *eleven years* and one month.   Even so, EMI obtained his signature on a contract extension

8    that would extend the uninterrupted period of his services from 2003 even further.

9    64.    EMI contends that the 2003 EMI Contract is still in effect.   According to EMI, at

10   the end of the "Third Contract Period" it exercised its right to the "First Option Period" granted

11   under the 2014 Extension, and thereafter to the "Second Option Period" and "Third Option

12   Period."   EMI also contends that Mr. West needs to write and have recorded more songs to satisfy

13   his minimum number of "Full New Compositions" to bring the "Second Option Period" to a close.

14   At that point, to satisfy EMI, he will have to write and have recorded *seven* more songs.   In other

15   words, although Mr. West has been rendering personal services to EMI continuously since 2003,

16   from EMI's point of view, the term of this contract has no end in sight.

17                           **FIRST CAUSE OF ACTION**

18                           **(Declaratory Relief)**

19   65.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in

20   Paragraphs 1 through 64 above, as though fully set forth.

21   66.    The *2003 EMI Contract, 2006 Extension, 2009 Extension, 2011 Extension, and*

22   *2014 Extension* are referred to herein collectively as the "EMI Contract and Extensions."

23   67.    The EMI Contract and Extensions constitutes a personal services contract within

24   the meaning of California Labor Code section 2855.

25   68.    More than seven years has passed since Mr. West began to render his personal

26   services under the EMI Contract and Extensions.

27   69.    At no point since the commencement of Mr. West's services under the EMI

28   Contract and Extensions in 2003 has he enjoyed any "moment of freedom," that is, any moment

1  during which he was freed from his obligations under the contract and able to offer his services to

2  anyone else, take a break from his songwriting career, or even retire from it altogether.

3       70.     There now exists a dispute between Plaintiffs and Defendant EMI regarding the

4  parties' rights and obligations to one another under the EMI Contract and Extensions.

5       71.     Plaintiffs desire a judicial declaration of their rights under the EMI Contract and

6  Extensions, including that:

7           a.     Pursuant to California Labor Code section 2855, EMI has no further right to

8              enforce Plaintiffs' obligations under the EMI Contract and Extensions and no further right

9              to their services under that contract or otherwise.

10          b.     Insofar as Paragraph 11 of the EMI Contract's 2006, 2009, 2011, and 2014

11             Extensions deprives Plaintiffs of the protections of California law and public policy,

12             including California Labor Code section 2855, it violates California law and public policy

13             and is unenforceable.

14          c.     The Term of the EMI Contract and Extensions should be deemed to have

15             ended on October 1, 2010.

16          d.     All rights in and to any intellectual property created by Plaintiffs on or after

17             October 1, 2010 should revert and be conveyed to Plaintiffs immediately, subject to no

18             financial or other obligations to EMI.

19      72.     A declaration of the parties' foregoing rights under the EMI Contract and

20  Extensions is necessary and appropriate at this time so that Plaintiffs and Defendants can ascertain

21  their rights and obligations to one another and avoid further disputes.

22                          **SECOND CAUSE OF ACTION**

23                          **(Restitution/Unjust Enrichment)**

24      73.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in

25  Paragraphs 1 through 64 above, as though fully set forth.

26      74.     As of October 1, 2010, when the parties' contract ceased being enforceable under

27  California law, EMI no longer possessed the right to receive Plaintiffs' services.

28

75.     Despite that: (a) Plaintiffs continued to provide substantial and valuable services and benefits to EMI; (b) EMI has continued to receive the results and proceeds of Plaintiffs' services; and (c) EMI has substantially benefitted from those services, including by taking assignments of Plaintiffs' rights to the compositions Mr. West delivered to EMI on and after October 1, 2010 and receiving licensing and other revenues from the exploitation, on and after that date, of compositions written both before and after October 1, 2010.

76.     As a result of the foregoing, EMI has become unjustly enriched, and owes restitution to Plaintiffs for those rights, assets, and revenues, in an amount to be determined at trial but substantially in excess of the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION

### (Constructive Trust)

77.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in Paragraphs 1 through 64 above, as though fully set forth.

78.     Beginning on and after October 1, 2010, EMI has been holding the following property and gains that belong to Plaintiffs: (a) the ownership interest Plaintiffs conveyed to EMI in each musical composition delivered to EMI on or after October 1, 2010, and (b) the monies EMI received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of any musical composition Plaintiffs delivered to EMI, both before and after October 1, 2010, less any monies EMI has already paid to Plaintiffs with respect to such exploitation.

79.     Plaintiffs are entitled to have the Court impose a constructive trust for Plaintiffs' benefit on the foregoing property and gains, and compel EMI to convey them to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.     For a judicial declaration of Plaintiffs' rights, as set forth above;

B.     For an award to Plaintiffs of all monies EMI received, during the four years before Plaintiffs filed this suit and through the date of judgment, from the exploitation of

1    any musical composition Plaintiffs delivered to EMI on or after October 1, 2010,

2    less any monies EMI has already paid to Plaintiffs from such exploitation.

3    C.   For the imposition of a constructive trust for the benefit of Plaintiffs with regard to:

4    (1) the ownership interest Plaintiffs conveyed to EMI in each musical composition

5    delivered to EMI on or after October 1, 2010, and (2) all monies EMI received,

6    during the four years before Plaintiffs filed this suit and through the date of

7    judgment, from the exploitation of any musical composition Plaintiffs delivered to

8    EMI on or after October 1, 2010, less any monies EMI has already paid to Plaintiffs

9    from such exploitation.

10    D.   For an Order conveying from EMI to Plaintiffs all right, title, and interest in each

11    musical composition Plaintiffs delivered to EMI on or after October 1, 2010;

12    E.   For Plaintiffs' attorneys' fees and costs; and

13    F.   For such other and further relief as the Court deems appropriate and proper.

14

15   Dated:   January 25, 2019.                    QUINN EMANUEL URQUHART
                                                         & SULLIVAN, LLP
16

17

18                                                       Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 01:24 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk
19STCV02732

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

EMI APRIL MUSIC, INC., a Connecticut corporation; EMI
BLACKWOOD MUSIC, INC., a Connecticut corporation; and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST BRANDS, LLC,
a Delaware limited liability company; KANYE WEST, an individual, and YE WORLD
PUBLISHING, INC., a Delaware corporation, also doing business as YE WORLD MUSIC

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of Los Angeles County | **CASE NUMBER:**<br>*(Número del Caso):* |
|---|---|

Stanley Mosk Courthouse
111 N. Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Quinn Emanuel, John Quinn, 865 S. Figueroa Street, 10th FL, Los Angeles, CA 90012, (213) 441-3000

| DATE:<br>*(Fecha)* 01/25/2019 | Sherri R. Carter Executive Officer / Clerk of Court | Clerk, by<br>*(Secretario)* Kristina Vargas | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* EMI APRIL MUSIC, INC., a Connecticut corporation

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

### NOTICE OF CASE ASSIGNMENT

### UNLIMITED CIVIL CASE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

01/25/2019

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____Kristina Vargas_____ Deputy

Your case is assigned for all purposes to the judicial officer indicated below.

CASE NUMBER:
19STCV02732

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Michael L. Stern | 62 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/31/2019
      (Date)

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By Kristina Vargas _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Electronically FILED by Superior Court of California, County of Los Angeles on 01/25/2019 STO VOE Sherri R. Carter, Executive Officer/Clerk of Court, by K. Vargas,Deputy Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Aaron Perahia (SBN 304554)<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>TELEPHONE NO.: 213-443-3000    FAX NO.: 213-443-3100<br>ATTORNEY FOR *(Name):* Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

CASE NAME:
Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2)*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☑ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* Three
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 25, 2019
Aaron Perahia
_(TYPE OR PRINT NAME)_                    ►         _(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc.          CASE NUMBER

# CIVIL CASE COVER SHEET ADDENDUM AND
# STATEMENT OF LOCATION
# (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
| --- |

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos – Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc.   CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Non-Personal Damage/ Wro** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employme** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | **1, 2, 3** |
| | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Co** | | |
| Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008  Contract/Warranty Breach –Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | ☑ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real  rope** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | **2, 6** |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | **2, 6** |
| | ☐ A6032  Quiet Title | 2, 6 |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Detaine** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc.     CASE NUMBER

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | ☐ A6153  Writ – Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | ☐ A6160  Abstract of Judgment | 2, 6 |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment With Damages | 2, 3, 9 |
| | ☐ A6123  Workplace Harassment With Damages | 2, 3, 9 |
| | ☐ A6124  Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | ☐ A6190  Election Contest | 2 |
| | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | ☐ A6100  Other Civil Petition | 2, 9 |

Left margin vertical labels: dici  Review | ga | ly Compl | Provisio | Enforcemei of Judgmei | Miscellaneous Civil Complaints | Miscellaneous Civil Petitions

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

SHORT TITLE: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc.          CASE NUMBER

**Step 4:  Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the
type of action that you have selected.  **Enter the address which is the basis for the filing location, including zip code.**
(No address required for class action cases).

| REASON: <br> ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☑ 9. ☐ 10. ☐ 11. | ADDRESS: <br><br> 111 N. Hill St, <br> Los Angeles, CA 90012 |
|---|---|

| CITY: <br> Los Angeles | STATE: <br> CA | ZIP CODE: <br> 90012 | |
|---|---|---|---|

**Step 5:  Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of
the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY
COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev.
02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a
minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum
must be served along with the summons and complaint, or other initiating pleading in the case.

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**

**Consumer Attorneys Association of Los Angeles**

**Southern California Defense Counsel**

**Association of Business Trial Lawyers**

**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION -- DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

SHORT TITLE:                                                          CASE NUMBER:

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

SHORT TITLE:                                                    CASE NUMBER:

**The following parties stipulate:**

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _

Date:

_____          _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| | CASE NUMBER: |
|---|---|
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

SHORT TITLE.                                                                              CASE NUMBER:

       discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

   i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

      (INSERT DATE) ... (INSERT DATE)

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

                                    _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | | STATE BAR NUMBER | | Reserved for Clerk's File Stamp |
|---|---|---|---|---|
| | | | | |
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

    ☐ Request for Informal Discovery Conference
    ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

This **stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

SHORT TITLE:                                                      CASE NUMBER:

**The following parties stipulate:**

Date:

_____                    _____
     (TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date:
                                                  ➢  _____
_____                          (ATTORNEY FOR DEFENDANT)
     (TYPE OR PRINT NAME)

Date:
                                                  _____
_____                          (ATTORNEY FOR DEFENDANT)
     (TYPE OR PRINT NAME)

Date:
                                                  _____
_____                          (ATTORNEY FOR DEFENDANT)
     (TYPE OR PRINT NAME)

Date:
                                                  (ATTORNEY FOR _____)
_____
     (TYPE OR PRINT NAME)
                                                  ➢  _____
Date:                                              (ATTORNEY FOR _____)

_____
     (TYPE OR PRINT NAME)
                                                  ➢  _____
Date:                                              (ATTORNEY FOR _____)

_____
     (TYPE OR PRINT NAME)

**THE COURT SO ORDERS.**

   Date:

                                                  _____
                                                       JUDICIAL OFFICER

LACIV 075 (new)          **STIPULATION AND ORDER – MOTIONS IN LIMINE**          Page 2 of 2
LASC Approved 04/11

# Superior Court of California
# County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKET

The person who files a civil lawsuit (plaintiff) must include the ADR information Packet with the complaint when serving the defendant. Cross-complainants must serve the ADR Information Packet on any new parties named to the action together with the cross-complaint.

There are a number of ways to resolve civil disputes without having to sue someone. These alternatives to a lawsuit are known as alternative dispute resolution (ADR).

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediations, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help resolve disputes without having to go to court.

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

**Advantages of ADR**
- Often faster than going to trial
- Often less expensive, saving the litigants court costs, attorney's fees and expert fees.
- May permit more participation, allowing parties to have more control over the outcome.
- Allows for flexibility in choice of ADR processes and resolution of the dispute.
- Fosters cooperation by allowing parties to work together with the neutral to resolve the dispute and mutually agree to remedy.
- There are fewer, if any, court appearances. Because ADR can be faster and save money, it can reduce stress.

**Disadvantages of ADR** - ADR may not be suitable for every dispute.
- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.
- ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.
- The neutral may charge a fee for his or her services.
- If the dispute is not resolved through ADR, the parties may then have to face the usual and traditional costs of trial, such as attorney's fees and expert fees.

**The Most Common Types of ADR**

- Mediation

  In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the parties, rather than the mediator, decide how the dispute is to be resolved.

  - **Mediation is particularly effective** when the parties have a continuing relationship, like neighbors or business people. Mediation is also very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to express their feelings and find out how the other sees things.

  - Mediation **may not be effective** when one party is unwilling to cooperate or compromise or when one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration**

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed. Arbitration may be either "binding" or "non-binding." Binding arbitration means the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.

Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

- **Mandatory Settlement Conference (MSC)**

**Settlement Conferences** are appropriate in any case where settlement is an option. Mandatory Settlement Conferences are ordered by the Court and are often held near the date a case is set for trial. The parties and their attorneys meet with a judge who devotes his or her time exclusively to preside over the MSC. The judge does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.

The Los Angeles Superior Court Mandatory Settlement Conference (MSC) program is free of charge and staffed by experienced sitting civil judges who devote their time exclusively to presiding over MSCs. The judges participating in the judicial MSC program and their locations are identified in the List of Settlement Officers found on the Los Angeles Superior Court website at http://www.lacourt.org/. This program is available in general jurisdiction cases with represented parties from independent calendar (IC) and Central Civil West (CCW) courtrooms. In addition, on an ad hoc basis, personal injury cases may be referred to the program on the eve of trial by the personal injury master calendar courts in the Stanley Mosk Courthouse or the asbestos calendar court in CCW.

In order to access the Los Angeles Superior Court MSC Program the judge in the IC courtroom, the CCW Courtroom or the personal injury master calendar courtroom must refer the parties to the program.  Further, all parties must complete the information requested in the Settlement Conference Intake Form and email the completed form to mscdept18@lacourt.org.

## Additional Information

To locate a dispute resolution program or neutral in your community:

- Contact the California Department of Consumer Affairs (www.dca.ca.gov) Consumer Information Center toll free at 800-952-5210, or;
- Contact the local bar association (http://www.lacba.org/) or;
- Look in a telephone directory or search online for "mediators; or "arbitrators."

There may be a charge for services provided by private arbitrators and mediators.

A list of approved State Bar Approved Mandatory Fee Arbitration programs is available at
http://calbar.ca.gov/Attorneys/MemberServices/FeeArbitration/ApprovedPrograms.aspx#19

To request information about, or assistance with, dispute resolution, call the number listed below. Or you may call a Contract Provider agency directly. A list of current Contract Provider agencies in Los Angeles County is available at the link below.

http://css.lacounty.gov/programs/dispute-resolution-program-drp/

County of Los Angeles Dispute Resolution Program
3175 West 6th Street, Room 406
Los Angeles, CA 90020-1798
TEL: (213) 738-2621
FAX: (213) 386-3995

LAADR 005 (Rev. 03/17)
LASC Adopted 10-03
Cal. Rules of Court, rule 3.221

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Aaron Perahia<br>865 S. Figueroa St., 10th Fl.<br>Los Angeles, CA 90017<br>(213) 443-3000 | 304554 | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>FEB 1 4 2019<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Isabel Jaime, Deputy |

ATTORNEY FOR (Name): Plaintiffs Please Gimme My Publishing, Inc., et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
111 N. Hill St., Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
Please Gimme My Publishing, Inc., et al.

DEFENDANT/RESPONDENT:
EMI April Music, Inc., et al.

| PEREMPTORY CHALLENGE TO JUDICIAL OFFICER<br>(Code Civ. Proc., § 170.6) | CASE NUMBER:<br>19STCV02732 |
|---|---|

| Name of Judicial Officer: (PRINT)<br><br>Hon. Michael L. Stern | Dept. Number:<br><br>62 |
|---|---|
| ☑ Judge        ☐ Commissioner        ☐ Referee | |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

## DECLARATION

**I declare under penalty of perjury, under the laws of the State of California, that the information entered on this form is true and correct.**

Filed on behalf of: Please Gimme My Publishing Inc.
            Name of Party

☑ Plaintiff/Petitioner        ☐ Cross Complainant
☐ Defendant/Respondent        ☐ Cross Defendant
☐ Other:

Dated:   February 14, 2019

Signature of Declarant

Aaron Perahia
Printed Name

LACIV 015 (Rev. 12-14)
LASC Approved 04-04
For Optional Use

PEREMPTORY CHALLENGE TO JUDICIAL OFFICER
(Code Civ. Proc., § 170.6)

Code Civ. Proc., § 170.6

1 <u>PROOF OF SERVICE</u>

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3   At the time of service, I was over 18 years of age and not a party to this action. I am
employed in the County of Los Angeles, State of California. My business address is 865 South
4 Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

5   February 15, 2019, I served true copies of the following document(s) described as
**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER** on the interested parties in this
6 action as follows:

7   EMI April Music, Inc.                         EMI Blackwood Music, Inc.
    c/o Corporation Service Company d/b/a          c/o Corporation Service Company d/b/a
8   CSC – Lawyers Incorporating Service            CSC – Lawyers Incorporating Service
    2710 Gateway Oaks Drive, Suite 150N            2710 Gateway Oaks Drive, Suite 150N
9   Sacramento, CA 95833                           Sacramento, CA 95833

10

11   **BY FEDEX**: I enclosed said document(s) in an envelope or package provided by FedEx
and addressed to the persons at the addresses listed in the Service List. I placed the envelope or
package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx
12 or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

13   I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
14

15   Executed on February 15, 2019, at Los Angeles, California.

16

17

18

19

20

21

22

23

24

25

26

27

28

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Aaron Perahia (SBN 304554)<br>865 S. Figueroa St., 10th Fl.<br>Los Angeles, CA 90017<br>   TELEPHONE NO.: (213) 443-3000    FAX NO. *(Optional)*: (213) 443-3100<br>E-MAIL ADDRESS *(Optional)*: aaronperahia@quinnemanuel.com<br>   ATTORNEY FOR *(Name)*:  Plaintiffs (Please Gimme My Publishing, Inc. et al.) | FOR COURT USE ONLY |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles<br>   STREET ADDRESS:  111 N. Hill St.<br>   MAILING ADDRESS:  111 N. Hill St.<br>   CITY AND ZIP CODE:  Los Angeles 90012<br>   BRANCH NAME:  Stanley Mosk |
|---|

| PLAINTIFF/PETITIONER:  Please Gimme My Publishing, Inc. et al. | CASE NUMBER:<br>19STCV02732 |
|---|---|
| DEFENDANT/RESPONDENT:  EMI April Music, Inc. et al. | JUDICIAL OFFICER:<br>Hon. Michael L. Stern |
| **NOTICE OF RELATED CASE** | DEPT.:<br>62 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Please Gimme My Publishing, Inc. et al. v. EMI April Music, Inc. et al.
    b.  Case number:  19STCV02598
    c.  Court: [✓]  same as above
              [ ]  other state or federal court *(name and address)*:
    d.  Department: 62
    e.  Case type: [ ]  limited civil  [✓]  unlimited civil  [ ]  probate  [ ]  family law  [ ]  other *(specify)*:
    f.  Filing date: January 25, 2019
    g.  Has this case been designated or determined as "complex?"  [ ]  Yes  [✓]  No
    h.  Relationship of this case to the case referenced above *(check all that apply)*:
        [✓]  involves the same parties and is based on the same or similar claims.
        [ ]  arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        [ ]  involves claims against, title to, possession of, or damages to the same property.
        [ ]  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
              [ ]  Additional explanation is attached in attachment 1h
    i.  Status of case:
        [✓]  pending
        [ ]  dismissed  [ ]  with  [ ]  without prejudice
        [ ]  disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court: [ ]  same as above
              [ ]  other state or federal court *(name and address)*:
    d.  Department:

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |
|---|---|---|

CM-015

PLAINTIFF/PETITIONER:  Please Gimme My Publishing, Inc. et al.

DEFENDANT/RESPONDENT:  EMI April Music, Inc. et al.

CASE NUMBER:

19STCV02732

2. *(continued)*

e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify):*

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes  ☐ No

h. Relationship of this case to the case referenced above *(check all that apply):*

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☐ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

3. a. Title:

b. Case number:

c. Court: ☐ same as above

☐ other state or federal court *(name and address):*

d. Department:

e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify):*

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes  ☐ No

h. Relationship of this case to the case referenced above *(check all that apply):*

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: February 12, 2019

Aaron Perahia
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

_____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]                    **NOTICE OF RELATED CASE**                    Page 2 of 3

CM-015

| | |
|---|---|
| _ PLAINTIFF/PETITIONER: Please Gimme My Publishing, Inc. et al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: EMI April Music, Inc. et al. | 19STCV02732 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

**(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)**

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

   Street address:
   City:
   State and zip code:

   c. Name of person served.

   Street address.
   City:
   State and zip code:

   b. Name of person served:

   Street address.
   City:
   State and zip code:

   d. Name of person served:

   Street address:
   City:
   State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ► _____
(TYPE OR PRINT NAME OF DECLARANT)                    (SIGNATURE OF DECLARANT)

1        **PROOF OF SERVICE**

2   **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3            At the time of service, I was over 18 years of age and not a party to this action.  I am
    employed in the County of Los Angeles, State of California.  My business address is 865 South
4   Figueroa Street, 10th Floor, Los Angeles, CA 90017-2543.

5            On February 12, 2019, I served true copies of the following document(s) described as
    **NOTICE OF RELATED CASE** on the interested parties in this action as follows:
6
        EMI April Music, Inc.                          EMI Blackwood Music, Inc.
7       c/o Corporation Service Company d/b/a          c/o Corporation Service Company d/b/a
        CSC – Lawyers Incorporating Service            CSC – Lawyers Incorporating Service
8       2710 Gateway Oaks Drive, Suite 150N            2710 Gateway Oaks Drive, Suite 150N
        Sacramento, CA 95833                           Sacramento, CA 95833
9

10           **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
    persons at the addresses listed in the Service List and placed the envelope for collection and
11  mailing, following our ordinary business practices.  I am readily familiar with the practice of
    Quinn Emanuel Urquhart & Sullivan, LLP for collecting and processing correspondence for
12  mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited
    in the ordinary course of business with the United States Postal Service, in a sealed envelope with
13  postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The
    envelope was placed in the mail at Los Angeles, California.
14
             I declare under penalty of perjury under the laws of the State of California that the
15  foregoing is true and correct.

16           Executed on February 12, 2019, at Los Angeles, California.

17

18

19

20

21

22

23

24

25

26

27

28



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 62

19STCV02732                                                          February 21, 2019
**PLEASE GIMME MY PUBLISHING, INC., A NEW YORK**                      1:37 PM
**CORPORATION , et al. vs EMI APRIL MUSIC, INC., A**
**CONNECTICUT CORPORATION , et al.**

Judge: Honorable Michael L. Stern              CSR: None
Judicial Assistant: M. Alaniz                  ERM: None
Courtroom Assistant: S. Alexander              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order

The matter is not called for hearing.

The Court has received a peremptory challenge filed by plaintiff on February 14, 2019 pursuant to Code of Civil Procedure section 170.6. This action was filed by plaintiff on January 25, 2019. Under Code of Civil Procedure section 170.6 (a) (2), a peremptory challenge must ne exercised within 15 days after a case is assigned to an all purpose judge.

The instant challenge therefore is tardy and is denied as it was filed more than 15 days after the action was filed.

Clerk is to give notice

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>02/21/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Alaniz _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Please Gimme My Publishing, Inc., a New York corporation  et al | |
| DEFENDANT/RESPONDENT:<br>EMI April Music, Inc., a Connecticut corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>19STCV02732 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Aaron H. Perahia
Quinn Emanuel Urquhart & Sullivan
865 S Figueroa St Fl 10
Los Angeles, CA  90017

Robert M. Schwartz
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 02/22/2019

By:  M. Alaniz _____
Deputy Clerk

**CERTIFICATE OF MAILING**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action. My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064. On **March 1, 2019**, I served within: **NOTICE OF REMOVAL** on the interested parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒ **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**, at Los Angeles, California.

Erica Nash

PS &

322697535.1

CERTIFICATE OF SERVICE

## SERVICE LIST

| | |
|---|---|
| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |
| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

MANATT, PHELPS & PHILLIPS, LLP
ROBERT A. JACOBS (State Bar No. 160350)
E-mail: rjacobs@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MOLLY K. WYLER (State Bar No. 299881)
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224

*Attorneys for Defendants*
EMI APRIL MUSIC INC. and
EMI BLACKWOOD MUSIC INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST BRANDS, LLC, a Delaware limited liability corporation; KANYE WEST, an individual; and YE WORLD PUBLISHING, INC., a Delaware corporation, also doing business as YE WORLD MUSIC,<br><br>            Plaintiffs,<br><br>      v.<br><br>EMI APRIL MUSIC INC., a Connecticut corporation; EMI BLACKWOOD MUSIC INC., a Connecticut corporation; and DOES 1-10,<br><br>            Defendants. | No. 2:19-cv-_____<br><br>**DECLARATION OF ROBERT A. JACOBS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL** |

## DECLARATION OF ROBERT A. JACOBS

I, Robert A. Jacobs, hereby declare under 28 U.S.C. § 1746 as follows:

1.      I am a partner at Manatt, Phelps & Phillips, LLP, attorneys for Defendants EMI April Music Inc. and EMI Blackwood Music Inc. (collectively, "Defendants").  I submit this declaration in support of Defendants' notice of removal pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

2.      Attached hereto as **Exhibit A** is a true and correct copy of relevant excerpts of the agreement entered into as of October 1, 2003 (the "2003 Agreement") referenced by Plaintiffs Kanye West; West Brands, LLC; Please Gimme My Publishing, Inc., and Ye World Publishing, Inc. (collectively, "Plaintiffs") as Exhibit A to the Complaint (the "Complaint") in the action captioned *Please Gimme My Publishing, Inc.; West Brands, LLC; Kanye West; and Ye World Publishing, Inc. v. EMI April Music, Inc. and EMI Blackwood Music, Inc.*, in the Superior Court of California, County of Los Angeles.

3.      Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts of the modification of the 2003 Agreement entered into as of February 2012 (the "2012 Agreement").

4.      Attached hereto as **Exhibit C** is a true and correct copy of relevant excerpts of the modification of the 2003 Agreement entered into as of November 5, 2014 referenced by Plaintiffs as Exhibit F to the Complaint.

5.      Attached hereto as **Exhibit D** is a true and correct copy of a printout of the current Business Entity detail from the Delaware Secretary of State's website for Ye World Publishing, Inc., which was accessed and printed on February 22, 2019.

6.      Attached hereto as **Exhibit E** is a true and correct copy of a printout of the current Business Entity Status Information from the New York Secretary of State's website for Please Gimme My Publishing, Inc., which was accessed and printed on February 14, 2019.

7.      Attached hereto as **<u>Exhibit F</u>** is a true and correct copy of a fee application filed by Plaintiffs' attorneys of record, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn"), in November 2018 in the Central District of California action captioned *Vayo v. Rational Entertainment Enterprises*, Case No. 2:18-cv-0376.  Quinn's rates in that matter are detailed on pages 20 and 21 of the fee application.  (Exh. F at 20:16-21:9)

8.      Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of a declaration filed in support of a fee application filed by Quinn in September 2018 in the District Court of New Jersey action captioned *In re Liquid Aluminum Sulfate Antitrust Litigation*, Case No. 16-md-2687.  Quinn's rates in that matter are detailed in Exhibit 1 to the declaration submitted in support of the fee application.  (Exh. G at 7)

9.      Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of a fee application filed by Quinn in August 2018 in the United States Bankruptcy Court in the Southern District of New York action captioned *In re China Fishery Group Limited*, Case No. 16-11895.  Quinn's rates in that matter are detailed on page 2 of the summary of the fee application.  (Exh. G at 2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 1, 2019 in Los Angeles, California.

/s/ Robert A. Jacobs
Robert A. Jacobs

# EXHIBIT A



This Agreement ("Agreement"), effective as of October 1, 2003 (the "Effective Date") is made between EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., Connecticut corporations with their principal places of business at 1290 Avenue of the Americas, New York, New York 10104 (hereinafter collectively referred to as "Publisher"), on the one hand, and KANYE WEST individually ("Writer") and YE WORLD PUBLISHING, INC. ("Company"), whose addresses are c/o Alison Finley, Esq., Davis Shapiro Lewit Montone & Hayes, 689 Fifth Avenue, New York, NY 10022, on the other.  Writer and Company are hereinafter individually and collectively referred to in this Agreement as "You" or "Your".

FOR GOOD AND VALUABLE CONSIDERATION, RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED, PUBLISHER AND YOU HEREBY AGREE AS FOLLOWS:

8.       **Grant of Rights.**

8.01     **Assignment of Copyrights.**  You hereby irrevocably sell, transfer and assign to Publisher, its successors and assigns, an undivided 50% of all right, title and interest derived from Your Interest in the Compositions, including without limitation, the copyrights therein and any and all renewals and/or extensions thereof throughout the Territory and all claims and causes of action related to the Compositions accruing at any time and all other rights of whatsoever nature in the Compositions, including without limitation, the titles, words and music of the Compositions and each and every arrangement, adaptation and version thereof (including sample uses of Compositions) for the full Term and Retention Period, in the United States and throughout the world.  You hereby retain the remaining 50% share of Your Interest in the copyright in the Compositions, subject to the rights granted to Publisher and Licensees under paragraph 8.02 herein.

8.02     **Administration.**  It is the intent of the parties that Publisher and Licensees hereunder (and anyone acting under the authority of Publisher or a Licensee) shall have at all times during the Term and Retention Period, throughout the Territory, the broadest possible rights to administer and otherwise exploit the Compositions.  Without limiting the foregoing, with respect to the Compositions, Publisher and its Licensees (and anyone acting under the authority of Publisher or a Licensee) shall have, and You hereby grant to Publisher, the sole and exclusive right and license during the Term and Retention Period, throughout the Territory (subject to those restrictions set forth in paragraph 8.05), to:

(a)       License, and cause others to license, the exploitation of the Compositions in all forms, media and configurations, including, without limitation, the right to license:  (i) broadcast and other public performances, (ii) subject to paragraph 8.05(e), the use of the Compositions in the manufacture, distribution and sale of Records and video devices, (iii) subject to paragraph 8.05, the synchronization of the Compositions in connection with motion pictures, television programs, videos and commercials, (iv) subject to paragraph 8.05, the use of the Compositions in connection with merchandising activities, (v) the reproduction of Compositions in any and all audiovisual uses of any kind (and each and every configuration which may embody the same), whether now known or hereafter devised, including without limitation, so-called enhanced CDs, DVDs, home video devices, videogames and other means of reproducing, distributing or transmitting Compositions in conjunction with visual images and (vi) the exploitation of the Compositions in any configurations and technologies now known or hereafter to become known in respect of which musical compositions may, now or in the future, be licensed (including, without limitation, Internet uses, *e.g.*, "digital downloads" and "streams").

(b)       Print, publish, rent and/or sell (and authorize others to print, publish, rent and/or sell) alone or together with other works, printed editions or other reproductions of the Compositions, whether such reproduction is in the form of printed materials, or other technological means for reproducing printed words, text or music.

(c)       Collect all monies derived from any source whatsoever during the Term and the Retention Period, with respect to the Compositions, in addition to all monies due prior to the date of this Agreement, but excluding any songwriter share of public performance income.

Further, for a period of one year following the expiration of the Retention Period for monies earned in the United States and two years following the expiration of the Retention Period for any monies earned outside the United States, Publisher shall have the sole and exclusive right to collect all monies earned by reason of uses of the Compositions made during the Term and/or the Retention Period.

        (d)    In addition to any rights granted to Societies regarding the Compositions, Publisher shall have the right to license public performance uses of the Compositions directly ("Direct Performance Licenses") and all income received by Publisher in connection with such license shall be deemed Gross Income and subject to accounting pursuant to this Agreement. With respect to income deriving from Direct Performance Licenses, Publisher shall have the right to recoup Advances only from the "publisher's share" of such income, and the "writer's share" of such income shall be paid to You in accordance with the accounting provisions of this Agreement, but without regard to recoupment of Advances.

        (e)    Make arrangements of, or otherwise adapt or change, any one or more Compositions in any manner, provided that Publisher shall not make, or authorize the making of, material changes in the music or lyrics Compositions without Your consent (and use of a Composition as a "sample" shall not be deemed to be a material change). Your consent shall not be required, however, for any foreign language changes in the Compositions, gender changes, and other customary changes that are required for the uses contemplated (*e.g.*, print uses and uses in Records). Subject to the requirements of local law and the practices of the applicable local societies, Publisher and You shall collectively own a 100% interest in all translations, parodies, adaptations and other arrangements of the Compositions. Publisher will not, without Your consent, pay any writer royalties to additional writers (if any) from Your share of royalties except with respect to foreign language translations, and then only to the extent required by Society regulations or local laws.

        (f)    Otherwise administer, grant any and all rights with respect to, and initiate and settle any and all claims concerning, the Compositions.

21.    **Choice of Law/Venue.**

21.01   THIS AGREEMENT SHALL BE DEEMED ENTERED INTO IN THE STATE OF NEW YORK AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK, WITH RESPECT TO THE DETERMINATION OF ANY CLAIM, DISPUTE OR DISAGREEMENT WHICH MAY ARISE OUT OF THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS AGREEMENT OR WHICH IN ANY OTHER RESPECT RELATES TO THIS AGREEMENT. ANY PROCESS IN ANY ACTION OR PROCEEDING COMMENCED IN THE COURTS OF THE STATE OF NEW YORK OR ELSEWHERE ARISING OUT OF ANY SUCH CLAIM, DISPUTE OR DISAGREEMENT, MAY, AMONG OTHER METHODS, BE SERVED IN THE MANNER SET FORTH IN PARAGRAPH 18.01 HEREOF.  ANY SUCH DELIVERY OR MAIL SERVICE SHALL BE DEEMED TO HAVE THE SAME FORCE AND EFFECT AS PERSONAL SERVICE WITHIN THE STATE OF NEW YORK OR THE JURISDICTION IN WHICH SUCH ACTION OR PROCEEDING MAY BE COMMENCED.  ANY CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE INSTITUTED AND MAINTAINED                    . EXCLUSIVELY IN ANY FEDERAL OR STATE COURT LOCATED WITHIN THE



COUNTY OF NEW YORK IN THE STATE OF NEW YORK.  YOU IRREVOCABLY
SUBMIT TO THE PERSONAL JURISDICTION OF SUCH COURT, AND AGREE NOT TO
ASSERT, BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, THAT (I) YOU ARE
NOT SUBJECT PERSONALLY TO THE JURISDICTION OF SUCH COURT, (II) THE
LITIGATION IS BROUGHT IN AN INCONVENIENT FORUM, (III) THE VENUE OF THE
LITIGATION IS IMPROPER OR THE LITIGATION SHOULD BE TRANSFERRED FOR
ANY REASON TO ANY OTHER VENUE, OR (IV) THIS AGREEMENT OR THE SUBJECT
MATTER HEREOF MAY NOT BE ENFORCED IN OR BY SUCH COURT.

AGREED:

EMI APRIL MUSIC INC.
EMI BLACKWOOD MUSIC INC.

YE WORLD PUBLISHING, INC.

_____
KANYE WEST, individually
Soc. Sec. No. _____

By: _____
Tax ID No. _____

## ACKNOWLEDGEMENTS

STATE OF *New York*

COUNTY OF *New York* } ss.:

On *October 7, 2003* before me personally came KANYE WEST, known to me to be the individual described in and who executed the foregoing instrument, and acknowledged to me that he executed it.

*Anne Amann*
Notary Public

ANNE T. AMANN
Notary Public, State of New York
No. 02AM5058950
Qualified in New York County
Commission Expires May 8, 1998 — 2006


STATE OF *New York*

COUNTY OF *New York* } ss.:

On *October 7, 2003*, before me personally came KANYE WEST, known to me, who, being by me duly sworn, did depose and say that he is the Chairman and President of YE WORLD PUBLISHING, INC., who executed the foregoing instrument on behalf of Ye World Publishing, Inc., and acknowledged to me that he executed it.

ANNE T. AMANN
Notary Public, State of New York
No. 02AM5058950
Qualified in New York County
Commission Expires May 8, 1998 — 2006

*Anne Amann*
Notary Public

KANYE WEST 3.doc
BDS/ 10/7/03

36

# EXHIBIT B

## MODIFICATION AGREEMENT

**MODIFICATION AGREEMENT** (this "Modification") entered into as of February ___, 2012 (the "Effective Date") between **EMI APRIL MUSIC INC.** and **EMI BLACKWOOD MUSIC INC.** (collectively, "Publisher"), whose addresses are at 75 Ninth Avenue, 4th Floor, New York, New York 10011, on the one hand,

-and-

**KANYE WEST** individually ("Writer") and **WEST BRANDS, LLC**, a Delaware limited liability company, individually and d/b/a **YE WORLD MUSIC**, d/b/a **YE WORLD PUBLISHING** and d/b/a **PLEASE GIMME MY PUBLISHING** ("Additional Company"), whose addresses are c/o IWP Wealth Management, LLC, 2719 East 3rd Street, Denver, CO 80206, Attn: Charles Willhoit (fax number 303-800-9114), on the other.

Writer and Additional Company are individually and collectively referred to as "You".

**FOR GOOD AND VALUABLE CONSIDERATION, RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, PUBLISHER AND YOU HEREBY AGREE AS FOLLOWS:**

1.      **The Basic Agreement and this Modification**.

1.01    Reference is made to:

(a)  The Agreement dated as of October 1, 2003 between EMI April Music Inc., on the one hand, and Ye World Publishing, Inc. ("Ye World") and Writer, on the other (the "2003 Agreement");

(b)  The Modification Agreement dated as of January 1, 2004 between Publisher, on the one hand, and Ye World, Please Gimme My Publishing, Inc. ("Please Gimme") and Writer, on the other (the "2004 Modification");

(c)  The Modification and Extension Agreement dated as of May 1, 2005 between Publisher, on the one hand, and Ye World, Please Gimme and Writer, on the other (the "2005 Modification");

(d)  The Modification and Extension Agreement dated as of October 1, 2006 between Publisher, on the one hand, and Ye World, Please Gimme and Writer, on the other (the "2006 Modification");

(e)  The Modification and Extension Agreement dated as of November 1, 2009 between Publisher, on the one hand, and Ye World, Please Gimme and Writer, on the other (the "2009 Modification"); and

(f)  The Modification and Extension Agreement dated as of November 1, 2011 between Publisher, on the one hand, and Ye World, Please Gimme and Writer, on the other (the "2011 Modification").

1.02    The 2003 Agreement, as modified by the 2004 Modification, 2005 Modification, 2006 Modification, 2009 Modification and 2011 Modification, is hereinafter referred to as the "Basic Agreement." The Basic Agreement, as modified by this Modification, is sometimes hereinafter referred to as the "Basic Agreement as Modified." The various terms and expressions defined in the Basic Agreement are hereinafter called the "Defined Terms." Except as may be otherwise expressly provided for in this Modification, each Defined Term used in this Modification shall have the same meaning as in the Basic Agreement.

2.    **Dissolution of Ye World and Please Gimme; Additional Company Added as Party to Basic Agreement.**

2.01    You hereby advise Publisher that:

(a)  On the Effective Date, all of the stock of Ye World and Please Gimme have been transferred to Additional Company;

(b)  On the Effective Date, all rights, title, interests and assets of Ye World and Please Gimme, including without limitation, all retained copyright interests in the Compositions and the right to be paid Advances and royalties under the Basic Agreement, have been assigned and transferred to Additional Company, which is an Affiliate the sole member of which is Writer; and

(c)  For the remainder of the Term and Retention Period under the Basic Agreement, Writer intends that Additional Company hold those interests with respect to Your Interest in all Compositions (whether now existing or created after the Effective Date) which are not transferred to Publisher under the Basic Agreement (i.e., the retained 50% copyright interest therein), intends to use "Ye World Music" as the ASCAP publishing "d/b/a" for Additional Company and "Please Gimme Me Publishing" as the BMI publishing "d/b/a'" for Additional Company, and does not plan to reinstate Ye World or Please Gimme as independent corporate entities.

2.02    Additional Company is hereby added as a party to the Basic Agreement. Additional Company shall assume any and all obligations and shall grant all rights whatsoever of Ye World and Please Gimme under the Basic Agreement and shall perform all of such obligations directly for and grant all rights directly to Publisher including, without limitation, the delivery of Your Interest in all Compositions and fulfillment of the Minimum Delivery and Release Commitment. All references to "you" in the Basic Agreement shall be deemed to include Additional Company as well as Writer.  The foregoing shall not be deemed to discharge Writer of any of his obligations under the Basic Agreement.

2.03    You acknowledge and agree that Writer, individually, and any and all other Affiliates have been (since the inception of the Basic Agreement), are and shall remain bound under the Basic Agreement as direct contracting parties thereunder and that neither the dissolution of Ye World and Please Gimme nor the addition of Additional Company as a party to the Basic Agreement shall affect any of Publisher's rights whatsoever or any of Your obligations whatsoever with respect to the Basic Agreement, the Compositions or the Minimum Delivery and Release Commitment.  You hereby re-confirm all prior grants, assignments and licenses made to Publisher (whether by You, Ye World or Please Gimme) under the Basic Agreement, including the assignment to Publisher of 50% of the worldwide copyright derived from Your Interest in the Compositions and exclusive, worldwide administration rights.

2.04    Simultaneously with the execution and delivery of this Modification, you shall execute Exhibits A, B and C attached to this Modification.  You acknowledge that Publisher may make appropriate disposition of such executed Exhibits in order to effectuate Publisher's rights under the Basic Agreement and to ensure the uninterrupted administration of Your Interest in the Compositions.  You shall execute any and all additional documentation reasonably requested by Publisher for such purposes, promptly following Publisher's request.

3.    **Warranties, Representations, Covenants.**  You hereby warrant, represent, covenant and agree that:

3.01    On the Effective Date, all of the stock of Ye World and Please Gimme have been assigned to Additional Company and all rights, title, interests and assets of Ye World and Please Gimme, including without limitation, all retained copyright interests in the Compositions and the right to be paid Advances and royalties under the Basic Agreement, have been assigned and transferred to Additional Company, of which the sole member is Writer.

3.02    Any dissolutions or winding up of Ye World and Please Gimme occurring either prior to, on or after the Effective Date have not nor shall in any way adversely affect any of Publisher's rights nor any of Your obligations under the Basic Agreement, all of which are hereby expressly ratified and confirmed.

3.03    Writer agrees at all times to be bound by all grants, restrictions, and other provisions relating to Additional Company, and guarantees, absolutely and unconditionally, the full performance of all of Additional Company's obligations under the Basic Agreement.

3.04    Writer and Additional Company shall be jointly and severally liable, along with Writer, for the performance of all of your obligations, representations and warranties under the Basic Agreement, notwithstanding the dissolution of Ye World or Please Gimme.

3.05    Writer agrees, without limitation, to indemnify and hold Publisher harmless from any loss, damage, liability or expense (including, but not limited to, attorney's fees and legal expenses) which arise from the failure by Additional Company to fulfill any of its obligations under the Basic Agreement as Modified or incurred by Publisher in the enforcement of its rights thereunder.

3.06    You shall execute any and all documentation reasonably required by ASCAP to reflect the change in your ASCAP publishing designee from Ye World to Additional Company, d/b/a "Ye World Music." You shall execute any and all documentation reasonably required by BMI to reflect the change in your BMI publishing designee from Please Gimme to Additional Company, d/b/a "Please Gimme My Publishing." You shall execute any and all documentation reasonably required by Publisher to ensure that nothing interferes with the continued flow of publisher's share of performance income to Publisher including, without limitation, directly from ASCAP and BMI. No such documentation required by this Section 3.06 will adversely affect Publisher's rights under the Basic Agreement.

3.07    You hereby represent, warrant and covenant that: (a) Additional Company is and shall remain, throughout the Term and Retention Period, a limited liability company duly formed, validly existing and in good standing under the laws of the jurisdiction of its incorporation; (b) Writer is and shall remain, throughout the Term and Retention Period, the sole owner of all right, title and interest in Additional Company, which is and will remain an Affiliate under the Basic Agreement and (c) You shall not reinstate either Ye World or Please Gimme as an independent corporate entity.

3.08    The foregoing provisions are without limitation of Your representations, warranties and indemnification obligations under the Basic Agreement.

4.    **Address for Notices**.

4.01    You have advised Publisher, and Publisher hereby acknowledges, that Your address has changed to the address set forth on page one of this Modification, and that such address shall apply to any and all Notices sent by Publisher to You pursuant to the Basic Agreement and/or this Modification. In lieu of any courtesy copy required under the Basic Agreement, a courtesy copy of all Notices to You under the Basic Agreement as Modified shall be sent to Carroll Guido & Groffman, LLP, 1790 Broadway, 20th Floor, New York, NY 10019, Attn: Michael Guido, Esq.

4.02    In all other respects, the notice provisions of the Basic Agreement remain in effect.

5.    **Effect of this Modification/Miscellaneous**. Except as otherwise specified in this Modification, the Basic Agreement is hereby ratified and confirmed and shall remain in full force and effect, and nothing contained herein shall limit, impair or otherwise adversely affect Publisher's rights thereunder. This Modification, like the Basic Agreement, is binding on any and all Affiliates of You. This Modification may be executed in counterparts. For

purposes of effectuating this Modification, Publisher agrees that Your faxed or scanned signatures on this Modification, together with faxed or scanned signed notary acknowledgements thereof, shall be deemed to constitute Your original signatures and, when same is counter-signed by Publisher, constitute a fully-binding agreement between Publisher                                          and                                          You.

*[Remainder of page intentionally blank.]*

You represent, warrant, and covenant that Modifications containing Your actual original signatures and original notary acknowledgements shall be sent to Publisher, by overnight courier, within seven (7) days after Publisher receives the faxed or scanned copies thereof.

**AGREED:**

_____
KANYE WEST, individually

WEST BRANDS, LLC, individually and
d/b/a YE WORLD MUSIC (ASCAP),
d/b/a YE WORLD PUBLISHING (ASCAP) and
d/b/a PLEASE GIMME MY PUBLISHING (BMI)

By: _____

EMI APRIL MUSIC INC. (ASCAP)
EMI BLACKWOOD MUSIC INC. (BMI)

By: _____

ACKNOWLEDGEMENT

COUNTRY OF ~~GREAT BRITAIN~~ UNITED STATES OF AMERICA )
STATE OF NEW YORK            ) ss.
CITY OF ~~LONDON~~ NEW YORK  )

On MAY 17, 2012 , before me personally came KANYE WEST, known to me, who executed the foregoing instrument, and acknowledged to me that he executed it individually and on behalf of WEST BRANDS, LLC individually and d/b/a YE WORLD MUSIC (ASCAP), d/b/a YE WORLD PUBLISHING (ASCAP) and d/b/a PLEASE GIMME MY PUBLISHING (BMI).

_____
Notary Public

**PAUL GUTMAN**
Notary Public, State of New York
No. 02GU6138870
Qualified in New York County
Commission Expires ~~Dec. 31, 2013~~

4/8/14

Kanye West 2012 Mod
1149233

5

You represent, warrant, and covenant that Modifications containing Your actual original signatures and original notary acknowledgements shall be sent to Publisher, by overnight courier, within seven (7) days after Publisher receives the faxed or scanned copies thereof.

**AGREED:**


KANYE WEST, individually


WEST BRANDS, LLC, individually and
d/b/a YE WORLD MUSIC (ASCAP),
d/b/a YE WORLD PUBLISHING (ASCAP) and
d/b/a PLEASE GIMME MY PUBLISHING (BMI)


By:


EMI APRIL MUSIC INC. (ASCAP)
EMI BLACKWOOD MUSIC INC. (BMI)


ACKNOWLEDGEMENT


COUNTRY OF GREAT BRITAIN     )
                                                         ) ss.
CITY OF LONDON                          )


On                            , before me personally came KANYE WEST, known to me, who executed the foregoing instrument, and acknowledged to me that he executed it individually and on behalf of WEST BRANDS, LLC individually and d/b/a YE WORLD MUSIC (ASCAP), d/b/a YE WORLD PUBLISHING (ASCAP) and d/b/a PLEASE GIMME MY PUBLISHING (BMI).


Notary Public

## EXHIBIT A

to the Modification Agreement dated as of February ___, 2012, between EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., on the one hand, and KANYE WEST, individually, and WEST BRANDS, LLC, individually and d/b/a YE WORLD MUSIC (ASCAP), d/b/a YE WORLD PUBLISHING (ASCAP) and d/b/a PLEASE GIMME MY PUBLISHING (BMI)

## ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS:

The undersigned:

Name:    KANYE WEST, individually and WEST BRANDS, LLC, individually and d/b/a PLEASE GIMME MY PUBLISHING (individually and collectively, "Assignor")

Address:   c/o IWP Wealth Management, LLC, 2719 East 3rd Street, Denver, CO 80206
Attn:  Charles Willhoit

for good and valuable consideration now received, hereby sells and assigns unto:

Name:    EMI BLACKWOOD MUSIC INC. ("Assignee")

Address:   75 Ninth Avenue, 4th Floor
New York, New York 10011

and its successors and assigns forever, an undivided fifty percent (50%) of Assignor's right, title and interest in all of the musical composition(s) written and/or acquired by Assignor (the "Compositions"), including, but not limited to, each of the musical compositions(s) listed on Schedule A annexed to this Assignment, including, but not limited to, an undivided 50% interest in Assignor's interest in the copyrights in the Compositions, together with any and all renewals, extensions, continuations and reversions of such copyrights, secured or to be secured under the United States Copyright Act of 1976 or under any other copyright law or similar law (statutory or common law) now or hereafter in force and effect in the United States or any other countries throughout the world or pursuant to any treaties, conventions, or proclamations.

THIS INSTRUMENT is subject to all of the terms and conditions of the Modification Agreement dated as of February ___, 2012, between Assignor and Assignee, et al.

Dated:  As of February ___, 2012

WEST BRANDS, LLC, individually and d/b/a PLEASE GIMME MY PUBLISHING

By:

KANYE WEST, individually

Kanye West 2012 Mod
1149233

6

ACKNOWLEDGEMENT

UNITED STATES OF AMERICA
COUNTRY OF ~~GREAT BRITAIN~~        )
STATE OF NEW YORK        ) ss.
CITY OF ~~LONDON~~ NEW YORK   )

On MAY 17, 2012 , before me personally came KANYE WEST, known to me, who executed the foregoing instrument, and acknowledged to me that he executed it individually and on behalf of WEST BRANDS, LLC individually and d/b/a PLEASE GIMME MY PUBLISHING (BMI).

Notary Public, State of New York
No. 02GU6138870
Qualified in New York County
Commission Expires ~~Dec 27, 2013~~
4/8/14

EXHIBIT B

to the Modification Agreement dated as of February ___, 2012, between EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., on the one hand, and KANYE WEST, individually, and WEST BRANDS, LLC d/b/a YE WORLD MUSIC (ASCAP), d/b/a YE WORLD PUBLISHING (ASCAP) and d/b/a PLEASE GIMME MY PUBLISHING (BMI)

DIRECTION LETTER

Dated as of February ___, 2012

ALL RECORD MANUFACTURERS     ALL PERFORMING RIGHTS
LICENSED TO MECHANICALLY         SOCIETIES
REPRODUCE COMPOSITIONS SPECIFIED
HEREINBELOW

HARRY FOX AGENCY

ALL OTHER PARTIES IN INTEREST

Please be advised that effective as of February ___, 2012, I have granted to EMI BLACKWOOD MUSIC, INC. and their licensees and assigns, the exclusive right, throughout the world, in respect of compositions of which the undersigned is the copyright proprietor, including those compositions listed on Schedule A annexed (the "Compositions"):

(i)       to license and cause others to license the use of the Compositions; and

(ii)      to administer and grant rights in and to the Compositions and the copyrights therein; and

(iii)     to publish and sell sheet music and/or folios of the Compositions if it so elects; and

(iv)     to collect all monies payable with respect to the Compositions, including monies earned but not paid prior to the effective date hereof; and

(v)      to otherwise administer the Compositions and the copyrights therein and to act as the publisher thereof.

Accordingly, you are hereby irrevocably directed and authorized to pay all such monies solely and directly to Publisher. This letter is binding on any and all Affiliates of the undersigned.

Very truly yours,

                                  WEST BRANDS, LLC, individually and d/b/a YE
                                  WORLD MUSIC (ASCAP), d/b/a YE WORLD
                                  PUBLISHING and d/b/a PLEASE GIMME MY
                                  PUBLISHING

                                  By:

KANYE WEST, individually

## EXHIBIT C

to the Modification Agreement dated as of February ___, 2012, between EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., on the one hand, and KANYE WEST, individually, and WEST BRANDS, LLC, individually and d/b/a YE WORLD MUSIC (ASCAP), d/b/a YE WORLD PUBLISHING (ASCAP) and d/b/a PLEASE GIMME MY PUBLISHING (BMI)

As of February ___, 2012

Publisher Relations Department
Broadcast Music, Inc.
320 West 57th Street
New York, New York 10019

Gentlemen:

This is to advise BMI that I have entered into an agreement with another BMI publisher for the administration of my BMI catalog, and that BMI's records should be marked to reflect the agreement as follows:

1.  Name of BMI publisher acting as our administrator:
    EMI BLACKWOOD MUSIC INC.

2.  Effective date of agreement:   February __, 2012

    CHECK ONE:

    __XX__   Immediately, including all royalties now payable or which hereafter become payable, regardless of when performance took place.

    ___      Effective with performances on and after _____. (Must be as of the beginning of a calendar quarter, i.e., January 1, April 1, July 1 or October 1.)

3.  Checks for all our BMI royalties, both domestic and foreign, should be made payable to the administrator and should be sent together with the statements and all other correspondence to the administrator at its address on BMI's records.

I understand that BMI cannot mark its records at this time so as to indicate the termination date of the administration agreement and that, therefore, the above information will continue to be reflected on BMI's records until such time as the administrator notifies BMI that the administration agreement is about to terminate.

Very truly yours,

WEST BRANDS, LLC, individually and d/b/a PLEASE GIMME MY PUBLISHING

_____
KANYE WEST, individually

Kanye West 2012 Mod
1149233

9

# EXHIBIT C

## MODIFICATION AGREEMENT

**MODIFICATION AGREEMENT** (this "Modification") entered into as of November 5, 2014 (the "Effective Date") between **EMI APRIL MUSIC INC.** and **EMI BLACKWOOD MUSIC INC.** (collectively, "Publisher"), whose addresses are c/o Sony/ATV Music Publishing, 550 Madison Avenue, Fifth Floor, New York, New York 10022, on the one hand, and **KANYE WEST,** individually ("Writer") and **WEST BRANDS, LLC**, a Delaware limited liability company, individually and d/b/a **YE WORLD MUSIC**, d/b/a **YE WORLD PUBLISHING** and d/b/a **PLEASE GIMME MY PUBLISHING** ("Company"),  whose address is c/o Flynn Family Office, 135 West 50th Street, 19th Floor, New York, NY 10020, Attn:  Evan Jehle, CPA/PFS, on the other.

Writer and Company are sometimes individually and collectively referred to in this Modification as "You" and "Your."

**FOR GOOD AND VALUABLE CONSIDERATION, RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, PUBLISHER AND YOU HEREBY AGREE AS FOLLOWS:**

1.        **<u>The Basic Agreement and this Modification</u>**.

    1.02   The 2003 Agreement, as modified by the 2004 Modification, 2005 Modification, 2006 Modification, 2009 Modification, 2011 Modification and 2012 Modification, is hereinafter referred to as the "Basic Agreement." The Basic Agreement, as modified by this Modification, is sometimes hereinafter referred to as the "Basic Agreement as Modified."  The various terms and expressions defined in the Basic Agreement are hereinafter called the "Defined Terms."  Except as may be otherwise expressly provided for in this Modification, each Defined Term used in this Modification shall have the same meaning as in the Basic Agreement.

11.   **Effect of this Modification/Miscellaneous**.   Except as otherwise specified in this Modification, the Basic Agreement is hereby ratified and confirmed and shall remain in full force and effect.   All prior and contemporaneous conversations, negotiations, agreements, and alleged agreements, representations, covenants and warranties concerning the subject matter of this Modification are merged herein.   No prior drafts of this Modification or any deleted language therefrom shall be used in the interpretation hereof; this is a fully-integrated agreement.   (The foregoing shall not be deemed to limit the effectiveness of the Basic Agreement as Modified.)   This Modification, like the Basic Agreement, is binding on any and all Affiliates of You.   This Modification may be executed in counterparts.   For purposes of effectuating this Modification, Publisher agrees that Your faxed or scanned signatures on this Modification, together with faxed or scanned signed notary acknowledgements thereof, shall be deemed to constitute Your original signatures and, when same is counter-signed by Publisher (including by fax or scan), constitute a fully-binding agreement between Publisher and You.   You represent, warrant, and covenant that Modifications containing Your actual original signatures and original notary acknowledgements shall be sent to Publisher, by overnight courier, within seven (7) days after Publisher receives the faxed or scanned copies thereof.

AGREED:

_____
KANYE WEST, individually

WEST BRANDS, LLC, individually and d/b/a
YE WORLD MUSIC, d/b/a YE WORLD PUBLISHING
and d/b/a PLEASE GIMME MY PUBLISHING

By: _____

EMI APRIL MUSIC INC. (ASCAP)
EMI BLACKWOOD MUSIC INC. (BMI)

By: _____

Kanye West 2014 Mod version 2 exec
BDS/11-5-14

5

ACKNOWLEDGEMENTS

STATE OF _New York_ )
                        ) ss
COUNTY OF _New York_ )


On _11/7/14_ before me personally came KANYE WEST, known to me, who executed the foregoing instrument, and acknowledged to me that he executed it.

_____
Notary Public

> **PAUL GUTMAN**
> Notary Public, State of New York
> No. 02GU6138870
> Qualified in New York County
> Commission Expires April 8, 20___


STATE OF _New York_ )
                        ) ss.:
COUNTY OF _New York_ )


_____ before me personally came KANYE WEST, known to me, who, being by me duly sworn, did _____ is the Chairman and President of WEST BRANDS, LLC, and who executed the foregoing _____ behalf of West Brands, LLC, and acknowledged to me that he executed it.

_____
Notary Public

> **PAUL GUTMAN**
> Notary Public, State of New York
> No. 02GU6138870
> Qualified in New York County
> Commission Expires April 8, 20___

Kanye West 2014 Mod version 2 exec
BDS/11-5-14

# EXHIBIT D

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

Logout

**Department of State: Division of Corporations**

Allowable Characters

View Search Results

| HOME | | Entity Details | |
|---|---|---|---|
| About Agency | | | |
| Secretary's Letter | | | |
| Newsroom | File Number: | 3566690 | Incorporation Date 9/11/2002 |
| Frequent Questions | | | / Formation Date: (mm/dd/yyyy) |
| Related Links | | | |
| Contact Us | Entity Name: | **YE WORLD PUBLISHING, INC.** | |
| Office Location | | | |
| **SERVICES** | Entity Kind: | **Corporation** | Entity Type: **General** |
| Pay Taxes | | | |
| File UCC's | Residency: | **Domestic** | State: **State:** |
| Delaware Laws Online | | | |
| Name Reservation | Status: | **Dissolved** | Status Date: **5/19/2004** |
| Entity Search | | | |
| Status | | | |
| Validate Certificate | **REGISTERED AGENT INFORMATION** | | |
| Customer Service Survey | | | |
| **INFORMATION** | Name: | **THE COMPANY CORPORATION** | |
| Corporate Forms | | | |
| Corporate Fees | Address: | **251 LITTLE FALLS DRIVE** | |
| UCC Forms and Fees | | | |
| Taxes | City: | **WILMINGTON** | County: **New Castle** |
| Expedited Services | | | |
| Service of Process | State: | **DE** | Postal Code: **19808** |
| Registered Agents | | | |
| GetCorporate Status | Phone: | **302-636-5440** | |
| Submitting a Request | | | |
| How to Form a New Business Entity | | | |
| Certifications, Apostilles & Authentication of Documents | | | |

Back to Entity Search    Email Status

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT E

```
DOSPITECS           CORPORATIONS PUBLIC INQUIRY SYSTEM           02/14/19
                        CURRENT STATUS INFORMATION
CURR NAME PLEASE GIMME MY PUBLISHING, INC.


NAME ASSMD  05/06/2004 TYPE 01DB A STATUS I  01/27/2010 DISSOLVED BY PROC
   EFFECTIVE DATE  11/04/2003      BIENNIAL RPT  NOT REQUIRED
ORIG NAME GIMME MY PUBLISHING, INC.


INC. DATE   COUNTY   DURATION    JURISDICTION      FOR. INC.   NFP TYPE
11/04/2003  NEWY     PERPETUAL                     __/__/____
                                                   CORPID 2973377


Process Name C/O ERESIDENTAGENT INC_
Address       99 WASHINGTON AVENUE___       SUITE 805A
City,St,Zip  ALBANY_____ , NY  12210 -


CEO Name      KANYE WEST_____
Address       417 NORTH 8TH STREET_         STE 503
City,St,Zip  PHILADELPHIA_____ , PA_ 19123 - ____
INF101    PRESS APPROPRIATE FUNCTION KEY FOR DESIRED ACTION
===>
1=CERT SEAL 2=        3=PREVIOUS  4=LIST     5=HISTORY   6=STOCK
7=          8=        9=NAMES   10=CURR ADD 11=BIEN RPT 12=NAME ENTRY
```

| Increase Font | Decrease Font | Disconnect |   | AT OFF |

# EXHIBIT F

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2  Claude M. Stern (Bar No. 96737)
   claudestern@quinnemanuel.com
3  Kaitlin E. Keohane (Bar No. 301421)
   kaitlinkeohane@quinnemanuel.com
4  Kyle K. Batter (Bar No. 301803)
   kylebatter@quinnemanuel.com
5  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
6  Telephone: (650) 801-5000
7  Facsimile: (650) 801-5100
8
9  Ryan Landes (Bar No. 252642)
   ryanlandes@quinnemanuel.com
10 865 S. Figueroa St., 10th Floor
   Los Angeles, California 90017
11 Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
12
13
14 *Attorneys for Rational Entertainment Enterprises Limited*

15            UNITED STATES DISTRICT COURT

16       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

17 GORDON VAYO, an individual,              CASE NO. 2:18-cv-03706-FFM

18              Plaintiff,

19                                          **DEFENDANT RATIONAL**
20          v.                              **ENTERTAINMENT ENTERPRISES**
                                            **LIMITED'S NOTICE OF MOTION**
21 RATIONAL ENTERTAINMENT              **AND MOTION FOR ATTORNEYS'**
   ENTERPRISES LIMITED D/B/A          **FEES AND COSTS**
22 POKERSTARS, an Isle of Man
   corporation; and DOES 1-10, inclusive,  [Submitted Concurrently with the Stern
23                                          Declaration, Colquitt Declaration, and
              Defendants.                   the [Proposed] Order]
24
25                                          Hearing:    December 18, 2018
26                                          Time:       10:00 A.M.
                                            Judge:      Hon. Frederick F. Mumm
27
28

                                    REEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:**

2  PLEASE TAKE NOTICE that on December 18, 2018 at 10:00 AM, or as soon

3  thereafter as the matter may be heard before the Honorable Magistrate Judge

4  Frederick F. Mumm in Courtroom 580 of the United States District Court of the

5  Central District of California, located at 255 East Temple Street, Los Angeles,

6  California, Defendant Rational Entertainment Enterprises Limited ("REEL") d/b/a

7  PokerStars will, and hereby does, move this Court for an order granting REEL its

8  attorney fees and costs incurred in the above captioned action ("Action").

9  This motion is made on the grounds that REEL is the "prevailing party" in this

10  lawsuit as a result of Plaintiff Gordon Vayo's voluntary dismissal of the action.

11  (Dkt. 31.)  Plaintiff Gordon Vayo's ("Vayo") bad faith conduct in manufacturing and

12  relying on fraudulent, forged evidence in an attempt to deceive the Court and REEL

13  rises to the level of sanctionable misconduct sufficient for this Court to exercise its

14  inherent authority to grant attorneys' fees.  In addition, REEL's End User License

15  Agreement ("EULA") (also known as REEL's Terms of Service ("TOS")), which

16  Vayo expressly agreed to and which formed the basis of Vayo's claims, entitles

17  REEL to "costs and expenses, including legal fees" based on Vayo's breach of the

18  EULA and his forgery of evidence to conceal that breach.   Finally, under Isle of Man

19  law, which governs the EULA, it is general practice for the prevailing party to be

20  awarded attorney's fees.  The amount of REEL's request for fees and costs is

21  reasonable given the rates charged by its attorneys, the amount of time they spent on

22  this case, and other relevant considerations.

23  Judgment is proper based on this Notice of Motion and Motion, the attached

24  Memorandum of Points and Authorities, the Court's file in this matter, and any other

25  evidence and argument as may be presented at the hearing on the motion.  REEL

26  made numerous attempts to meet and confer with counsel pursuant to L.R. 7-3.

27  However, REEL's requests went unanswered.  Specifically, REEL contacted Vayo's

28  counsel on October 24, October 30, November 1 and November 5, 2018.

-1-

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Specifically, on November 5, 2018, REEL made one final attempt to meet and confer,

2  informing Vayo's counsel that, to the extent the request went unanswered, REEL

3  intended to seek all attorneys' fees and costs provided by law.

4

5  November 12, 2018          QUINN EMANUEL URQUHART & SULLIVAN, LLP

6

7                             By _____

8                                Claude M. Stern
                                 Attorneys for Defendant Rational Entertainment
9                                Enterprises Limited d/b/a PokerStars

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND...................................................................... 1

I.     VAYO ATTEMPTS TO DEFRAUD REEL WITH FORGED EVIDENCE ................................................................................... 1

II.    VAYO FILES SUIT, RELYING ON THE FORGED DOCUMENTS ............. 3

III.   CONFIRMATION THAT VAYO'S DOCUMENTS ARE FORGERIES ........ 4

     A.    First Republic Bank Account Statements .................................... 5

     B.    Bell Canada Internet Service Provider Bills ........................... 10

ARGUMENT ...................................................................................... 16

I.     REEL IS ENTITLED TO RECOVER ATTORNEY'S FEES ...................... 16

     A.    The Court Has Authority to Sanction Vayo for Forging Evidence ........ 16

     B.    The Contract on Which Vayo Sued Entitles REEL to Recover Fees ........ 17

     C.    Isle of Man Law Applies Here and Provides for a Fee Award............... 18

II.    REEL'S REQUESTED ATTORNEYS' FEES ARE REASONABLE............ 19

     A.    Quinn Emanuel's Rates Were Reasonable ............................... 20

     B.    The Hours Expended Were Reasonable .................................. 21

III.   REEL IS ENTITLED TO RECOVER ITS "FULL COSTS".......................... 22

CONCLUSION.................................................................................... 23

-i-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## TABLE OF AUTHORITIES

**Page**

## CASES

*Allied Professionals Ins. Co. v. Harmon*,
No. 8:16-CV-01864-JLS-KES, 2017 WL 5634600
(C.D. Cal. July 28, 2017)...........................................................................18

*APL Co. Pte. v. UK Aerosols Ltd.*,
582 F.3d 947 (9th Cir. 2009) ...................................................................19

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ...................................................................20

*Bistro Executive, Inc. v. Rewards Network*, *Inc.*,
No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007).....................................21

*Boeing Co. v. KB Yuzhnoye*,
No. CV 13-00730-AB(AJWx), 2018 WL 735971
(C.D. Cal. Feb. 6, 2018) .....................................................................18, 19

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ...................................................................................16

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006)..................................................................17

*Elser v. I.A.M. Nat. Pension Fund*,
579 F. Supp. 1375 (C.D. Cal. 1984)........................................................20

*Eppes v. H.E. Snowden*,
656 F. Supp. 1267 (E.D. Ky. 1986)..........................................................16

*Flores v. Am. Seafoods Co.*,
335 F.3d 904 (9th Cir. 2003)....................................................................19

*Frahm v. Walton*,
130 Cal. 396 (1900)..................................................................................18

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013)..................................................................21

*Int'l Marble & Granite of Colo., Inc. v. Cong. Fin. Corp.*,
465 F. Supp. 2d 993 (C.D. Cal. 2006)......................................................22

*Intel Corp. v. Terabyte Int'l, Inc.*,
6 F.3d 614 (9th Cir. 1993) .......................................................................19

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1995) .....................................................................19

-ii-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006).............................................................................16

*McMunn v. Memorial Sloan–Kettering Ctr.*,
191 F. Supp. 2d 440 (S.D.N.Y. 2002)..............................................................16

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996)...............................................................................19

*Patsy's Brand, Inc. v. I.O.B., Inc.*,
317 F.3d 209 (2d Cir. 2003)..............................................................................16

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB (SHx), 2015 WL 1746484 ...............................19, 20, 21

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010).............................................................................20

*Riverside Cnty. Dept. of Mental Health v. A.S.*,
No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) .............................................21

*TransWeb, LLC v. 3M Innovative Properties Co.*,
16 F. Supp. 3d 385 (D. N.J. 2014) ....................................................................20

*United States v. Raymond*,
No. CR 14-36-BLG-SPW, 2018 WL 4690796 (D. Mont. Sept. 28, 2018).......18

*United States v. Real Property Located at 475 Martin Lane*,
2007 WL 9627508 (C.D. Cal. Feb. 28, 2007)...................................................20

*Van Skike v. Dir., Office of Workers' Comp.*,
557 F.3d 1041 (9th Cir. 2009)...........................................................................20

## **RULES AND REGULATIONS**

Local Rule 54........................................................................................................22

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Defendant Real Entertainment Enterprises Limited ("REEL") d/b/a PokerStars seeks to recover the attorneys' fees and costs it expended to defend against the lawsuit that Plaintiff Gordon Vayo ("Vayo") brought against it based on fraudulent, forged evidence. REEL is offers online poker to people *outside* the United States. When REEL withheld Mr. Vayo's winnings from an online poker tournament based on REEL's conclusion that Mr. Vayo was playing from *inside* the United States, Mr. Vayo first sent REEL purported evidence that he had played from Canada, and then sued REEL to recover his winnings (claiming in the process that REEL's user license agreement should be nullified). But Vayo's "evidence" was *forged*, and he had used it to attempt to defraud REEL and this Court.

As soon as REEL discovered the forgery and confronted Vayo about it, Vayo voluntarily and unconditionally dismissed this action, and his counsel withdrew. (Vayo's new counsel has ignored REEL's repeated requests to meet and confer, and has never denied the forgery, necessitating this motion.) REEL is thus the prevailing party in Vayo's frivolous lawsuit, and it is entitled to recover its fees and costs pursuant to (1) the Court's inherent authority to sanction bad-faith conduct; (2) the terms of the contract on which Vayo sued, which require Vayo pay REEL's fees in these circumstances; and (3) Isle of Man law, which governs this dispute and as a general rule awards fees to the prevailing party. REEL's motion should be granted, and it should be awarded $279,347.40 (plus whatever it spends related to this motion), the reasonable amount of its attorneys' fees; as well as $8,641.08, the non-taxable costs REEL has incurred to date (REEL seeks taxable costs in a separate application).

## FACTUAL BACKGROUND

### I.   VAYO ATTEMPTS TO DEFRAUD REEL WITH FORGED EVIDENCE

Prior to Vayo filing this action, he sent several demand letters to REEL

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  demanding that it "unfreeze" his account that contained approximately $600,000 that
2  he won in REEL's May 2017 SCOOP online poker tournament.  Declaration of
3  Claude M. Stern in Support of REEL's Motion for Attorneys'' Fees and Costs ("Stern
4  Decl."), Exs. A, C, E, and H (Letters sent from Vayo's counsel to REEL and REEL's
5  counsel).  REEL had frozen Vayo's account because there were indications that
6  Vayo had violated REEL's terms of service by playing in the tournament from the
7  United States.

8      As early as September 2017, Vayo sent a letter to REEL claiming that REEL
9  was wrongfully withholding his winnings and requested that REEL unfreeze his
10  account. Stern Decl., Ex. A (9/27/18 Letter from Vayo's counsel to REEL).  On
11  October 4, 2017, in response to Vayo's request, REEL informed Vayo that his
12  account was frozen because a routine security review conducted by REEL indicated
13  that between March and July 2017 – during the May 2017 SCOOP tournament –
14  Vayo was accessing his account from locations other than Canada and in violation of
15  REEL's End User License Agreement ("EULA") (also known as REEL's Terms of
16  Service ("TOS")).  Stern Decl., Ex. B (10/4/18 Letter from REEL to Vayo's
17  counsel).  REEL explained that it was continuing to investigate the matter and
18  requested Vayo provide additional documents evidencing Vayo's location in
19  Canada—and not the United States—during the period in question.  *Id*.

20      After further exchanges, Vayo ultimately agreed to  provide documentation
21  regarding his whereabouts during the relevant period. Stern Decl., Ex. E (12/4/18
22  Letter from Vayo's counsel to REEL's counsel) at 3-4.  In December 2017, Vayo
23  sent REEL his supposed internet service provider bills (from Bell Canada) and bank
24  account statements (from First Republic Bank) from April and May 2017 to prove his
25  whereabouts during that time.  *Id*. at 6-22.  As describe below, REEL later learned
26  that these documents were forgeries that Vayo had created to defraud REEL.  REEL
27  (not yet knowing that the documents were forgeries) informed Vayo that the
28  documentation was inconclusive as to his whereabouts, and requested additional

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   information and documentation, but Vayo refused.  Stern Decl., Ex. F (12/4/17 –

2   2/3/18 Email chain between REEL's counsel and Vayo's counsel).

3           Both parties understood that Vayo's physical location during the SCOOP

4   Tournament was the most central, critical issue in this case.  As REEL explained, if

5   Vayo was playing from the United States (let alone taking measures to cover up that

6   fact), then he would be in violation of REEL's EULA, not entitled to play on REEL's

7   site, not entitled to any of his winnings from the SCCOP Tournament, and likely

8   facing other civil and criminal liability.  *See* Stern Decl., Ex. D (11/14/18 Letter

9   from REEL's counsel to Vayo's counsel).   If Vayo were in Canada, though, he could

10  be entitled to recover his winnings of approximately $600,000.  This explains, but

11  certainly does not justify, why Vayo would go to the length of creating forged

12  documents to try to convince REEL he was in Canada at the relevant time.

13  **II.    <u>VAYO FILES SUIT, RELYING ON THE FORGED DOCUMENTS</u>**

14          In May 2018, Vayo filed this action, alleging that REEL wrongfully withheld

15  Vayo's winnings in the SCOOP Tournament.  Compl. ¶¶ 40-44.  Vayo's claims all

16  revolved around REEL's alleged breach of the EULA (or its alleged fraud in

17  breaching the EULA) by not paying Vayo his winnings from the SCOOP

18  Tournament.  *Id*. ¶¶ 62-72.  Vayo relied on the forged evidence in his Complaint,

19  claiming that he "provided evidence showing that he was in Canada during the

20  entirety of his play in the SCOOP tournament" and, therefore, REEL had no right to

21  freeze his account.  *Id.* ¶ 10.   Not yet knowing that Vayo's "evidence" was

22  fraudulent, REEL filed a Motion to Dismiss for Lack of Personal Jurisdiction and, in

23  the alternative, Improper Forum.  Dkt. 11.  Vayo's Opposition to the Motion to

24  Dismiss attached and relied upon his December 4, 2017 letter which had attached the

25  forged records—though (in retrospect, tellingly) the forged records themselves were

26  omitted.   Dkt. 19-6 (Ex. F to Fayer Decl. ISO Opp to Motion to Dismiss).

27          After the Motion to Dismiss was fully briefed, but before it was heard, REEL

28  received a "tip" from a third party that Vayo's bank and internet records were altered

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   by a document forger Vayo hired (the "Forger"), specifically in order to create the

2   false impression that Vayo was in Canada during the SCOOP Tournament so he

3   could fraudulently demand payment from REEL.  Stern Decl. ¶ 13.  As described

4   below, REEL's further investigation confirmed this to be the case, and REEL

5   immediately confronted Vayo about it, on a Friday evening.  *Id.* ¶¶ 14-15.  Vayo's

6   counsel claimed that he was not aware of any forgery (i.e., he had just passed along

7   the documents Vayo had provided to him), that he would ask Vayo about them, and

8   that he was concerned about speaking further because—if the documents were in fact

9   forgeries—the crime-fraud exception could apply.  *Id.* at 15.  About 48 hours later,

10  on Sunday evening, Vayo filed a notice of voluntary dismissal of all of his claims

11  (Dkt. 31), and his counsel subsequently withdrew (Dkt. 35).  REEL made repeated

12  efforts to meet and confer with Vayo's new counsel to avoid the need for this motion,

13  including by sending a detailed letter explaining Vayo's forgery.  Stern Decl. ¶¶ 16-

14  17; *id.*, Ex. I (10/19/18 Letter from REEL's counsel to Vayo's counsel).  Vayo

15  ignored these meet and confer requests, and never denied the forgery.  *Id.*

16  **III.   <u>CONFIRMATION THAT VAYO'S DOCUMENTS ARE FORGERIES</u>**

17          The third party who informed REEL of Vayo's forgery said that he (the third

18  party) had spoken to the Forger.  Stern Decl. ¶ 25.  The Forger told the third party

19  that Vayo contacted the Forger for assistance creating a virtual private network

20  ("VPN") for Vayo to use while he was playing on REEL's site in California to create

21  the false appearance that he was in Canada.  *Id.*  The Forger also provided the third

22  party with the *original* statements from First Republic Bank and Bell Canada that

23  Vayo had sent to the Forger to doctor so that they would demonstrate (falsely) that

24  Vayo was in Canada during the SCOOP tournament.  *Id.*  Importantly, the third

25  party knew and volunteered that Vayo's forged documents purported to be from Bell

26  Canada and First Republic Bank, information that *was not public* at the time or

27  provided to the third party by REEL.  *Id.*

28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

### A. First Republic Bank Account Statements

Upon close review, and ***even without reference to the original documents REEL received from the third party***, Vayo's First Republic Bank account statements are self-evidently forgeries.

- The sum of the debits and credits individually listed in the statements' transaction logs do not match the totals in the Account Summaries on the first page. Stern Decl. Exs. J-K (Vayo's purported First Republic Bank statements from April and May 2017).

- Vayo's version of the May 2017 bank statement has a negative ending balance and negative minimum balance, even though the beginning balance and credits are far higher than the debits for the month. *Id.*, Ex. K (Vayo's purported First Republic Bank statement from May 2017).



- Vayo's version of the May 2017 bank statement has a one time "ATM Rebate" credit on the first page for $2.95 (i.e., the account holder was

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

refunded a fee for using an out-of-network ATM). *Id.* at 1. However, that statement has at least five ATM withdrawals, all with an ATM fee reflecting a charge of $3, not $2.95. *Id.* at 3-5. The one-time $2.95 ATM credit is inconsistent with the multiple $3 ATM withdrawals that appear on the statement.



- Similarly, in Vayo's version of the April 2017 bank statement, there are several out-of-network ATM debits—for $103, $203, and $203—with

07010-00008/10525142.5

REEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    no corresponding rebate. *Id.*, Ex. J (Vayo's purported First Republic
2    Bank statement from April 2017).



22   • These ATM withdrawals also reflect withdrawals in round-number
23     amounts (e.g., $100, $200) plus a $3 ATM surcharge. But because
24     Vayo's account is based in the United States, these purported
25     withdrawals from ATMs in Canada, presumably in Canadian dollars,
26     should be reflected in Vayo's statements as amounts converted to US
27     dollars. After this conversion from round-number Canadian dollar

REEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1    amounts to US dollars, the US dollar amounts on the statement should

2    not be in round-number amounts.

3    The fact that Vayo's statements are forgeries is even clearer when Vayo's

4    statements are compared to the originals received from the third party.   It is clear that

5    the Forger started with Vayo's original statements that show a long list of California-

6    based transactions during the relevant time frame, swapped out those transactions for

7    a list of transactions from a Canada-based bank statement, and then adjusted a few

8    other digits throughout the statements.   *Id.*, Exs. L-M (Vayo's authentic First

9    Republic Bank statements from April and May 2017).

10   • Both versions of the April 2017 bank statements have the same

11   beginning balance, total deposits, and total checks paid, to the penny.

12   *Compare id.*, Ex. J *with* Ex. L.   But even though Vayo's version of the

13   April 2017 bank statement has approximately $2000 less in total debits

14   than the version provided by the third party, both versions have the same

15   exact minimum balance and average daily balance, to the penny.   *Id.*

16   This cannot be a coincidence, and is mathematically impossible.

17   *Original April 2017 bank statement provided by third party:*

18
19
20   
21

22   *Forged April 2017 bank statement provided by Vayo:*

23
24
25   
26
27

28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

- As explained above, the total amount of debits and credits in the transaction logs in the statements that Vayo provided do not add up to the total amounts of debits and credits reflected in the Account Summaries in Vayo's statements. *Id.*, Exs. J-K (Vayo's purported First Republic Bank statements from April and May 2017). In the versions received from the third party, though, the amounts add up perfectly. *Id.*, Ex. L-M (Vayo's authentic First Republic Bank Statements from April and May 2017). This indicates that the versions received from the third party are authentic and Vayo's are forgeries, rather than the other way around.

- Both versions of the May 2017 bank statement show an "ATM Rebate" credit on the first page for $2.95 (i.e., the account holder was refunded a fee for using an out-of-network ATM). *Compare id.*, Ex. K *with* Ex. M. As explained above, there is no transaction in Vayo's version of the transaction log that matches this ATM Rebate. *Id.*, Ex. K. In the original version received from the third party, however, there is one ATM debit in the amount of $82.95, which is consistent with an $80 withdrawal plus the $2.95 ATM fee, which was later refunded. *Id.*, Ex. M at 1, 4. Once again, the statement received from the third party is internally consistent; Vayo's is not.

- Perhaps the most telling sign of forgery: The average daily balance in the original May 2017 bank statement received from the third party is $26,995.21. *Id.* Ex. M at 1. In Vayo's version of the statement, however, the average daily balance is $29,995.21 – identical to the penny, except that Vayo's version flips a 6 to a 9. *Id.*, Ex. K at 1. A change like this—especially when paired with the fact that the amounts in Vayo's Account Summary do not sync with the amounts in his transaction log—is a clear sign of forgery.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*Original May 2017 bank statement:*

| ACCOUNT SUMMARY | | | |
|---|---|---|---|
| Beginning Balance | $29,153.25 | Average Daily Balance | $26,995.21 |
| Total Deposits and Credits | $6,003.03 | Minimum Balance | $24,595.70 |
| Total Withdrawals and Debits | $6,657.55- | Service Charges | $0.00 |
| Total Checks Paid | $3,900.00- | Interest Earned This Period | $0.08 |
| **Ending Balance** | **$24,598.73** | Interest Year to Date | $1.56 |

*May 2017 bank statement provided by Vayo:*

| ACCOUNT SUMMARY | | | |
|---|---|---|---|
| Beginning Balance | $30,810.36 | Average Daily Balance | $29,995.21 |
| Total Deposits and Credits | $6,003.03 | Minimum Balance | $29,332.74- |
| Total Withdrawals and Debits | $3,583.68- | Service Charges | $0.00 |
| Total Checks Paid | $3,900.00- | Interest Earned This Period | $0.08 |
| **Ending Balance** | **$29,329.71-** | Interest Year to Date | $1.56 |

Once again, the only plausible explanation is that the Forger started with Vayo's original First Republic statements (which show transactions in Southern California), replaced the list of transactions with transactions from another Canada-based bill, and then transposed a few digits in the Account Summary section. *Compare id.*, Ex. K *with* Ex. M. Vayo then fraudulently submitted these forgeries to REEL in connection with the December 4, 2017 letter. *Id.*, Ex. E.

**B.** **Bell Canada Internet Service Provider Bills**

As with the bank account statements, Vayo's internet bills are self-evident forgeries, even without reference to the original documents REEL received.

- The "Account Number" on a Bell Canada bill matches the "Customer Number" on that bill, except the Customer Number has a few extra characters. *Id.*, Ex. N (███ authentic Bell statement from April 2017). But for Vayo's forged bills, these numbers do not match—two sets of three digits have been transposed, as reflected in this color-coded comparison:

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER
SEAL**

| Account Number | Customer Number |
|---|---|
| ▮▮▮▮ | ▮▮▮▮ |



In other words, if Vayo's Customer Number is ▮▮▮▮, his
Account Number should be ▮▮▮▮. But it is not. *Id.*, Exs. O-P
(Vayo's purported Bell statements).

- Even more telling, the Account Number on Vayo's April 2017 bill that
appears on the bottom of the bill is ▮▮▮▮—i.e., what the Account
Number should be given his Customer Number. *Id.*, Ex. O (Vayo's
purported Bell statement from April 2017). Indeed, this one instance of
the Account Number does not match the Account Number listed
elsewhere on Vayo's bills—even elsewhere on that same bill—but it
does match his Customer Number. The only explanation is that the
Forger forgot to alter this portion of Vayo's bill, and thus accidentally
left the original, unaltered Account Number. *Id.*

[Illustration on following page]

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



Comparing Vayo's documents to the originals received from the third party removes any doubt that Vayo's versions are forgeries. The original bills, it turns out, appear to be from a person named ███████. *Id.*, Ex. N (███ authentic Bell statement). Here is how we know Vayo simply altered ███████ bills to include his own name and then submit them as his own:

- ███████ bills and Vayo's bills have exactly the same Customer Number: ███████████. *Compare id.*, Ex. N *with* Ex. O. Every customer should have a unique Customer Number.

  [Illustrations on following page]

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   •       ▮ Customer Number matches his own Account Number. *Id.*,

18   Ex. N (▮ authentic Bell statement). As noted above, Vayo's does not

19   (except in the one instance where the Forger forgot to change the

20   Account Number on the bottom of Vayo's bill). *Id.*, Exs. O-P (Vayo's

21   purported Bell statements from April and May 2017).

22

23
24
25   

26

27   •       The serial number at the bottom of ▮ bill and Vayo's bill are

28   identical. *Compare id.*, Ex. N *with* Ex. O.

-13-

REEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18

19    • All of the dollar amounts match on [REDACTED] and Vayo's bills, to the

20    penny (i.e., for services, credits, amount due, etc.).  *Compare id.*, Ex. N

21    *with* Ex. O.   [Illustration on following page.]

22
23
24
25
26
27
28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**



Once again, the only plausible explanation for these numerous issues is that the Forger started with ▉▉▉▉ bill, swapped ▉▉▉▉ personal information for Vayo's, and then transposed digits in ▉▉▉ Account Number (except in the one instance he forgot to do so) to create a new Account Number for Vayo. *Compare id.*, Ex. N *with* Ex. O. Vayo then fraudulently submitted these forgeries to REEL in connection with its December 4, 2017 letter. *Id.*, Ex. E.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1      Perhaps the most telling evidence of Vayo's forgery is that he has *never* denied

2  it, and he dismissed his suit suddenly over a weekend and his counsel withdrew

3  immediately after REEL told Vayo it knew the documents were forgeries. This

4  dismissal and withdrawal happened even before REEL provided the evidence of

5  forgery set forth above. Quite plainly, Vayo knew he had been caught.

**ARGUMENT**

6

7  **I.    REEL IS ENTITLED TO RECOVER ATTORNEY'S FEES**

8      **A.    The Court Has Authority to Sanction Vayo for Forging Evidence**

9      Courts have the inherent power to sanction parties and attorneys who conduct

10  litigation in bad faith or who perpetrate fraud on the court. *Chambers v. NASCO,*

11  *Inc.,* 501 U.S. 32, 45-46 (1991) (affirming an award of $996,644.65 in attorneys' fees

12  pursuant to the court's inherent power to impose sanctions for bad-faith conduct); *see*

13  *also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) ("Under its 'inherent

14  powers,' a district court may also award sanctions in the form of attorneys' fees

15  against a party or counsel who acts in bad faith, vexatiously, wantonly, or for

16  oppressive reasons.") (citations omitted). Indeed, "when a party lies to the court and

17  his adversary intentionally, repeatedly, and about issues that are central to the truth-

18  finding process, it can be fairly said that he has forfeited his right to have his claim

19  decided on the merits." *McMunn v. Memorial Sloan–Kettering Ctr.,* 191 F.Supp.2d

20  440, 445 (S.D.N.Y. 2002) (finding that dismissal of action with prejudice and

21  monetary sanctions was warranted due to plaintiff's bad faith conduct).

22      Manufacturing fraudulent evidence in an effort to defraud REEL and the Court

23  easily rises to the level of misconduct warranting sanctions. *See e.g., Patsy's Brand,*

24  *Inc. v. I.O.B., Inc.,* 317 F.3d 209, 222 (2d Cir. 2003) (affirming a finding of contempt

25  and award of attorneys' fees under the Lanham Act against a party who submitted

26  fraudulent evidence); *Eppes v. H.E. Snowden*, 656 F.Supp. 1267 (E.D. Ky. 1986)

27  (stating "[t]he remedy [for manufacturing evidence] . . . [,] must be sufficient to

28  serve universal notice that this conduct will not be tolerated" and awarding fees and

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  costs where defendants submitted manufactured evidence).  So too here, Vayo's

2  reliance on evidence he forged to defraud REEL and this Court is a dire offense that

3  can only be remedied by requiring Vayo to compensate REEL for the costs and fees it

4  incurred defending against Vayo's fraudulent claims based on doctored evidence.

5    **B.    The Contract on Which Vayo Sued Entitles REEL to Recover Fees**

6       Like all users of REEL's gaming website, before downloading the software and

7  playing on the website, Vayo explicitly agreed to REEL's EULA.  Compl. ¶¶ 9-15;

8  Dkt No. 11 at 14.   The EULA provides that that if a user breaches it, the user agrees

9  to "fully indemnify, defend and hold harmless [REEL] from and against all . . . *costs*

10 *and expenses, including legal fees and any other charges whatsoever, howsoever*

11 *caused, that may arise as a result of:   (a) your breach of this Agreement, in whole or*

12 *in part*."   Dkt. No. 11-1 (Winter Decl ISO Motion to Dismiss), Ex. A at 4, § 8.

13      Section 5.11 of the EULA "prohibits persons located in . . . certain jurisdictions

14 [(i.e., Prohibited Jurisdictions, including the United States)] . . . from . . . engag[ing]

15 in [real money] Games."  Dkt. No. 11-1 (Winter Decl ISO Motion to Dismiss), Ex. A

16 at 3, § 5.11.   The EULA also provides that a user breaches by "manipulating the

17 information used by [REEL] to identify your location ***and providing [REEL] with***

18 ***false or misleading information regarding your location or place of***

19 ***residence***."   Dkt. No. 11-1 (Winter Decl ISO Motion to Dismiss), ¶¶ 19-21 and Ex. A

20 at 3, § 5.11.   By playing the SCOOP Tournament in the United States (as the

21 authentic bank records show), and then by providing REEL with forged records

22 regarding his location (and relying on them to file this suit), Vayo breached the

23 EULA, and REEL is thus entitled to fees.

24      Having sued REEL for a breach of this very EULA, Vayo cannot avoid its

25 provisions that require him to pay REEL's "costs and expenses, including legal fees"

26 when Vayo seeks to defraud REEL and pursue a bad-faith lawsuit using forged

27 evidence.  *See, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (a

28 party cannot "claim[] the benefits of a contract while simultaneously attempting to

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   avoid the burdens that contract imposes"); *Allied Professionals Ins. Co. v. Harmon*,

2   2017 WL 5634600, at *4 (C.D. Cal. July 28, 2017) ("There is no more direct

3   exploitation of a contract than attempting to collect money owed under that

4   agreement. Accordingly, in [Harmon's] attempts to collect under the policy, Harmon

5   cannot avoid the same agreement's arbitration provision.").

6       **C.   Isle of Man Law Applies Here and Provides for a Fee Award**

7       REEL's EULA contains a forum-selection clause which unambiguously states

8   that the EULA "and any matters relating [to it] shall be governed by, and construed in

9   accordance with, the laws of the Isle of Man." Dkt. 11-1. at ¶ 25 & Ex. A at 5, §

10  14.1. If the dispute arises out of a contract with a valid choice of law provision then

11  the court will apply the rule of the jurisdiction chosen by the parties. *Boeing Co. v.*

12  *KB Yuzhnoye*, 2018 WL 735971, at *3 (C.D. Cal. Feb. 6, 2018) (*citing Flores v. Am.*

13  *Seafoods Co.*, 335 F.3d 904, 916 (9th Cir. 2003), and *APL Co. Pte. v. UK Aerosols*

14  *Ltd.*, 582 F.3d 947, 951 (9th Cir. 2009)). For example, the Court in *Boeing* applied

15  the attorneys' fees rule of Sweden because the contract between the parties contained

16  a choice of law provision stating that the "formation, interpretation, and performance

17  of this Agreement shall be governed by and interpreted in accordance with the law of

18  the Kingdom of Sweden." *Id.* at *2 (citation omitted).

19      Under Isle of Man law, the Isle of Man High Court has discretion as to whether

20  costs in the form of attorneys' fees incurred during the course of a litigation are

21  payable by one litigating party to another, the amount of such costs and the timing of

22  any payment of such costs. Declaration of Robert Colquitt in Support of Defendant

23  REEL's Motion for Attorneys' Fees and Costs ("Colquitt Decl.") at ¶ 2. Generally,

24  the Isle of Man High Court awards costs of attorneys' fees to the successful party.

25  *Id.* Indeed, in a situation like this one where a claimant voluntarily dismisses a

26  lawsuit against a defendant, the defendant is considered the successful party and the

27  court would likely exercise its discretion and award costs of attorneys' fees against

28  the claimant. *Id.* at ¶ 3. Vayo's swift voluntary dismissal here is effectively an

-18-

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  admission of defeat.  *See, e.g.*, *Frahm v. Walton*, 130 Cal. 396, 399 (1900) (stating

2  that "the voluntary dismissal of the action by the plaintiffs was an admission by them

3  that they were unable to maintain their action"); *United States v. Raymond*, No. CR

4  14-36-BLG-SPW, 2018 WL 4690796, at *1 (D. Mont. Sept. 28, 2018) (finding the

5  plaintiff's voluntarily dismissal to have "only one tenable interpretation":  "He read

6  the writing on the wall. . . .  In these circumstances, voluntary dismissal was an

7  admission of defeat.").

8         The Court should apply the attorneys' fees rule of the Isle of Man and award

9  costs of attorneys' fees to REEL, the successful party, consistent with Isle of Man

10  law.

11  **II.     REEL'S REQUESTED ATTORNEYS' FEES ARE REASONABLE**

12         REEL seeks to recover for 345.80 hours of time spent by Quinn Emanuel on

13  this matter, in the total amount of $279,347.40, plus whatever sums it spends on this

14  motion, the reply brief, and attending the hearing.   This includes both the time Quinn

15  Emanuel spent litigating this Action, as well as the time Quinn Emanuel spent

16  negotiating with Vayo and investigating his fraudulent claims prior to the complaint

17  being filed.   These fees are reasonable and should be awarded in full.

18         Courts in the Ninth Circuit assessing reasonableness apply the "lodestar

19  method," *see Morales v. San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), which entails

20  multiplying the number of hours reasonably expended in litigation by a reasonable

21  hourly rate, in order to obtain a ***presumptively reasonable*** fee award.  *Perfect 10,*

22  *Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *4 (citing

23  *Intel Corp. v. Terabyte Int'l, Inc.* 6 F.3d 614, 622 (9th Cir. 1993).   The Court

24  considers whether to enhance or reduce the lodestar figure based on various factors,

25  but REEL does not seek an enhancement, and none of the factors justify a reduction

26  from the lodestar.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.

27  1995); *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

28

07010-00008/10525142.5

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

### A.  <u>Quinn Emanuel's Rates Were Reasonable</u>

Whether the rates charged by counsel to a prevailing party were reasonable is determined "according to the prevailing market rates in the relevant community," *Perfect 10*, 2015 WL 1746484, at \*5 (quoting *Van Skike v. Dir., Office of Workers' Comp.*, 557 F.3d 1041, 1046 (9th Cir. 2009), which is generally "the forum in which the district court sits," *id.* (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  In particular, "courts consider rates charged by other 'attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter' for 'similar services by lawyers of reasonably comparable skill, experience and reputation.  *Id.* at \*15 (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d  446, 455 (9th Cir. 2010)).  "[T]he rates an attorney actually charges its client is a 'good starting . . . point' because 'the actual rate that [the attorney] can command in the market is itself highly relevant proof of the prevailing community rate.'"  *Id.* at \*18 (quoting *Elser v. I.A.M. Nat. Pension Fund*, 579 F. Supp. 1375, 1379 (C.D. Cal. 1984)).

The rates charged by Quinn Emanuel professionals reflect a 10% across-the-board discount that Quinn Emanuel gave on this matter.  Stern Decl. ¶ 27.  The resulting rates, ranging from $1,225 for senior partners to $720 for mid-level associates, were reasonable in a dispute as important as this one, in which Vayo sought to invalidate the EULA that governs REEL's relationship with all of its users. *Id.*  Numerous courts have routinely found that Quinn Emanuel's rates are reasonable (even when undiscounted).  *See*, *e.g.*, *TransWeb, LLC v. 3M Innovative Properties Co.*, 16 F. Supp. 3d 385, 411-13 (D. N.J. 2014) (affirming Special Master's determination that Quinn Emanuel rates and time spent were reasonable); *United States v. Real Property Located at 475 Martin Lane*, 2007 WL 9627508, at \*2 (C.D. Cal. Feb. 28, 2007) ("With regard to the Quinn Emanuel fees, the Court similarly finds that the work performed, the time spent, and the billing rates for the several attorneys working on the matter are reasonable."); *Perfect 10*, 2015 WL

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1746484, at \*15-21, \*27-28 (Quinn Emanuel fee award of $5,213,117.06 was reasonable because "[t]he value of Defendants' choice to retain 'pre-eminent' law firms showed in both the quality of defense counsel's lawyering and the decisive results they obtained for Defendants"); Civil Minutes re: Order Granting Motion for Attorneys' Fees, *Riverside Cnty. Dept. of Mental Health v. A.S.*, No. 08-cv-00503-ABC (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); *Bistro Executive, Inc. v. Rewards Network*, *Inc.*, No. 04-cv-4640-CBM (C.D. Cal. Nov. 19, 2007) (ECF No. 357) (finding Quinn Emanuel's attorney rates and hours were reasonable).).

## B. The Hours Expended Were Reasonable

In determining "'whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted.'" *Perfect 10*, 2015 WL 1746484, at \*5 (quoting *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013)).

REEL's request for $279,347.40 in attorney's fees reflects 345.80 hours of work performed by Quinn Emanuel attorneys. Stern Decl. ¶ 26. As described in the accompanying Stern declaration, the number of hours Quinn Emanuel worked on this litigation was reasonable and appropriate given the magnitude of the work that was required to be performed on this case, the degree of success obtained, and the value of the result to REEL. *Id.* ¶¶ 26-29. First, Quinn Emanuel needed to expend significant effort before the litigation was filed to assess Vayo's (false) claim that he had been playing in Canada, and to review the forged records Vayo relied upon. After the case was filed, Quinn Emanuel needed to prepare a complicated Motion to Dismiss (along with several supporting declarations from REEL employees and an expert on Manx law) and a supporting reply brief addressing issues including general jurisdiction, personal jurisdiction, the forum selection clause in the EULA, and forum non-conveniens.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  The amount of time Quinn Emanuel spent on these tasks was reasonable,
2  especially given their complexity and the importance of the work to the ongoing
3  validity of REEL's EULA.

4  **III.    REEL IS ENTITLED TO RECOVER ITS "FULL COSTS"**

5  In addition to attorney's fees, REEL is concurrently filing an Application to
6  Tax Costs under Local Rule 54 relating to "taxable" costs such as document
7  reproduction costs for the chamber's copies, in the sum of $362.44. Vayo's
8  voluntary dismissal of this Action entitles REEL to recover these taxable costs as the
9  "prevailing party." *See* L.R. 54-1; *Int'l Marble & Granite of Colo., Inc. v. Cong.*
10  *Fin. Corp.*, 465 F. Supp. 2d 993, 999-1000 (C.D. Cal. 2006) (defendant was the
11  prevailing party where suit was dismissed without prejudice).

12  In addition to *taxable* costs, REEL is further entitled to, and hereby requests
13  the Court award it, the *full costs* it incurred for the same reasons the Court should
14  award attorney's fees (*see supra* Section I), detailed as follows:

| Category | Costs |
|---|---|
| Administrative Costs | $196.86 |
| Legal Research | $7,972.30 |
| Copying and Reproduction (Non-Taxable) | $334.92 |
| Service and Courier | $137.00 |
|  | $8,641.08 |

19  These costs were reasonably and necessarily incurred in connection with this
20  litigation and were actually paid by REEL. Stern Decl. ¶ 29. REEL requests that
21  these non-taxable costs be awarded in full.

22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

07010-00008/10525142.5

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## CONCLUSION

1    For the reasons set forth above, REEL respectfully requests that the Court grant

2

3    this motion in full and award REEL $279,347.40 in reasonable attorneys' fees and

4    $8,641.08 in non-taxable costs, plus whatever amounts it spends in connection with

5    this motion.

6

7    November 12, 2018        QUINN EMANUEL URQUHART & SULLIVAN, LLP

8

9                            By_____

10                                   Claude M. Stern
                                     Attorneys for Defendant Rational Entertainment
11                                   Enterprises Limited d/b/a PokerStars

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: LIQUID ALUMINUM SULFATE ANTITRUST LITIGATION | Civil Action No. 16-md-2687 (JLL) (JAD) |
| | **DECLARATION OF**<br>**SAMI H. RASHID**<br>**IN SUPPORT OF APPLICATION FOR**<br>**ATTORNEYS' FEES AND EXPENSES** |

I, Sami Rashid, Esq., declare as follows:

1.      I am a partner in the firm of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), counsel for SUEZ Water Environmental Services Inc., SUEZ Water New Jersey Inc., SUEZ Water Princeton Meadows Inc., SUEZ Water New Jersey Inc., and SUEZ Water Pennsylvania Inc. ("SUEZ"), and a member of the Plaintiffs' Steering Committee above-captioned action (the "Action").  I am familiar with the facts contained herein based upon my personal knowledge, based upon information I learned from my colleagues at Quinn Emanuel regarding their work, and based upon information provided to me from the attorney and paralegal time diaries, and expense records, maintained in the ordinary course of business by Quinn Emanuel.  I submit this declaration in support of Class Counsel's application for an award of attorneys' fees in the Action, as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.      From the onset of the litigation, Quinn Emanuel has been heavily involved in working with lead counsel and other members of the Plaintiffs' Steering Committee to develop the case and assess and implement effective litigation strategy.  For example, Quinn Emanuel took a lead role in successfully moving before the Judicial Panel on Multidistrict Litigation ("JPML") to have the original cases consolidated in a multidistrict action and transferred to the District of New Jersey. And following the consolidation and transfer to the District of New

Jersey, Quinn Emanuel assisted in drafting the Consolidated Amended Complaint. This required significant pre-complaint investigation, including reviewing initial documentary materials made available to the direct purchaser plaintiffs' counsel by Defendant General Chemical, among others.

3.     Quinn Emanuel took the lead in researching, drafting, revising, and finalizing the successful oppositions to the motions to dismiss filed by Defendants GEO Specialty Chemicals ("GEO") and General Chemical. We also assisted in the successful opposition to the motions to dismiss filed by Defendants USALCO, Southern Ionics, and C&S Chemicals.

4.     Quinn Emanuel also took the lead role in researching, drafting, revising and finalizing the successful opposition to GEO's motions in the Bankruptcy Court to reopen and enforce that Court's previous bankruptcy discharges so as to preclude or limit the claims in this Action. Quinn Emanuel partner Eric Winston, a bankruptcy litigation specialist, prepared for oral argument on the motions and presented the arguments to the Bankruptcy Court. Following oral argument, on December 4, 2017, the Bankruptcy Court denied GEO's motions, resulting in an 84-page opinion in Plaintiffs' favor.

5.     Throughout the discovery process, Quinn Emanuel has been heavily involved in negotiating with Defendants GEO and General Chemical on issues pertaining to the production of transactional data. The negotiations and discussions surrounding these data issues took months and involved numerous meet-and-confers, written letters and emails, and other communications with Defendants in order to understand the systems where Defendants stored their data, what types of data were kept on those systems, and the availability of that data. It further involved negotiating with Defendants as to what types of data they would produce. These negotiations were complex, and required considerable time and attention.

2

6.      Named plaintiff SUEZ is Quinn Emanuel's client and thus Quinn Emanuel has been the primary point of contact in liaising with SUEZ on a variety of issues.  This has included phone calls and written communications regarding SUEZ's discovery obligations, meetings and teleconferences related to document collection, and the review of SUEZ's documents.  It has also entailed discussions regarding developments in the action, including the settlement with GEO, among other issues.

7.      Quinn Emanuel has also taken a lead role in coordinating with Plaintiffs' consulting experts to analyze the documents and data produced by Defendants for the purposes of class certification and liability.  These ongoing efforts have been time-consuming given the importance of economic and statistical evidence of collusion in cases such as this.  I have taken a lead role in this work with and related to the experts.

8.      Particularly relevant at this juncture, Quinn Emanuel was instrumental in reaching the Settlement Agreement with GEO.  Stephen Neuwirth of Quinn Emanuel joined lead counsel, James Cecchi, in leading the negotiations for the direct purchaser plaintiffs.  This included participation both in formal mediation sessions and more informal negotiations with GEO outside the presence of the mediator.  Moreover, Quinn Emanuel bankruptcy litigation partner Eric Winston worked with GEO's creditors to develop a creative, innovative framework for maximizing the value of the settlement to the direct purchaser plaintiffs, by establishing an opportunity for the plaintiffs to share in the proceeds of a contemplated sale of GEO.  Mr. Winston participated in many discussions in person and by phone with GEO and its creditors, and Mr. Neuwirth joined Mr. Winston in many of those discussions.  Furthermore, because GEO suggested it would only be prepared to settle if it could achieve complete peace with all plaintiff groups in the pending multidistrict litigation (that is, not only the direct purchaser plaintiffs, but

also the indirect purchaser plaintiffs and the direct action plaintiffs), Mr. Neuwirth worked with Mr. Cecchi over many weeks to incorporate the indirect purchaser plaintiffs and the direct action plaintiffs into the overall settlement. This involved many phone calls and several in-person meetings.

9. The schedule attached hereto as Exhibit 1 is a summary indicating the amount of time spent by each attorney and professional support staff employee of Quinn Emanuel who was involved in the Action, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available upon request for review by the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

10. The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular rates that would be charged for their services in non-contingent matters and/or which have been accepted in other class action litigation.

11. The total number of hours expended on this Action by Quinn Emanuel through the end of August 2018 is 3,712.88. The total lodestar for my firm for that period is $2,985,170.70, consisting of $ 2,956,443.70 for attorneys' time, including non-partnership track staff attorneys, and $28,727.00 for professional support staff time.

12. My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

13.     As detailed in the schedule attached hereto as Exhibit 2, through August 2018 Quinn Emanuel has incurred a total of $281,239.45 in unreimbursed expenses in connection with the prosecution of this Action.

14.     The expenses incurred in this Action are reflected on the books and records of Quinn Emanuel.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

15.     With respect to Quinn Emanuel's standing, attached hereto as Exhibit 3 is a brief biography of the firm and biographies of the Quinn Emanuel partners who have been principally involved in this Action.

I hereby declare under penalty of perjury that the foregoing facts are true and correct.

_____
Sami H. Rashid

Dated: September 15, 2018

5

# Exhibit 1

| *In re Liquid Alumuinim Sulfate Antitrust Litig.* <br> **Quinn Emanuel Urguhart & Sullivan, LLP** | | | | |
|---|---|---|---|---|
| **Last Name, First Name** | | **Total Hours** | **Hourly Rate** | **Cumulative Lodetsar** |
| **ATTORNEYS** | | | | |
| Neuwirth, Stephen R. | | 266.00 | $ 1,375.00 | $ 365,750.00 |
| Winston, Eric D. | | 208.30 | $ 1,090.00 | $ 227,047.00 |
| Rashid, Sami H. | | 906.08 | $ 940.00 | $ 851,715.20 |
| Peck, Julia J. | | 1.00 | $ 920.00 | $ 920.00 |
| Emily M. Smith | | 10.30 | $ 765.00 | $ 7,879.50 |
| Schmidt, Margaret | | 576.50 | $ 745.00 | $ 429,492.50 |
| Beattie, Todd | | 218.90 | $ 745.00 | $ 163,080.50 |
| Volpe, John | | 1,275.20 | $ 670.00 | $ 854,384.00 |
| Diana Peng | | 3.20 | $ 350.00 | $ 1,120.00 |
| James Harris | | 77.90 | $ 350.00 | $ 27,265.00 |
| Isabelle Foucard | | 50.60 | $ 350.00 | $ 17,710.00 |
| Gene Ming Lee | | 8.00 | $ 350.00 | $ 2,800.00 |
| Rashad Chambers | | 20.80 | $ 350.00 | $ 7,280.00 |
| | | | | |
| **TOTAL ATTORNEYS** | | **3,622.78** | | **$ 2,956,443.70** |
| | | | | |
| **PARALEGALS** | | | | |
| Michael Guerrero | | 88.60 | $ 320.00 | $ 28,352.00 |
| | | | | |
| **LITIGATION SUPPORT** | | | | |
| James Bandes | | 1.50 | $ 250.00 | $ 375.00 |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL STAFF** | | **90.10** | | **$ 28,727.00** |
| | | | | |
| | | | | |
| **TOTALS:** | | **3,712.88** | | **$ 2,985,170.70** |

# Exhibit 2

In Re Liquid Aluminum Sulfate Antitrust Litigation Monthly Expense Report

**FIRM NAME: QUINN EMANUEL URQUHART & SULLIVAN, LLP**
**REPORTING PERIOD: Entire period through August 2018**

EXPENSE SUMMARY:

| CATEGORY | DESCRIPTION | AMOUNT | RECEIPT PROVIDED: YES/NO (If No, Provide Reason) |
|---|---|---|---|
| Litigation Assessment | | | |
| Federal Express/Local Courier, etc. | | | Yes |
| Postage Charges | | | No - Internal Soft Cost |
| Facsimile Charges | | | |
| Long Distance | | | Yes - External Conf. Calls |
| In-house Photocopying | | | No - Internal Soft Cost |
| Outside Photocopying | | | |
| Hotels | | | |
| Meals | | | Yes |
| Mileage | | | |
| Air Travel | | | Yes |
| Deposition Costs | | | |
| Lexis/Westlaw | | | Yes |
| Court Fees | | | Yes |
| Witness/Expert Fees | | | Yes |
| Investigation Fees/Service Fees | | | |
| Transcripts | | | |
| Ground Transportation (i.e., Rental, Taxis, etc) | | | Yes |
| Miscellaneous (Describe) | | | No - Internal Soft Cost |
| **TOTAL EXPENSES** | | **$281,239.50** | |

EXPENSE DETAIL:

| CATEGORY | DESCRIPTION | AMOUNT | RECEIPT PROVIDED: YES/NO (If No, Provide Reason) |
|---|---|---|---|
| Air Travel Total | | 5,895.92 | |
| Court Fees Total | | 512.00 | |
| Federal Express/Local Courier, etc. Total | | 108.93 | |
| Ground Transportation (i.e., Rental, Taxis, etc) Total | | 3,660.99 | |
| In-house Photocopying Total | | 1,664.46 | |
| Investigation Fees/Service Fees Total | | 251,542.00 | |
| Lexis/Westlaw Total | | 13,578.10 | |
| Long Distance Total | | 438.77 | |
| Meals Total | | 1,207.19 | |
| Miscellaneous (Describe) Total | | 2,628.49 | |
| Postage Charges Total | | 2.60 | |
| Grand Total | | 281,239.45 | |

# Exhibit 3



# Firm Overview

Quinn Emanuel Urquhart & Sullivan, LLP was founded in 1986 in Los Angeles. Since that time, the firm has become the largest law firm in the world dedicated solely to business disputes. Quinn Emanuel now has 780+ attorneys and offices in Boston, Brussels, Chicago, Hamburg, Hong Kong, Houston, London, Los Angeles, Mannheim, Munich, New York, Paris, Perth, San Francisco, Seattle, Shanghai, Silicon Valley, Stuttgart, Sydney, Tokyo, Washington, D.C., and Zurich.

We understand that Quinn Emanuel tries more major business cases than any other law firm. At least once each year, the firm is in a trial or an arbitration pursuing or defending against a claim for over $1 billion in damages. Quinn Emanuel partners have tried over 2,645 trials and arbitrations and won 88% of them.

# Awards and Accolades

Quinn Emanuel's excellence has been repeatedly recognized and awarded. For example:

- *The American Lawyer* twice ranked Quinn Emanuel among the top six business litigation departments in the U.S. and has named us the top IP department in the country.

- Quinn Emanuel has been repeatedly selected for *The National Law Journal's* "Plaintiffs' Hot List."

- Quinn Emanuel was named a finalist for *The Recorder's* 2016 Litigation Department of the Year award.

- In 2016, Quinn Emanuel was named a "Litigation Powerhouse" and one of the top three firms for litigation by Law360.

- The Firm was shortlisted for "US Law Firm of The Year" by *Legal Business 2018*.

- Quinn Emanuel has been named one of the "four firms in-house counsel fear the most" four times since 2010. The "Fearsome Foursome" are selected based on BTI Consulting Group's recent survey of over 300 General Counsel, Chief Legal Officers, and other legal decision makers at major corporations.

- The 2019 edition of *Best Lawyers USA* has selected our attorneys for recognition in such practice areas as Antitrust Law and Antitrust Litigation.

- *The Legal 500 United States 2018* has recommended the firm as a Top-Tier Firm in seven practice areas, and is recommended in a further 16 practice areas. In addition, Stephen Neuwirth was listed as an elite "Leading Lawyer."

# Success for Plaintiffs

When representing plaintiffs, our lawyers have won over $60 billion in judgments and settlements, $28 billion of which was recovered in a recent two-year period. Along the way, we have obtained five 9-figure jury verdicts, thirty-four 9-figure settlements, and fifteen 10-figure settlements.

We have the expertise and resources to prosecute any case, from complex technical patent cases to the world's most sophisticated financial frauds or conspiracies that violate the antitrust laws. And our experience defending major companies allows us to see the big picture when representing plaintiffs—a significant edge over firms that confine their practice to representing plaintiffs. It allows us to fully understand the mechanics of businesses, complex financial deals and technologies, and ensure that we are able to deliver the same quality demanded by Fortune 100 companies when litigating against them.

# Antitrust Practice

Quinn Emanuel is uniquely qualified to assist companies, either as plaintiffs or defendants, in dealing with antitrust and competition disputes across the globe. Quinn Emanuel is one of the only top tier law firms that regularly represent companies both as plaintiffs and defendants. Our work representing both plaintiffs and defendants has made us more effective advocates in either context. We can bring to bear our unique insight into the plaintiffs' and defendants' bar.

Quinn Emanuel's talented and deep antitrust bench has generated extraordinary results. When acting for plaintiffs, we have achieved unparalleled recoveries. In recent years, Quinn Emanuel has, for example:

- achieved over $430 million in settlements as court-appointed co-lead counsel for the direct purchaser plaintiff class in *In re Flexible Polyurethane Foam Antitrust Litigation* (N.D. Ohio);

- secured approximately $1.9 billion settlements for the class in the *In re Credit Default Swaps Antitrust Litigation* (E.D.N.Y.);

- won perhaps the most significant antitrust jury trial of recent years, defeating Rambus' multibillion dollar claims against our client Micron, even after Micron had admitted guilt for price fixing in connection with the government's amnesty program;

- secured settlements for plaintiffs of $130 million cash, along with conduct changes valued at hundreds of millions of dollars more, as co-lead plaintiffs' counsel in the antitrust class action litigation concerning credit cards used at truck stops (E.D. Pa.);

- secured $110 million for Songkick in a lawsuit alleging that Ticketmaster and its parent corporation, Live Nation, illegally monopolized and attempted to monopolize the market for artist presale ticketing services in the United States; and

- obtained dismissal for Mattel of a Sherman Act suit brought by a competitor seeking $1 billion in alleged compensatory damages.





**STEPHEN NEUWIRTH**
Partner
New York Office
Tel: +1 (212) 849-7165
Fax: +1 (212) 849-7100
E-mail: stephenneuwirth@quinnemanuel.com

Stephen Neuwirth, one of the leading antitrust attorneys in the United States, chairs Quinn Emanuel's worldwide Antitrust and Competition Law practice. He has been recognized by Law360 in 2017 as one of just five antitrust "MVPs" nationwide, by Corporate LiveWire in 2016 as U.S. Antitrust and Competition Lawyer of the Year, by the National Law Journal in 2015 as an Antitrust "Trailblazer," and by Law360 in 2014 as a "Titan of the Plaintiffs' Bar." Chambers USA has described Mr. Neuwirth as "renowned for his deep understanding of corporate transactions and antitrust matters" and "recognized as a 'leading light' for his plaintiffs' work." Mr. Neuwirth has also been ranked a Non-IP Litigation Star by LMG Life Sciences 2017.

In 2014-2015 alone, Mr. Neuwirth has achieved over $800 million in recoveries when representing plaintiffs. But Mr. Neuwirth is also one of the rare attorneys with a blue chip practice on both sides of the "v.", also representing defendants in some of the most important litigation in the nation. In recent years, for example, Mr. Neuwirth has on three occasions achieved voluntary dismissal of class action antitrust claims against Quinn Emanuel clients – in each instance without the clients having to make any monetary payment. In addition, Mr. Neuwirth also has been active in sports law matters, including recent representations of the Washington Nationals Baseball Club in litigation against the Baltimore Orioles concerning fees for television broadcast of Nationals games, and of Madison Square Garden and the New York Rangers in defense of federal antitrust claims alleging that the National Hockey League and other parties colluded to fix prices for television and internet broadcast of NHL games. Mr. Neuwirth has also handled major matters for Mexican companies with U.S. claims, including representation of Grupo Televisa, the world's largest Spanish-language media company, in U.S. litigation successfully enjoining JP Morgan's effort to transfer, to a bank controlled by Televisa competitor Carlos Slim, most of a $300 million dollar loan that JP Morgan had made to Televisa's cable television business.

Mr. Neuwirth brings to bear almost three decades of experience in private practice and government, including serving as Associate White House Counsel to President Clinton from 1993-1996. In 1998, the U.S. Department of Justice retained Mr. Neuwirth to assist in the Antitrust Division's litigation against Microsoft Corporation.

## REPRESENTATIVE CLIENTS

Barnes & Noble, Inc.
FEMSA
Grupo Televisa
Harley Davidson, Inc.
The Home Depot
Honeywell International, Inc.
IBM Corporation
Madison Square Garden
Olin Corporation
Unisys Corporation
Washington Nationals Baseball Club

## NOTABLE REPRESENTATIONS

As lead counsel for Mexico's Grupo Televisa, the world's largest Spanish-language media company, won federal preliminary injunction blocking JPMorgan from transferring to a Televisa competitor a $200 million interest in a loan JPMorgan had made to Televisa's cable television business.

Co-lead counsel for Barnes & Noble, Inc., in defense of state and federal derivative actions concerning the company's stock option practices, and related matters.

Lead counsel for Mexico's Grupo Televisa in its successful Eleventh Circuit appeal of a district court ruling that had dismissed Televisa's tortious interference with contract claims against rival Telemundo Communications, Inc.; a unanimous panel of the Eleventh Circuit ruled that Televisa could pursue both damages and punitive damages under Florida law.

Lead counsel for IBM in its successful defense of class action antitrust claims.

Lead trial and appellate counsel for FEMSA, which obtained a preliminary injunction, upheld by the U.S. Court of Appeals for the Second Circuit, blocking a proposed $300 million transaction by the U.S. joint venture partner of FEMSA's U.S. subsidiary.

As court-appoint co-lead counsel for plaintiffs, won certification of a nationwide class of direct purchasers of flexible polyurethane foam (used in furniture, bedding and carpet underlay, among other things), in federal multidistrict litigation alleged that the major polyurethane foam manufacturers conspired to fix prices.

For Honeywell International, won dismissal of all claims by a disgruntled former distributor that sued in federal court.

2

Secured voluntary dismissal of all claims against client Rabobank in the federal multidistrict litigation alleging a bid-rigging conspiracy in the market for municipal derivatives.

### EDUCATION

Yale Law School
(J.D., 1987)

Yale College
(B.S., *summa cum laude*, *Phi Beta Kappa,* 1984)

### PRIOR ASSOCIATIONS

Boies, Schiller & Flexner:
    Partner, 1997-2005

Associate White House Counsel to the President of the United States, 1993-1996

Wachtell, Lipton, Rosen & Katz:
    Associate, 1988-1993

Law Clerk to the Hon. Peter K. Leisure:
        United States District Judge for the Southern District of New York, 1987-1988

### ADMISSIONS

The State Bar of New York
Supreme Court of the United States
United States Court of Appeals:
    District of Columbia Circuit
    Second Circuit
    Third Circuit
    Fourth Circuit
    Sixth Circuit
    Ninth Circuit
    Tenth Circuit
    Eleventh Circuit
United States District Court:
    Southern District of New York
    Eastern District of New York





| **SAMI H. RASHID** |
| Partner |
| New York |
| Tel: +1 (212) 849-7237 |
| Fax: +1 (212) 849-7100 |
| E-mail: samirashid@quinnemanuel.com |

Sami H. Rashid is a partner in the firm's New York office. Sami has extensive experience representing both corporate plaintiffs and defendants in antitrust and other complex commercial litigation, including class actions. Sami has also represented companies in numerous fraud and breach of contract cases. In addition to his strong commercial litigation expertise, Sami served as a policy and legal officer for the United Nations in Amman, Jordan from 2014-2015.

Sami received his J.D, *cum laude*, from New York University School of Law in 2005.

## REPRESENTATIVE CLIENTS

Fédération Internationale de Football Association (FIFA)
IBM
Olin Corporation
Pulse Network LLC
SUEZ North America

## NOTABLE REPRESENTATIONS

Currently serving as co-lead counsel for investors alleging manipulation of the London Gold Fixing, an international pricing benchmark for gold, by several major banks.

Currently representing debit card network in an antitrust suit against rival network.

Currently representing major private water company in antitrust class action against chemical manufacturers.

Successfully represented Fédération Internationale de Football Association (FIFA) in antitrust and RICO class action in which plaintiffs sought hundreds of millions of dollars in damages. In 2016, Sami and other members of the team obtained dismissal of all claims against FIFA.

Part of trial team that successfully represented Solutia Inc. in an action for specific performance of a $2 billion exit financing facility that had been guaranteed by certain banks, with the case settling favorably on the eve of closing arguments.

## EDUCATION

New York University School of Law
(J.D., *cum laude*, 2005)

University of London (School of Oriental and African Studies)
(M.A., *with distinction*, Chinese Studies, 2002)

Cornell University
(B.A., Government, 1998)

## PRIOR ASSOCIATIONS

Shearman & Sterling LLP:
    Associate, 2005-2007

United Nations Relief and Works Agency:
    Legal/Policy Officer, 2014-2015

## ADMISSIONS

The State Bar of New York
United States District Courts:
    Southern District of New York
    Eastern District of New York





**ERIC WINSTON**
Partner
Los Angeles Office
Tel: +1 (213) 443-3620
Fax: +1 (213) 443-3100
E-mail: ericwinston@quinnemanuel.com

Mr. Winston's practice includes all areas of corporate insolvency and reorganization and insolvency and valuation related litigation. He has represented debtors, creditors' committees, secured lenders, bondholders, distressed debt traders, intellectual property counterparties, trade creditors, and asset acquirers, across numerous industries, out of court and in connection with chapter 9, chapter 11, chapter 15, SIPA, and SEC receivership cases. Mr. Winston also routinely advises hedge funds and other investors in distressed companies with respect to indentures, credit agreements and other capital structure and corporate governance issues.

Recent representative cases include *Core Media (AOG Entertainment), SandRidge Exploration, Circuit City, Relativity Media, Gaming & Leisure Properties/Cannery Casino, Lehman Brothers Holdings, Bernard L. Madoff Investment Securities/Fairfield Sentry, Residential Capital, Town of Mammoth Lakes, Eastman Kodak, Station Casinos, SemGroup, Fontainebleau Las Vegas*, and *SK Foods*.

Mr. Winston frequently speaks at panels and conferences around the country and has guest lectured at Loyola and University of Southern California law schools. He has written several law review articles, co-authored a chapter, is the LEXIS practice advisor on claims trading, and has been a member of the State Bar of California Insolvency Law Committee and the United States District Court for the Central District of California Attorney Discipline Committee.

## REPRESENTATIVE CLIENTS

Exide Technologies, Inc.
Counsel to Official Committee of Unsecured Creditors

Residential Capital, LLC et al.
Counsel to securities litigation claimant and member of Official Committee of Unsecured Creditors

Lehman Brothers Holdings Inc., et al.
Conflicts Counsel to Official Committee of Unsecured Creditors

Fairfield Sentry, Ltd./Bernard L. Madoff Investment Securities
Counsel to fund that acquired the rights associated with Fairfield Sentry's customer claim

Town of Mammoth Lakes
Counsel to municipality's largest general unsecured creditor

Zais Investment Grade VII, Ltd.
Counsel to second tranche noteholder

SemGroup L.P., et al.
Counsel to Official Committee of Unsecured Creditors and Litigation Trust

Stations Casinos Inc., et al.
Conflicts Counsel to Official Committee of Unsecured Creditors

Fontainebleu Las Vegas, et al.
Counsel to significant secured term creditor

SK Foods
Counsel to holders of allowed eight-figure class action claim

Adelphia Communications Corporation, et al
Represented City of Santa Monica

Azabu Buildings Company, Ltd.
Counsel to Official Committee of Unsecured Creditors and Azabu Liquidating Trust

Butler Manufacturing Company
Represented company in out of court restructuring

Controlled Power Corporation of Ohio, et al
Counsel to debtor in possession lender and asset acquirer

Enron Corporation, et al.
Counsel to significant holders of unsecured claims

Eurofresh, Inc., et al.
Counsel to holders of majority of senior unsecured notes

Hawaiian Airlines, Inc.
Represented co-plan proponent and reorganized airline

O'Sullivan Industries
Counsel to Official Committee of Unsecured Creditors

Gaming & Leisure Properties, Inc. v. Cannery Casino Resorts, LLC, et al.
Counsel to plaintiff in Material Adverse Effect litigation in New York state court

SuperGuide v. Gemstar Development
Counsel to defendant in federal district court action

## NOTABLE REPRESENTATIONS

In the *Town of Mammoth Lakes* chapter 9 case in the United States Bankruptcy Court for the Eastern District of California, represented the municipality's single largest general unsecured creditor, Eric successfully negotiated a settlement and dismissal of the chapter 9 case that increased the client's payment stream from less than $5 million to in excess of $46 million.

Eric led Quinn Emanuel's team in successfully blocking confirmation of a plan of reorganization proposed by senior noteholders and negotiated a settlement via a consensual plan of reorganization that resulted in a multi-million dollar recovery to second tranche noteholders in the *Zais Investment* chapter 11 case, the first time a CDO was the subject of a United States bankruptcy proceeding.

In the *Azabu Building* chapter 11 case, which involved nearly $8 billion in asserted unsecured claims and parallel bankruptcy proceedings in the United States and Japan, Eric was one of the lead attorneys representing the Official Committee of Unsecured Creditors and the Azabu Liquidating Trust. Eric worked closely with the debtor's counsel in persuading the Bankruptcy Court to confirm over multiple objections a joint plan of reorganization that resulted in a tax efficient transaction in excess of $410 million. In addition, Eric led the prosecution of several ground-breaking adversary proceedings, all of which were settled favorably before trial. One concerned the assertion against a Japanese bank of claims of equitable subordination and avoidance of fraudulent transfers concerning hundreds of millions of dollars. The defendants agreed to release liens on property valued in excess of $20 million, waiving nearly $200 million in claims, and paying the estate over $10 million cash. Another concerned the estate's efforts to equitably subordination over $1 billion in claims held by alleged insiders of the debtor; this matter was settled with the defendants agreeing to the disallowance of over 90% of their claims.

Eric represented several hedge funds holding billions of dollars in claims in the Enron bankruptcy; he drafted numerous briefs, including objections to plan confirmation and objections to the settlement with one of the "mega claim" defendants. He appeared in court numerous times, deposed several witnesses in connection with plan confirmation, and led the "Schedule S" intercreditor litigation; Eric's clients obtained substantial returns as the result of a favorable ruling that eliminated hundreds of millions of dollars in claims that had been incorrectly scheduled as benefiting from contractual subordination. *In re Enron Corp.*, 370 B.R. 64 (Bankr. S.D.N.Y. 2007).


## EDUCATION

University of California, Los Angeles School of Law
(J.D., 1998)
        *UCLA Journal of Environmental Law & Policy:*
              Managing Editor, 1997-1998
        Extern to the United States Department of Justice, Civil Rights Division

University of California, Berkeley
(B.A., Political Science, *high honors,* 1995)

## AWARDS

Ranked in California Bankruptcy/Restructuring Litigation, *Chambers USA* 2013-2015

Recommended Lawyer by *The Legal 500* (2013)

Twice named by Turnarounds & Workouts as among the "Outstanding Young Restructuring Lawyers" (nationally, from all bankruptcy practitioners under the age of 40, in 2005 and 2012)

Recognized as a "Rising Star" by *Thomson Reuters Super Lawyers* from 2004-2013

Recognized by *Thomson Reuters Super Lawyers* as a "Super Lawyer for Bankruptcy" in 2014-2016

## PUBLICATIONS AND LECTURES

"A Close Look At Special Cases Of Bankruptcy Claims Trade ," *Law360* (January 29, 2014)

"Disclosure And Proof-Of-Claim Issues For Claim Buyers," *Law360* (January 22, 2014)

"Pointers In Bankruptcy Claims Trading," *Law360* (January 15, 2014)

"Understanding The Reasons Traders Buy Bankruptcy Claims," *Law360* (January 8, 2014)

Co-author, Chapter 16 "Value-Oriented Discovery," *Contested Valuation in Corporate Bankruptcy* (2011)

Co-author, "Sizing Up The 'Cap' - Commercial Lease Rejection Claims In Bankruptcy," 27 *Cal. Bankr. J.* 209 (2004)

Co-author, "State Defiance of Bankruptcy Law," 52 *Vand. L. Rev.* 1527 (2000)

Guest Lecturer, Bankruptcy and Corporate Reorganization, Loyola Law School

Guest Lecturer, Bankruptcy and Corporate Reorganization, University of Southern California, Gould School of Law

Panelist, numerous corporate and insolvency organizations

## PRIOR ASSOCIATIONS

Stutman Treister & Glatt:
    Shareholder, 2004-2009
    Associate, 1999-2004

Law Clerk to the Hon. William J. Holloway, Jr.:
    United States Court of Appeals for the Tenth Circuit, 1998-1999


## PROFESSIONAL ACTIVITIES

Member, American Bar Association

Co-vice Chair of the Insolvency Law Committee, The State Bar of California (2008 – 2009)

Member, Los Angeles County Bar Association

Member, Association of Insolvency and Restructuring Advisors (AIRA)

Member, Financial Lawyers Conference

Member, International Association of Restructuring, Insolvency & Bankruptcy Professionals


## ADMISSIONS

The State Bar of California
United States Court of Appeals:
    Second Circuit
    Third Circuit
    Fifth Circuit
    Ninth Circuit
    Tenth Circuit
United States District Court:
    Central District of California
    Eastern District of California
    Northern District of California
    Southern District of California

# EXHIBIT H

James C. Tecce
William Pugh
Jordan Harap
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Special Litigation Counsel to William A. Brandt Jr.,*
*Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Case No. 16-11895 (JLG) |
| | : | |
| CHINA FISHERY GROUP LIMITED (CAYMAN), et al., | : | Chapter 11 (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |

---

| | | |
|---|---|---|
| In re: | : | Case No. 16-11914 (JLG) |
| | : | |
| CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE), | : | Chapter 11 |
| | : | |
| Debtor. | : | |

---

**SUMMARY OF FIFTH CONSOLIDATED MONTHLY APPLICATION OF QUINN
EMANUEL URQUHART & SULLIVAN, LLP, FOR ALLOWANCE
OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES INCURRED DURING THE
PERIOD OF JANUARY 1, 2018 THROUGH FEBRUARY 28, 2018**

---

[1] The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), and Super Investment Limited (Cayman); Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

| | |
|---|---|
| Name of Applicant: | Quinn Emanuel Urquhart & Sullivan, LLP |
| Name of Client: | William A. Brandt, Jr., as Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore) |
| Time Period Covered by Application: | January 1, 2018 through February 28, 2018 |
| Total Compensation Sought in This Application: | $234,560.80 (80% of $293,201.00) |
| Total Expenses Sought in This Application | $1,345.79 |
| Petition Date: | June 30, 2016 |
| Retention Date: | March 8, 2017 (Presentment Date), *nunc pro tunc* to December 23, 2016 |
| Date of Order Approving Employment: | March 16, 2017 |
| Total Compensation Approved by Interim Order to Date: | $916,363.50 |
| Total Expenses Approved by Interim Order to Date: | $27,363.50 |
| Total Allowed Compensation Paid to Date: | $733,090.80 (80% of $916,363.50) |
| Total Allowed Expenses Paid to Date: | $27,363.50 |
| Blended Rate in This Application for All Attorneys: | $901.10 |
| Blended Rate in This Application for All Paraprofessionals: | $350.00 |
| Blended Rate in This Application for All Timekeepers: | $898.56 |
| Compensation Sought in This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0.00 |
| Expenses Sought in This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $0.00 |
| Number of Professionals Included in this Application: | 6 |
| If Applicable, Number of Professionals in This Application Not Included in Staffing Plan Approved by Client: | N/A |
| If Applicable, Difference Between Fees & Expenses Budgeted and Compensation Sought for This Application Period: | N/A |
| Number of Professionals Billing Fewer Than 15 Hours to the Case During This Period: | 3 |
| Are Any Rates Higher Than Those Approved or Disclosed at Retention? If Yes, Calculate the Amount of Compensation Attributable to Any Rate Increase: | Yes.[2] The amount of compensation attributable to the rate increase is $7,156.50. |

This is a(n) ☒monthly☐interim☐final application.

---

[2]     As disclosed in the engagement letter among the Trustee and Quinn Emanuel, dated December 23, 2016 (the "Engagement Letter"), "associate rates are based on years out of law school, so annually on September 1, their rates move up to the next higher class rate on [Quinn Emanuel's] rate schedule. These 'class graduation' adjustments are not rate increases." *Application Of William A. Brandt, Jr., Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore), For Entry of an Order, Pursuant To §§ 327(a), 328(a) and 330, Authorizing Retention And Employment Of Quinn Emanuel Urquhart & Sullivan, LLP As Special Litigation Counsel Effective Nunc Pro Tunc To December 23, 2016* at Exhibit D [ECF No. 303 (Case No. 16-11895)]. These "class graduation" adjustments took effect on September 1, 2017.

1

Date of this Application: August 15, 2018

Additional summaries and disclosures follow and are incorporated into the Cover Sheet for this Application.

### Summary Of Professionals Included In This Consolidated Fee Application
### (January 1, 2018 through February 28, 2018)

| Attorneys | Init. | Title | Department | Year Admitted | Hours | Rate | Amount | Total Hours | Total Amount |
|---|---|---|---|---|---|---|---|---|---|
| James C. Tecce | JCT | Partner | Bankruptcy | 1998 | 149.7 | $1,055.00 | $157,933.50 | 149.7 | $ 157,933.50 |
| John Rhie | JR | Partner | Litigation | 2003* | 6.7 | $1,035.00 | $ 6,934.50 | 6.7 | $ 6,934.50 |
| Eric M. Kay | EMK | Of Counsel | Bankruptcy | 1996 | 3 | $ 990.00 | $ 2,970.00 | 3 | $ 2,970.00 |
| William Pugh | WP3 | Associate | Bankruptcy | 2014 | 125.1 | $ 790.00 | $ 98,829.00 | 125.1 | $ 98,829.00 |
| Jordan Harap | JH1 | Associate | Bankruptcy | 2016 | 37.2 | $ 670.00 | $ 24,924.00 | 37.2 | $ 24,924.00 |
| Christopher Clark | CC4 | Attorney | Litigation | 2007 | 3.1 | $ 350.00 | $ 1,085.00 | 3.1 | $ 1,085.00 |
| Patricia Smith | PS3 | Managing Clerk | Support | N/A | 1 | $ 365.00 | $ 365.00 | 1 | $ 365.00 |
| Edward Juhn | EJ | Paralegal | Support | N/A | 0.5 | $ 320.00 | $ 160.00 | 0.5 | $ 160.00 |
| | | | | | | | | 326.3 | $ 293,201.00 |

* A solicitor in England and Wales

### Comparable And Customary Compensation Disclosures
### (January 1, 2018 through February 28, 2018)

| Category of Timekeeper | Total Hours | Total Fees | Blended Hourly Rate Billed This Fee Application |
|---|---|---|---|
| Partner | 156.4 | $164,868.00 | $1,054.14 |
| Of Counsel | 3 | $2,970.00 | $990.00 |
| Associate | 162.3 | $123,753.00 | $762.50 |
| Attorney | 3.1 | $1,085.00 | $350.00 |
| Paraprofessionals / Staff | 1.5 | $525.00 | $350.00 |
| **All Timekeepers Aggregated** | **326.3** | **$293,201.00** | **$898.56** |

### Summary Of Compensation Requested By Project Category
### (January 1, 2018 through February 28, 2018)

| Task Code | | Hours | Amount |
|---|---|---|---|
| CF01 | Case Administration | 1.9 | $1,076.00 |
| CF02 | Litigation | 306.7 | $278,902.50 |
| CF03 | Fee / Employment Applications | 17.2 | $12,887.50 |
| CF14 | Asset Analysis and Recovery | 0.5 | $335.00 |
| | Total | 326.3 | $293,201.00 |

2

**Summary Of Expense Reimbursement Requested By Category**
**(January 1, 2018 through February 28, 2018)**

| Description | | Amount |
|---|---|---|
| Online Research | | $751.96 |
| Document Reproduction | 0.10 | $339.70 |
| Telephone | | $4.49 |
| Color Document Reproduction | 0.35 | $103.95 |
| Word Processing | | $57.00 |
| Express Mail | | $75.23 |
| Postage | | $4.06 |
| PACER Services | | $9.40 |
| | Total Expenses | $1,345.79 |

3

James C. Tecce
William Pugh
Jordan Harap
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Special Litigation Counsel to William A. Brandt Jr.,*
*Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Case No. 16-11895 (JLG) |
| | : | |
| CHINA FISHERY GROUP LIMITED | : | Chapter 11 (Jointly Administered) |
| (CAYMAN), et al., | : | |
| | : | |
| | : | |
| Debtors.[1] | : | |

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Case No. 16-11914 (JLG) |
| | : | |
| CFG PERU INVESTMENTS PTE. LTD. | : | Chapter 11 |
| (SINGAPORE), | : | |
| | : | |
| Debtor. | : | |

------------------------------------------------------------ x

**FIFTH CONSOLIDATED MONTHLY APPLICATION OF QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP, FOR ALLOWANCE OF COMPENSATION FOR**
**SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES INCURRED**
**DURING THE PERIOD OF JANUARY 1, 2018 THROUGH FEBRUARY 28, 2018**

---

[1] The Debtors are China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), and Super Investment Limited (Cayman); Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd., Golden Target Pacific Limited, Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited, Admired Agents Limited, Chiksano Management Limited, Clamford Holding Limited, Excel Concept Limited, Gain Star Management Limited, Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited, Loyal Mark Holdings Limited, Metro Island International Limited, Mission Excel International Limited, Natprop Investments Limited, Pioneer Logistics Limited, Sea Capital International Limited, Shine Bright Management Limited, Superb Choice International Limited, and Toyama Holdings Limited (BVI).

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), special litigation counsel to William A. Brandt, Jr., chapter 11 trustee (the "Trustee") for CFG Peru Investments Pte. Ltd. (Singapore) ("CFG Peru"), makes its fifth monthly application (the "Application") for allowance of compensation of $234,560.80 (80% of $293,201.00) and reimbursement of expenses of $1,345.79 for the period from January 1, 2018 through February 28, 2018 (the "Compensation Period") in accordance with the *Order Pursuant To Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals* [ECF 199 (Case No. 16-11895)] (the "Interim Compensation Order"). In support of this Application, Quinn Emanuel respectfully represents as follows:

1.  Quinn Emanuel attorneys and paraprofessionals expended a total of 326.3 hours during the Compensation Period for which compensation is requested.

2.  During the Compensation Period, Quinn Emanuel did not receive any payments or promises of payment from any other source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between Quinn Emanuel and any other person, other than partners of the firm, for sharing of compensation to be received for services rendered in these cases.

3.  The fees charged by Quinn Emanuel in these cases are billed in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period. Such fees are reasonable based on the customary billing rates charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

4.  Attached hereto are (i) a schedule setting forth all Quinn Emanuel professionals and paraprofessionals who have performed services in these Chapter 11 Cases

1

during the Compensation Period, the capacities in which each individual is employed by Quinn Emanuel, the hourly billing rate charged by Quinn Emanuel for the services performed by such individual, the aggregate number of hours expended in these cases during the Compensation Period and fees billed therefor, and the year in which each professional was first licensed to practice law; (ii) a summary of services by billing category for services rendered by Quinn Emanuel during the Compensation Period; and (iii) a schedule setting forth the actual and necessary disbursements that Quinn Emanuel incurred during the Compensation Period in connection with the performance of professional services for the Trustee and for which it seeks reimbursement.

5. Quinn Emanuel's itemized time records for professionals and paraprofessionals performing services for the Trustee during the Compensation Period and Quinn Emanuel's itemized records detailing expenses incurred on behalf of the Trustee during the Compensation Period are set forth in Exhibit A and Exhibit B, respectively. All itemized expenses comply with the requirements set forth in Local Rule 2016-1.

6. This Application complies with sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Interim Compensation Order, the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013 (the "Guidelines"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

**BACKGROUND**

7. On June 30, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors' cases are being jointly administered.

8. To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

9. On August 9, 2016, Coöperatieve Rabobank U.A., Standard Chartered Bank (Hong Kong) Limited, and DBS Bank (Hong Kong), Limited filed the *Club Lender Parties' Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)(2)* [ECF No. 57 (Case No. 16-11895)] seeking the appointment of a Chapter 11 trustee.  The Court granted the motion on October 28, 2016 [ECF No. 203 (Case No. 16-11895)].

10. On November 10, 2016, the U.S. Trustee sought approval of William A. Brandt, Jr. as Chapter 11 trustee of CFG Peru [ECF No. 218 (Case No. 16-11895)].  On that same date, the Court entered an Order appointing William A. Brandt, Jr. as Chapter 11 trustee for CFG Peru [ECF No. 219 (Case No. 16-11895)].

11. On January 9, 2016, the Trustee filed the *Application of William A. Brandt Jr., Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore), for Entry of an Order, Pursuant to 11 U.S.C. §§ 327(a), 328, 330, Authorizing Retention and Employment of Quinn Emanuel Urquhart & Sullivan, LLP, as Special Litigation Counsel Effective* Nunc Pro Tunc *To December 23, 2016* [ECF No. 303 (Case No. 16-11895)] (the "Retention Application").  On March 8, 2017, the Court held a hearing to consider the Retention Application and the limited objection [ECF No. 333 (Case No. 16-11895)] thereto filed by The Hongkong and Shanghai

3

Banking Corporation Limited ("HSBC"). On March 16, 2017, the Retention Application was granted nunc pro tunc to December 23, 2016 [(ECF No. 388 (Case No. 16-11895)].

12.     After retaining Quinn Emanuel, the Trustee instructed Quinn Emanuel to handle certain additional matters concerning the purchase and sale of claims arising under the Club Facility [2] (the "Club Facility Claims") and specifically the actual or contemplated acquisition of Club Facility Claims by purchasers whose intent, with respect to collection efforts on those debt positions in Peru and against the Peruvian operating companies owned by CFG Peru, is yet unclear, or is to otherwise interfere with the Trustee's restructuring efforts. Further, in November 2017, the Trustee instructed Quinn Emanuel to handle matters relating to certain foreign proceedings which may impact the sale process that is currently underway.

13.     In light of the scope of the Trustee's engagement of Quinn Emanuel solely as "special litigation counsel" and not as general bankruptcy counsel, and the difficulty in projecting the anticipated services to be provided by Quinn Emanuel, a budget and staffing plan has not yet been developed.

## SUMMARY OF SERVICES

14.     The professional services performed by Quinn Emanuel were necessary and appropriate to the representation of the Trustee during these Chapter 11 Cases thus far. These services were in the best interests of the Trustee. The compensation requested is commensurate with the complexity and nature of the issues and tasks involved.

---

[2]     See Facility Agreement dated 20 March 2014 among CF Investments S.A.C., CFIL, and Corporacion Pesquera Inca S.A.C. as borrowers; Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. (a/k/a Rabobank International) Hong Kong Branch, BDS Bank (Hong Kong Limited), The Hongkong and Shanghai Banking Corporation Limited, Standard Chartered Bank (Hong Kong Limited), and China CITIC Bank International Limited as lenders; and Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., Hong Kong Branch as agent in respect of US$650,000,000 term and revolving credit facilities.

15.     The following is a summary of the activities performed by Quinn Emanuel professionals and paraprofessionals during the Compensation Period, organized by project billing category.[3]

**CF02: Litigation—306.70 Hours—$278,902.50**

16.     Quinn Emanuel was retained as special litigation counsel to review, among other things, the relationship between the Debtors and HSBC, and to assist the Trustee in pursuing discovery.  Quinn Emanuel billed work in connection with this matter under Matter No. 07428-00001.

17.     During the Compensation Period, Quinn Emanuel attorneys developed strategies relating to proceedings before the High Court of the Hong Kong Special Administrative Region Court of First Instance for leave to take copies of and to use the decisions of Deputy High Court Judge Kenneth Kwok, SC made in HCCW 367/2015 and HCCW 368/2015 (collectively, the "HK Proceedings") on or around 5 January 2016, and the reasons for his decision as recorded in a judgment handed down dated 17 March 2016, discharging three joint provisional liquidators previously appointed over China Fishery Group Limited and China Fishery International Limited.  Quinn Emanuel attorneys also communicated and coordinated with the Trustee's Hong Kong counsel and conducted related factual and legal research.  Further, Quinn Emanuel attorneys reviewed a revised documents related to the HK Proceedings including the *First Affidavit of William A. Brandt, Jr.*

18.     On December 29, 2018, the United States District Court for the Southern District of New York issued an order and opinion [Dkt. 9 (Case No. 17-06672)] (the "District

---

[3]     The summary set forth below is qualified in its entirety by reference to the time and services detail attached hereto as Exhibit A.

Court Order") denying the *Motion in the Alternative of the Hongkong and Shanghai Banking Corporation Limited for Leave to Appeal the Bankruptcy Court's July 19, 2017 Order Authorizing Rule 2004 Discovery* [Dkt. 3 (Case No. 17-06672)]. During the Compensation Period, Quinn Emanuel attorneys reviewed the District Court Decision and considered its impact on the Trustee's proposed litigation strategy in light of the decision by HSBC to appeal (the "Appeal") the District Court Order to the United States Court of Appeals for the Second Circuit.

19. During the Compensation Period, Quinn Emanuel attorneys researched bases for dismissing the Appeal and drafted and filed the *Motion, Pursuant to Fed. R. App. P. 2 and 27, of Appellee William A. Brandt, Jr., Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore) for Summary Dismissal of Appeal for Lack of Jurisdiction* [Dkt. 12 (Case No. 18-0005)]. On January 22, 2018, HSBC filed the *Appellant's Opposition to Appellee's Motion for Summary Dismissal of Appeal* [Dkt. 26 (Case No. 18-0005)] (the "MTD Opposition"). During the Compensation Period, Quinn Emanuel attorneys reviewed the MTD Opposition and conducted additional research in connection with drafting and filing the *Reply in Further Support of Trustee's Motion, Pursuant to Fed. R. App. P. 2 and 27, for Summary Dismissal of Appeal for Lack of Jurisdiction* [Dkt. 30 (Case No. 18-0005)].

20. Further, during the Compensation Period, Quinn Emanuel attorneys advised the Trustee on other currently pending foreign proceedings which may impact the sale process that is currently underway**.** Quinn Emanuel attorneys conducted related research and developed a proposed strategy regarding these foreign proceedings. Further, Quinn Emanuel attorneys drafted and filed the *Motion of William A. Brandt, Jr., Chapter 11 Trustee for CFG Peru Investments PTE. Ltd. (Singapore), Pursuant to 11 U.S.C. §§ 105(a), 1505, 1525(b), 1526(b), and 1572(2), for Entry of an Order Directing FTI Consulting and Joint and Several Liquidators to Provide Trustee with Notice of Applications Submitted to BVI Court* [Dkt. 994

6

(Case No. 16-11895)]. Work performed in connection with those efforts is billed to the separate sub-matter number 07428-00001B.

**CF03: Fee/Employment Applications—17.20 Hours--$12,887.50**

21. During the Compensation Period, Quinn Emanuel attorneys prepared and filed the (i) *Fourth Consolidated Monthly Application of Quinn Emanuel Urquhart & Sullivan, LLP, for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During the Period of October 1, 2017 Through December 31, 2017* [Dkt. No. 984 (case No. 16-11895)], and (ii) *Second Interim Application of Quinn Emanuel Urquhart & Sullivan, LLP, Special Litigation Counsel to William A. Brandt, Jr., Chapter 11 Trustee for CFG Peru Investments PTE. Ltd. (Singapore), for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred During the Period of July 1, 2017 Through October 31, 2017* [Dkt. 985 (Case No. 16-11895)].

22. During the Compensation Period, as part of Quinn Emanuel's ongoing disclosures to the court, Quinn Emanuel attorneys prepared and filed the (i) *Declaration of James C. Tecce Regarding Annual Rate Increase of Quinn Emanuel Urquhart & Sullivan LLP* [Dkt. No. 974 (Case No. 16-11895)] (the "Rate Declaration").

**EXPENSES INCURRED BY QUINN EMANUEL**

23. Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed in a chapter 11 case. Accordingly, Quinn Emanuel seeks reimbursement for expenses incurred in rendering services to the Trustee during the Compensation Period in the amount of $1,345.79. A schedule of the expenses is attached hereto as Exhibit B.

24. Quinn Emanuel maintains the following policies with respect to expenses:

(a) No amortization of the cost of any investment, equipment or capital outlay is included in the expenses. In addition, for those items or services that Quinn Emanuel purchased or contracted from a third party (such as outside copy services), Quinn Emanuel seeks reimbursement only for the exact amount billed to Quinn Emanuel by the third party vendor and paid by Quinn Emanuel to the third party vendor.

(b) Standard photocopying by Quinn Emanuel was charged at 10 cents per page.

(c) Outside photocopying, color or other specialized copies, outgoing facsimile, long distance telephone charges, computer-accessed research, and reimbursement for travel were billed at actual cost.

## STATEMENT OF THE APPLICANT

25. Pursuant to Section C5 of the Guidelines, Quinn Emanuel makes the following statements:

(a) Quinn Emanuel has agreed to follow the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York (the "S.D.N.Y. Guidelines"). Quinn Emanuel has reduced its standard photocopy charge from $0.24 per page to the lesser of $0.10 per page or cost. Where possible, all other expenses (e.g., legal research charges, outside photocopying, long distance telephone charges, reimbursement for travel, multi-party conference calls, color or other specialized copies) will be billed at actual cost. Quinn Emanuel also will comply with the Appendix B Guidelines with respect to billing for non-working travel time.

Other than as set forth above, the hourly rates and corresponding rate structure Quinn Emanuel will use in its representation of the Trustee in the Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that Quinn Emanuel uses in other restructuring matters, as well as similar complex matters whether in court or otherwise, regardless of whether a fee application is required, and regardless of the location of the chapter 11 case.

(b) None of the hourly rates of Quinn Emanuel's professionals and paraprofessionals included in this Application has been varied based on the geographic location of these cases.

(c) This Application does not include any time or fees related to reviewing, revising or preparing invoices.

(d)  As set forth in the Rate Declaration, "[e]ffective January 1, 2018, Quinn Emanuel has implemented firm-wide rate increases." Rate Declaration at 2 (¶ 3). The Trustee consented to Quinn Emanuel's annual and other periodic rate increases so long as Quinn Emanuel charges its regular hourly rates in effect at the time. Retention Application at 7–8 (¶ 27).[4]

## CONCLUSION

26.    The fees and expenses requested herein by Quinn Emanuel are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

27.    No agreement or understanding exists between Quinn Emanuel or any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Quinn Emanuel.

28.    All of the services for which compensation is requested hereunder were rendered at the request of and solely on behalf of the Trustee, and not on behalf of any other entity. In that regard, and incorporated herein by reference, the Certification of James C. Tecce in accordance with the Guidelines is attached hereto as Exhibit C.

## NOTICE

29.    Quinn Emanuel shall serve this Application in accordance with the Interim Compensation Order and the Local Rules. Accordingly, notice of this Application shall be given by email or hand or overnight delivery on the following parties: (i) the Chapter 11 Trustee; (ii) the Debtors, Attn: Jessie Ng; team@pacificandes.com; (iii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Atn: Matthew S. Barr, Esq., Marcia Goldstein, Esq.,

---

[4]    As set forth in the Engagement Letter, "associate rates are based on years out of law school, so annually on September 1, their rates move up to the next higher class rate on [Quinn Emanuel's] rate schedule. These 'class graduation' adjustments are not rate increases." Engagement Letter at 3.

and Gabriel A. Morgan, Esq.); (iv) Klesdadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036 (Attn: Tracy L. Klestadt; tklesdadt@klestadt.com); (v) the U.S. Trustee, 201 Varick Street, Suite 10006, New York, NY 10014 (Richard C. Morrissey; richard.morrissey@usdoj.gov); (vi) U.S. Counsel for Standard Chartered Bank (Hong Kong) Limited, Cooperatieve Rabobank, U.A., DBS Bank (Hong Kong) Limited; (vii) U.S. counsel to the ad hoc noteholders Committee; (viii) U.S. counsel to Bank of America N.A.; (ix) U.S. counsel for Malayan Banking Berhad, Hong Kong Branch; (x) U.S. counsel for Fredrich von Kaltenborn-Stachue; (xi) U.S. counsel for TMF Trustee Limited; (xii) U.S. counsel for CFG Investments S.A.C., Corporacion Pesquera Inca S.A.C. and Sustainable Fishing Resources S.A.C.; and (xiii) counsel to any official committee appointed in these chapter 11 cases (each a "Notice Party" and collectively, the "Notice Parties").

30.     Any objections to this Application must be served upon the Notice Parties, and by email or hand or overnight delivery upon: Quinn Emanuel Urquhart & Sullivan LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010 (Attn:  James Tecce; William Pugh; Jordan Harap) to be received no later than August 30, 2018 (prevailing Eastern Time) (the "Objection Deadline"), setting forth the nature of the objection and the specific amount of fees or expenses at issue.

31.     If no objections to the Application are received by the Objection Deadline, Quinn Emanuel is authorized to receive 80 percent of the fees and 100 percent of the expenses requested in this Application pursuant to the terms of the Interim Compensation Order.

## NO PRIOR REQUEST

32.     No prior request for the relief sought in this Application has been made to this or any other court.

**WHEREFORE**, Quinn Emanuel respectfully requests that, pursuant to the Interim Compensation Order, Quinn Emanuel is (i) allowed on an interim basis compensation of $234,560.80 (80% of $293,201.00) for services rendered during the Compensation Period; (ii) allowed on an interim basis reimbursement of expenses billed during the Compensation Period of $1,345.79; (iii) authorized to be paid its allowed fees and expenses for the Compensation Period; and (iv) granted such other and further relief as the Court may deem proper.

Dated: August 15, 2018           QUINN EMANUEL URQUHART
      New York, New York       & SULLIVAN, LLP

By:   /s/ *James C. Tecce*
      James C. Tecce
      William Pugh
      Jordan Harap
      51 Madison Avenue, 22nd Floor
      New York, NY 10010
      (212) 849-7199

*Special Litigation Counsel to William A. Brandt Jr., Chapter 11 Trustee for CFG Peru Investments Pte. Ltd. (Singapore)*

11

**CERTIFICATE OF SERVICE**

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action. My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064. On **March 1, 2019**, I served within: **DECLARATION OF ROBERT A. JACOBS IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL** on the interested parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒    **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**, at Los Angeles, California.

## SERVICE LIST

| | |
|---|---|
| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |
| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

1   MANATT, PHELPS & PHILLIPS, LLP
2   ROBERT A. JACOBS (State Bar No. 160350)
    E-mail: rjacobs@manatt.com
3   MAURA K. GIERL (State Bar No. 287430)
    E-mail: mgierl@manatt.com
4   MOLLY K. WYLER (State Bar No. 299881)
    11355 West Olympic Boulevard
5   Los Angeles, California 90064-1614
    Telephone:   (310) 312-4000
6   Facsimile:   (310) 312-4224

7
    *Attorneys for Defendants*
8   EMI APRIL MUSIC INC. and
    EMI BLACKWOOD MUSIC INC.
9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13   PLEASE GIMME MY PUBLISHING,        No. 2:19-cv-_____
     INC., a New York corporation; WEST
14   BRANDS, LLC, a Delaware limited
     liability corporation; KANYE WEST, an   **DECLARATION OF THOMAS**
15   individual; and YE WORLD            **FOLEY IN SUPPORT OF**
     PUBLISHING, INC., a Delaware        **DEFENDANTS' NOTICE OF**
16   corporation, also doing business as YE   **REMOVAL**
     WORLD MUSIC,
17
18                  Plaintiffs,
19          v.
20
     EMI APRIL MUSIC INC., a Connecticut
21   corporation; EMI BLACKWOOD
     MUSIC INC., a Connecticut corporation;
22   and DOES 1-10,
23                  Defendants.
24

25

26

27

28

## DECLARATION OF THOMAS FOLEY

1    I, Thomas Foley, hereby declare as follows:

2    1.    I am the Vice President, Royalty Administration & Analysis, North

3    America for Sony/ATV Music Publishing LLC, which has been the administrator

4    of Defendants EMI April Music Inc. and EMI Blackwood Music Inc. (collectively,

5    "Defendants") since July 2012.  The following facts are within my personal

6    knowledge, and if called upon as a witness, I would and could testify competently

7    thereto.

8    2.    Since January 25, 2015, four years before Plaintiffs filed this lawsuit,

9    Defendants have received and kept for their own account more than $75,000

10    generated from exploitations of musical compositions that Kanye West wrote or co-

11    wrote, and delivered to Defendants, on and after October 1, 2010 (the

12    "Compositions") pursuant to the parties' agreement dated as of October 1, 2003 and

13    subsequent agreements modifying this agreement (collectively, the "Agreements").

14    3.    The value of the copyright interests and other rights that Defendants

15    hold in the Compositions pursuant to the Agreements is more than $75,000.

16    I declare under penalty of perjury under the laws of the United States of

17    America that the foregoing is true and correct.

18    Executed on February 25, 2019 in Nashville, Tennessee.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action.  My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064.  On **March 1, 2019**, I served within: **DECLARATION OF THOMAS FOLEY IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL** on the interested parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒      **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**, at Los Angeles, California.

Erica Nash

PS &

322697535.1

CERTIFICATE OF SERVICE

1

**SERVICE LIST**

| | |
|---|---|
| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |
| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

PLEASE GIMME MY PUBLISHING, INC.; WEST BRANDS, LLC; KANYE WEST; and YE WORLD PUBLISHING, INC.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC.

**(b) County of Residence of First Listed Plaintiff** Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** New York, New York
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel.: (213) 443-3000

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064
Tel.: (310) 312-4000

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multidistrict Litigation - Transfer
☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND**: ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23**: ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT**: $ > $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Court is vested with diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000. Plaintiff's unjust enrichment and constructive trust claims are preempted under 17 U.S.C. § 101 et seq. Plaintiff also states a claim for declaratory relief.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 835 Patent - Abbreviated New Drug Application |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | **PERSONAL PROPERTY** | **Other:** | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | ☐ 540 Mandamus/Other | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | **BANKRUPTCY** | **FORFEITURE/PENALTY** | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 440 Other Civil Rights | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 442 Employment | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 445 American with Disabilities-Employment | ☐ 790 Other Labor Litigation | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 791 Employee Ret. Inc. Security Act | |
| | | | ☐ 448 Education | | |

**FOR OFFICE USE ONLY:**   Case Number:

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**VIII. VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes ☐ No | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) *check one of the boxes to the right* → | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.** Is there at least one answer in Column A? | **D.2.** Is there at least one answer in Column B? |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. → | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ↓ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**:  Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**:  Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐  A.  Arise from the same or a closely related transaction, happening, or event;

☐  B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C.  For other reasons would entail substantial duplication of labor if heard by different judges.

Note:  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐  A.  Arise from the same or a closely related transaction, happening, or event;

☐  B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C.  Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**   /s/ Robert A. Jacobs                    DATE:  March 1, 2019

**Notice to Counsel/Parties:**  The submission of this Civil Cover Sheet is required by Local Rule 3-1.  This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended.  Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

**CERTIFICATE OF SERVICE**

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action. My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064. On **March 1, 2019**, I served within: **NOTICE TO ADVERSE PARTIES** on the interested parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒      **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**, at Los Angeles, California.

## SERVICE LIST

| | |
|---|---|
| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |
| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

PS &

322697535.1

CERTIFICATE OF SERVICE

1   MANATT, PHELPS & PHILLIPS, LLP
2   ROBERT A. JACOBS (State Bar No. 160350)
    E-mail: rjacobs@manatt.com
3   MAURA K. GIERL (State Bar No. 287430)
    E-mail: mgierl@manatt.com
4   MOLLY K. WYLER (State Bar No. 299881)
    11355 West Olympic Boulevard
5   Los Angeles, California 90064-1614
    Telephone:  (310) 312-4000
6   Facsimile:   (310) 312-4224

7
    *Attorneys for Defendants*
8   EMI APRIL MUSIC INC. and
    EMI BLACKWOOD MUSIC INC.
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13   PLEASE GIMME MY PUBLISHING,          No. 2:19-cv-_____
     INC., a New York corporation; WEST
14   BRANDS, LLC, a Delaware limited
     liability corporation; KANYE WEST, an  **DEFENDANTS EMI APRIL MUSIC**
15   individual; and YE WORLD            **INC.'S AND EMI BLACKWOOD**
     PUBLISHING, INC., a Delaware        **MUSIC INC.'S CORPORATE**
16   corporation, also doing business as YE **DISCLOSURE STATEMENT AND**
     WORLD MUSIC,                        **CERTIFICATE OF INTERESTED**
17                                       **PARTIES**

18              Plaintiffs,

19        v.

20
     EMI APRIL MUSIC INC., a Connecticut
21   corporation; EMI BLACKWOOD
     MUSIC INC., a Connecticut corporation;
22   and DOES 1-10,

23              Defendants.

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Rule 7.1-1

2    of the Local Rules of the Central District of California, the undersigned, counsel of

3    record for Defendants EMI April Music Inc. ("EMI April") and EMI Blackwood

4    Music Inc. ("EMI Blackwood") (collectively, "Defendants"), certifies that the

5    following listed parties may have a pecuniary interest in the outcome of this case.

6    These representations are made to enable the Court to evaluate possible

7    disqualification or recusal:

8        1.    Plaintiff Kanye West;

9        2.    Plaintiff West Brands, LLC;[1]

10       3.    Defendant EMI April; and

11       4.    Defendant EMI Blackwood.

12   EMI April is a wholly-owned, indirect subsidiary of Sony Corporation, a

13   publicly traded company organized under the laws of Japan.  No publicly traded

14   company other than Sony Corporation owns more than 10% of the stock of EMI

15   April.

16   EMI Blackwood is a wholly-owned, indirect subsidiary of Sony Corporation,

17   a publicly traded company organized under the laws of Japan.  No publicly traded

18   company other than Sony Corporation owns more than 10% of the stock of EMI

19   Blackwood.

20   Dated:  March 1, 2019                MANATT, PHELPS & PHILLIPS, LLP

21                                        By: /s/ Robert A. Jacobs

22                                            Robert A. Jacobs
                                             Maura K. Gierl
23                                           Molly K. Wyler

24                                           *Attorneys for Defendants*
                                             EMI APRIL MUSIC INC. and EMI
25                                           BLACKWOOD MUSIC INC.

26

27   _____
     [1] Although Please Gimme My Publishing, Inc. and Ye World Publishing, Inc. also
28   are named plaintiffs, they are no longer extant companies and thus have no
     pecuniary interest in the outcome of this case.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

DEFENDANTS' CORPORATE
DISCLOSURE STATEMENT AND
CERTIFICATE OF INTERESTED PARTIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action.  My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064.  On **March 1, 2019**, I served within:  **DEFENDANTS EMI APRIL MUSIC INC.'S AND EMI BLACKWOOD MUSIC INC.'S CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PARTIES** on the interested parties in this action as follows:

## PLEASE SEE ATTACHED SERVICE LIST

☒   **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**. at Los Angeles, California.

_____
Erica Nash

1

**SERVICE LIST**

2
3
4
5
6
7
8

| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

9
10
11
12
13

| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PS &

CERTIFICATE OF SERVICE

1  MANATT, PHELPS & PHILLIPS, LLP
2  ROBERT A. JACOBS (State Bar No. 160350)
   E-mail: rjacobs@manatt.com
3  MAURA K. GIERL (State Bar No. 287430)
   E-mail: mgierl@manatt.com
4  MOLLY K. WYLER (State Bar No. 299881)
   11355 West Olympic Boulevard
5  Los Angeles, California 90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:   (310) 312-4224

7  *Attorneys for Defendants*
8  EMI APRIL MUSIC INC. and
   EMI BLACKWOOD MUSIC INC.
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  PLEASE GIMME MY PUBLISHING,          No. 2:19-cv-_____
    INC., a New York corporation; WEST
14  BRANDS, LLC, a Delaware limited      **NOTICE TO ADVERSE PARTIES**
    liability corporation; KANYE WEST, an
15  individual; and YE WORLD
    PUBLISHING, INC., a Delaware
16  corporation, also doing business as YE
    WORLD MUSIC,
17
18              Plaintiffs,
19         v.
20
    EMI APRIL MUSIC INC., a Connecticut
21  corporation; EMI BLACKWOOD
    MUSIC INC., a Connecticut corporation;
22  and DOES 1-10,
23              Defendants.
24
25
26
27
28

                                          NOTICE TO ADVERSE PARTIES

1       **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:  PLEASE**

2 **TAKE NOTICE** that Defendants EMI April Music Inc. and EMI Blackwood

3 Music Inc. have filed in the United States District Court for the Central District of

4 California their Notice of Removal of Civil Action to the United States District

5 Court, a copy of which is concurrently served upon you.

6       **PLEASE TAKE FURTHER NOTICE** that a copy of the Notice of

7 Removal is being filed with the Clerk of the Superior Court of the State of

8 California, in and for the County of Los Angeles, 111 North Hill Street, Los

9 Angeles, California 90012.

10 Dated:  March 1, 2019          MANATT, PHELPS & PHILLIPS, LLP

11                           By: /s/ Robert A. Jacobs

12                            Robert A. Jacobs
                           Maura K. Gierl

13                            Molly K. Wyler

14                            *Attorneys for Defendants*
                           EMI APRIL MUSIC INC. and EMI

15                            BLACKWOOD MUSIC INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Erica Nash, certify and declare as follows:

I am over the age of 18 years of age and am not a party to this action. My business address is 11355 W. Olympic Boulevard, Los Angeles, CA 90064. On **March 1, 2019**, I served within: **NOTICE TO ADVERSE PARTIES** on the interested parties in this action as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☒   **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **March 1, 2019**, at Los Angeles, California.

1

## SERVICE LIST

| John B. Quinn, Esq.<br>Robert M. Schwartz, Esq.<br>Aaron Perahia, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>johnquinn@quinnemanuel.com<br>robertschwartz@quinnemanuel.com<br>aaronperahia@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |
|---|---|
| Rukayatu Tijani, Esq.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>rukayatutijani@quinnemanuel.com | *Attorneys For Plaintiffs*<br>Please Gimme My Publishing, Inc.,<br>West Brands, LLC, Kanye West, and Ye<br>World Publishing, Inc. |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**PROOF OF SERVICE**

2

       I, Erica L. Nash, declare as follows:

3

       I am employed in Los Angeles County, Los Angeles, California.  I am over the age of eighteen years and not a party to this action.  My business address is MANATT, PHELPS & PHILLIPS, LLP, 11355 West Olympic Boulevard, Los Angeles, California  90064-1614.  On **March 1, 2019**, I served the within:

4

5

**NOTICE TO STATE COURT AND TO ADVERSE PARTIES OF REMOVAL**

6

on the interested parties in this action addressed as follows:

7

8

    John B. Quinn, Esq.               Rukayatu Tijani, Esq.
    Robert M. Schwartz, Esq.         QUINN EMANUEL URQUHART &
    Aaron Perahia, Esq.                 SULLIVAN, LLP
    QUINN EMANUEL URQUHART &     555 Twin Dolphin Drive, 5th Floor
    SULLIVAN, LLP                  Redwood Shores, California 94065
    865 South Figueroa Street, 10th Floor  rukayatutijani@quinnemanuel.com
    Los Angeles, California 90017
    johnquinn@quinnemanuel.com      *Attorneys For Plaintiffs*
    robertschwartz@quinnemanuel.com  Please Gimme My Publishing, Inc.,
    aaronperahia@quinnemanuel.com   West Brands, LLC, Kanye West, and
                               Ye World Publishing, Inc.

9

10

11

12

13

14

    Attorneys For Plaintiffs
    Please Gimme My Publishing, Inc.,
    West Brands, LLC, Kanye West, and
    Ye World Publishing, Inc.

15

16

17

    ☒    **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Manatt, Phelps & Phillips, LLP, Los Angeles, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

18

19

20

21

22

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on **March 1, 2019**, at Los Angeles, California.

23

24

25

                      */s/* Erica Nash
                      Erica Nash

26

27

28

322750560.1

PROOF OF SERVICE