MANATT, PHELPS & PHILLIPS, LLP
ROBERT A. JACOBS (State Bar No. 160350)
E-mail: rjacobs@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MOLLY K. WYLER (State Bar No. 299881)
E-mail: mwyler@manatt.com
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Telephone:  (310) 312-4000
Facsimile:   (310) 312-4224

*Attorneys for Defendants*
EMI APRIL MUSIC INC. and
EMI BLACKWOOD MUSIC INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLEASE GIMME MY PUBLISHING, INC., a New York corporation; WEST BRANDS, LLC, a Delaware limited liability corporation; KANYE WEST, an individual; and YE WORLD PUBLISHING, INC., a Delaware corporation, also doing business as YE WORLD MUSIC,<br><br>        Plaintiffs,<br><br>    v.<br><br>EMI APRIL MUSIC INC., a Connecticut corporation; EMI BLACKWOOD MUSIC INC., a Connecticut corporation; and DOES 1-10,<br><br>        Defendants. | No. 2:19-cv-01527-DMG (FFMx)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Hearing Date:   August 30, 2019<br>Hearing Time:  9:30 a.m. |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................... 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............ 2

III.    ARGUMENT ......................................................................................... 7

    A.   Plaintiffs' Motion Should Be Denied Because The Court Has
       Diversity Jurisdiction ................................................................... 7

    B.   Plaintiffs' Motion Also Should Be Denied Because The Court
       Has Federal Question Jurisdiction ............................................. 14

       1.   Plaintiffs' Constructive Trust Claim Is Preempted ................. 16

       2.   Plaintiffs' Unjust Enrichment Claim Is Preempted ................. 18

IV.     CONCLUSION .................................................................................... 22

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

# TABLE OF AUTHORITIES

**Page**

## CASES

*Briarpatch Ltd. v. Thomas*,
  265 F. Supp. 2d 219 (S.D.N.Y. 2003) ...............................................................10

*Broad. Music, Inc. v. McDade & Sons, Inc.*,
  928 F. Supp. 2d 1120 (D. Ariz. 2013) ..............................................................13

*The Capital Gold Grp., Inc. v. Nortier*,
  176 Cal. App. 4th 1119 (2009) ............................................................................8

*Cargo Partner AG v. Albatrans, Inc.*,
  452 F.3d 41 (2d Cir. 2003) ................................................................................10

*Cusano v. Horipro Entm't Grp.*,
  301 F. Supp. 2d 272 (S.D.N.Y. 2004) ...............................................................11

*Cusano v. Klein*,
  280 F. Supp. 2d 1035 (C.D. Cal. 2003) .............................................................19

*David v. Medtronic, Inc.*,
  Case No. 13-cv-4441, 2013 WL 12132038 (C.D. Cal. Aug. 6, 2013)................15

*Davis v. HSBC Bank Nevada, N.A.*,
  557 F.3d 1026 (9th Cir. 2009) .............................................................................7

*Dead Kennedys v. Biafra*,
  37 F. Supp. 2d 1151 (N.D. Cal. 1999)...............................................................20

*Del Madera Props. v. Rhodes & Gardner*,
  820 F.2d 973 (9th Cir. 1987), *overruled on other grounds*, *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011).........................15

*Dorsey v. Money Mack Music, Inc.*,
  304 F. Supp. 2d 858 (E.D. La. 2003) ............................................................21, 22

*etradeshow.com, Inc. v. Netopia Inc.*,
  Case No. 03-Cv-1380, 2004 WL 515552 (N.D. Tex. Jan. 30, 2004)..................14

*Firoozye v. Earthlink Network*,
  153 F. Supp. 2d 1115 (N.D. Cal. 2001).............................................................19

*Hernandez v. ConAgra Foods Packaged Foods*,
  Case No. 19-cv-065, 2019 WL 1488739 (E.D. Cal. April 4, 2019) ....................8

*Hughes v. BCI Int'l Holdings, Inc.*,
  452 F. Supp. 2d 290 (S.D.N.Y. 2006) ...............................................................10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3
4
*In re Residential Capital, LLC*,
  Case No. 12-12020, 2014 WL 3057111 (Bankr. S.D.N.Y. July 7,
  2014) ............................................................................................................ 11

5
6
*Jong v. Gen. Motors Corp.*,
  359 F. Supp. 223 (N.D. Cal. 1973) ............................................................... 7

7
8
*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) .................................................................... 15

9
*Kritzer v. Lancaster*,
  96 Cal. App. 2d 1 (1950) ............................................................................ 19

10
11
*Laws v. Sony Music Entm't, Inc.*,
  448 F.3d 1134 (9th Cir. 2006) .............................................................. 15, 16

12
*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ..................................................................... 18

13
14
*Moran Enters., Inc. v. Hurst*,
  888 N.Y.S.2d 109 (App. Div. 2009) ...................................................... 8, 9, 12

15
16
*N. Star Media, LLC v. Winogradsky-Sobel*,
  Case No. CV 11-466, 2011 WL 13220157 (C.D. Cal. May 23,
  2011) ............................................................................................................ 20

17
18
*PB Farradyne, Inc. v. Peterson*,
  Case No. C 05-3447, 2006 WL 132182 (N.D. Cal. Jan. 17, 2006) ............... 11

19
20
*Pizarro v. Aguilar*,
  Case No. CV 10-2252, 2010 WL 11598015 (C.D. Cal. July 6,
  2010) ...................................................................................................... 15, 18

21
22
*Race Safe Sys, Inc. v. Indy Racing League*,
  251 F. Supp. 2d 1106 (N.D.N.Y. 2003) ....................................................... 10

23
24
*Rogers v. Yonce*,
  Case No. 07-CV-704, 2008 WL 2853207 (N.D. Okla. July 21,
  2008) ............................................................................................................ 17

25
26
*Ryoo Dental, Inc. v. Han*,
  Case No. CV 15-308, 2015 WL 4208580 (C.D. Cal. July 9, 2015) ............... 18

27
*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) .................................................................... 21

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

**TABLE OF AUTHORITIES**
**(continued)**

<b>Page</b>

*Sony Music Entm't, Inc. v. Robinson*,
  Case No. 01 Civ. 6415, 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002) ............... 19

*Sports Shinko Co. v. QK Hotel, LLC*,
  486 F. Supp. 2d 1168 (D. Haw. 2007) ................................................. 14

*Tosco Corp. v. Cmtys. for a Better Env't*,
  41 F. Supp. 2d 1061 (C.D. Cal. 1999).................................................. 14

*Tr. of Constr. Indus. & Laborers Health & Welfare Tr. v. C & W
  Enters., Inc.*, 298 F. App'x 566 (9th Cir. 2008)................................... 11

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007)................................................. 8

*Zito v. Steeplechase Films, Inc.*,
  267 F. Supp. 2d 1022 (N.D. Cal. 2003).............................................. 19

**STATUTES**

17 U.S.C. § 106........................................................................... 21

17 U.S.C. § 301(a) ...................................................................... 15

28 U.S.C. § 1332........................................................................... 7

28 U.S.C. § 1332(c)..................................................................... 7

28 U.S.C. § 1332(c)(1) ................................................................ 7

Cal. Lab. Code § 2855 ...........................................................passim

Cal. Lab. Code § 2855(b) .......................................................... 16

N.Y. Bus. Corp. Law § 1006 ..................................................... 9

**OTHER AUTHORITIES**

Nimmer & Nimmer, Nimmer on Copyright, § 1.01[B](1)(i) fn.399 ................ 20, 21

Sergio Bichao, *BMI Song Lawsuits Make Rounds in Jersey Bars*, USA
  Today, June 10, 2015, *available at* https://www.usatoday.com/
  story/money/business/2015/06/10/bmi-song-lawsuits-jersey-
  restaurants/71037378/.................................................................. 13

**RULES**

Federal Rules of Evidence 201 .................................................... 8

Federal Rules of Civil Procedure 17............................................ 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1

## I.     INTRODUCTION

2        EMI's Notice of Removal (the "Removal") demonstrates that this Court has

3    subject matter jurisdiction over Plaintiffs' improperly filed California state court

4    action on two grounds:  diversity and federal question.[1]  Plaintiffs now seek to

5    remand this action back to state court in an effort to forum shop their way into

6    California state court to seek benefits under California law to which they are not

7    entitled.  At this early stage, Plaintiffs already have, among other things, (i)

8    breached the agreements at issue by filing this action in California state court; (ii)

9    named Please Gimme as a plaintiff, notwithstanding the fact that the company has

10   not existed for almost a decade; (iii) breached the agreements at issue by

11   challenging EMI's efforts to have this action transferred to the Southern District of

12   New York (the "SDNY"); and (iv) repeatedly misrepresented the facts and law to

13   the Court in their opposition to EMI's motion to transfer and in their motion to

14   remand (the "Motion").  The Court should put an end to these improper tactics once

15   and for all, and deny Plaintiffs' Motion.

16        *First*, because Please Gimme has been dissolved since January 27, 2010, and

17   long ago assigned all of its rights and obligations to West Brands, it has no standing

18   to sue EMI, and its former New York citizenship does not destroy the complete

19   diversity between the parties.[2]  In their Motion, Plaintiffs continue to misrepresent

20   that Please Gimme is, and continues to be, a New York citizen.  Plaintiffs maintain

21   this fiction because they believe that a California state court is more likely to look

22   past the exclusive New York forum selection and New York choice of law clauses

23   in the agreements at issue, and allow Plaintiffs to seek relief under California Labor

24

25   _____

[1] "Plaintiffs" collectively refers to plaintiffs Kanye West; West Brands, LLC
26   ("West Brands"); Please Gimme My Publishing, Inc. ("Please Gimme"); and Ye
     World Publishing, Inc. ("Ye World").  "EMI" collectively refers to defendants EMI
27   April Music Inc. and EMI Blackwood Music Inc.

     [2] Plaintiffs' sole challenge to diversity jurisdiction is predicated on Please Gimme's
28   purported New York citizenship.  Plaintiffs do not appear to contest (nor could
     they) that this Action meets the amount in controversy requirement.

Code § 2855 ("Section 2855"), even though they have no right to do so. Plaintiffs have committed themselves to this strategy even though it requires them to argue that Please Gimme, which has no legal existence or surviving rights, is not only relevant to, but also dispositive of, the Court's jurisdictional analysis. As discussed in more detail below, Plaintiffs' argument is as false as it is specious because Please Gimme unquestionably is a sham plaintiff.

*Second*, Plaintiffs wrongly claim that this Court lacks federal question jurisdiction because their constructive trust claim and unjust enrichment claim do not seek to enforce rights that are equivalent to those protected by the Copyright Act. As to the former claim, Plaintiffs ignore portions of their claim, attempting to fit a square peg into a round hole in order to rely on otherwise inapposite cases. With respect to their unjust enrichment claim, Plaintiffs draw baseless comparisons between it and an accounting claim, suggest that copyright claims can only exist in the absence of pre-existing contractual relationships, ignore essential elements of the relief they seek, and rely on inapplicable case law. Notwithstanding their varied attempts to distinguish their unjust enrichment claim from a copyright claim, none withstands scrutiny. Plaintiffs cannot escape the fact that both their constructive trust claim and unjust enrichment claim are part and parcel of a copyright claim. Accordingly, the Copyright Act preempts them.

For these reasons, which are addressed more fully below, EMI properly removed this action to this Court on the basis of diversity and federal question jurisdiction. The Court, therefore, should deny the Motion.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### The 2003 Agreement And The Modifications

The Court is already familiar with the substantive factual background and description of this case, which are set forth at pages 3 through 6 of EMI's motion to transfer or dismiss (the "Transfer Motion"). (Dkt. 10) EMI, thus, only highlights those facts that are relevant to Plaintiffs' Motion.

In the Complaint ("Complaint" or "Cplt."), Plaintiffs allege that, effective October 1, 2003, West entered into an agreement with EMI (the "2003 Agreement") under which EMI acquired a 50 percent share of the copyrights in, and the right to administer, certain musical compositions written or co-written by West (the "Compositions") for a finite period of time, in exchange for advance and royalty payments that amounted to tens of millions of dollars.[3]  (Cplt. ¶ 22; Gierl Decl. ¶ 2, Exh. A at ¶¶ 8.01, 8.02)  The parties thereafter entered into several agreements modifying and/or extending the 2003 Agreement (each a "Modification", and collectively, the "Modifications").  (*See* Cplt. ¶¶ 36, 37, 47, 51, 58, 66; Gierl Decl. ¶¶ 3-9, Exhs. B-H)  Each Modification incorporates, ratifies, and confirms the 2003 Agreement and any preceding modifications.  (Gierl Decl. ¶ 3, Exh. B at ¶ 3; *id.* at ¶ 4, Exh. C at ¶ 6; *id.* at ¶ 5, Exh. D at ¶ 11; *id.* at ¶ 6, Exh. E at ¶ 9; *id.* at ¶ 7, Exh. F at ¶ 10; *id.* at ¶ 8, Exh. G at ¶ 5; *id.* at ¶ 9, Exh. H at ¶ 11)  The 2003 Agreement and its Modifications (collectively, the "Agreements") reflect the parties' bargain.[4]  (*See* Gierl Decl. ¶ 2, Exh. A at ¶ 24.01)

The 2003 Agreement contains an ***exclusive*** forum selection clause (the "Exclusive New York Forum Selection Clause"), which states in pertinent part:

> ANY CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE INSTITUTED AND MAINTAINED EXCLUSIVELY IN ANY FEDERAL OR STATE COURT LOCATED WITHIN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK.

(Gierl Decl. ¶ 2, Exh. A at ¶ 21.01)  The 2003 Agreement also includes a New York choice of law clause (the "New York Choice Of Law Clause"):

---

[3] EMI annexed as Exhibit A to the Removal filed with this Court the original state court Complaint.  (Dkt. 1-1)  To avoid burdening the Court with duplicative exhibits, unless otherwise noted, all referenced exhibits are attached to the Declaration of Maura K. Gierl ("Gierl Decl.") in support of EMI's Motion to Transfer.  (Dkt. 10-1)

[4] Seasoned and reputable music industry lawyers represented West with respect to each of the Agreements, and negotiated them on his behalf.  (*See* Gierl Decl. ¶ 2, Exh. A at 1, ¶ 24.01; *see generally* Gierl Decl. ¶¶ 2-9, Exhs. A-H)

THIS AGREEMENT SHALL BE DEEMED ENTERED INTO IN THE STATE OF NEW YORK AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK, WITH RESPECT TO THE DETERMINATION OF ANY CLAIM, DISPUTE OR DISAGREEMENT WHICH MAY ARISE OUT OF THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS AGREEMENT OR WHICH IN ANY OTHER RESPECT RELATES TO THIS AGREEMENT.

(*Id.* at ¶ 21.01)  Plaintiffs agreed to the Exclusive New York Forum Selection Clause and the New York Choice Of Law Clause in the 2003 Agreement when West signed it, and again when West signed the seven Modifications expressly ratifying and confirming the 2003 Agreement.  (Gierl Decl. ¶¶ 2-9, Exhs. A-H)

**Please Gimme's Dissolution**

In the 2004 Modification, Please Gimme, one of West's publishing designees, became a party to the 2003 Agreement.  (Gierl Decl. ¶ 3, Exh. B at 1)  However, the Department of State of the State of New York's records confirm that Please Gimme was thereafter dissolved, and has remained so since at least January 27, 2010.  (Dkt. 2, ¶ 6, Exh. E)  In the 2012 Modification, West and West Brands expressly acknowledge (i) Please Gimme's dissolution; (ii) that all of Please Gimme's stock had been transferred to West Brands; and (iii) that "all rights, titles, interests and assets of . . . Please Gimme, including . . . all retained copyright interests in the Compositions . . . have been assigned and transferred to [West Brands] . . . the sole member of which is [West]."  (Gierl Decl. ¶ 8, Exh. G at ¶¶ 2.01(a)-(b))  The 2012 Modification further confirms that Please Gimme is merely West Brands' d/b/a, and that Defendants expressly agreed that they will "not reinstate . . . Please Gimme as an independent corporate entity."  (Gierl Decl. ¶ 8, Exh. G at ¶¶ 2.01(c), 2.03, 3.07)  In addition, the 2012 Modification and the 2014 Modification make clear that Please Gimme is included solely as West Brands' d/b/a.  (Gierl Decl. ¶ 8, Exh. G at 1; *id.* ¶ 9, Exh. H at 1)

**Procedural History**

Notwithstanding the foregoing, on January 25, 2019, Plaintiffs, *including the dissolved Please Gimme*, sued EMI in California state court (the "California Action"), seeking, among other things, a declaration that (i) the 2003 Agreement and the Modifications are unenforceable, and have been since October 1, 2010 under California law; and (ii) EMI's bargained-for copyright ownership and other rights in the Compositions should immediately revert to West.  (Cplt. Exh. A, ¶¶ 1, 71)  Plaintiffs further allege that they are entitled to "restitution" based on the fact that Defendants benefited "by taking assignments of Plaintiffs' rights to the [C]ompositions" that West delivered to them on or after October 1, 2010 (seven years after the 2003 Agreement), and by "receiving licensing and other revenues from the exploitation" of Compositions delivered *before and after* October 1, 2010.  (Cplt. ¶ 75 (emphasis added))  Finally, Plaintiffs allege that Defendants have wrongfully withheld from Plaintiffs EMI's bargained-for rights and interests in the Compositions, and the portion of the monies generated by exploitation of the Compositions that EMI retained as co-owner of the copyrights in the Compositions.  (*Id.* ¶ 78)  Specifically, Plaintiffs allege that EMI is withholding "the ownership interest Plaintiffs conveyed to EMI in each musical composition delivered to [it] on or after October 1, 2010", and "the monies EMI received . . . from the exploitation of any musical composition Plaintiffs delivered to EMI both *before and after* October 1, 2010, less any monies EMI has already paid to Plaintiffs".  (*Id.* (emphasis added))  Because the parties are completely diverse (notwithstanding Plaintiffs' improper inclusion of Please Gimme), and because the U.S. Copyright Act completely preempts Plaintiffs' unjust enrichment and constructive trust claims, EMI removed the California Action to the U.S. District Court for the Central District of California.  (Dkt. 1)

By filing the California Action and seeking to apply California law to the Agreements, Plaintiffs intentionally defied the parties' Exclusive New York Forum

Selection Clause and New York Choice Of Law Clause.  Plaintiffs' filing of the California Action was singular in purpose:  they wanted to forum shop their way around those clauses (to which they voluntarily – and repeatedly – agreed to be bound) in order to seek the benefits of Section 2855, which makes "contract[s] for personal services" unenforceable after seven years.  (*Id.*)  Even if Section 2855 were applicable here (and it is not because the Agreements are not personal services contracts), Plaintiffs' Section 2855 claim would not have accrued until October 1, 2010 – seven years after the 2003 Agreement was entered into, and more than eight months after Please Gimme was dissolved.  Regardless, because the Agreements' Exclusive New York Forum Selection Clause and New York Choice Of Law Clause foreclose Plaintiffs from prosecuting the California Action and relying on the Section 2855 to evade West's contractual commitments to EMI, EMI had no choice but to file the Transfer Motion.  (Dkt. 10)

At the same time, Plaintiffs' filing of, and the purported claims they advanced in, the California Action created a justiciable controversy between the parties concerning their respective rights and obligations under the Agreements, and constituted a material breach of the Agreements, entitling EMI to declaratory and injunctive relief in the SDNY.  Accordingly, and consistent with the Agreements' Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, EMI filed a complaint on March 7, 2019 in the SDNY (the "SDNY Action").  (SDNY Case No. 19-cv-2127, Dkt. 1)  On June 27, 2019 – almost four months after EMI removed this action and one month before Plaintiffs filed this Motion – West and West Brands moved to dismiss, transfer, or stay the SDNY Action on the theory that the SDNY supposedly lacked subject matter jurisdiction and on *forum non conveniens* grounds.  (SDNY Case No. 19-cv-2127, Dkt. 20) Briefing on that motion is ongoing.

Additionally, because of Plaintiffs' conduct in *this* action, including their naming of Please Gimme as a sham plaintiff and their threatened (and, now, actual)

1   motion to remand this action to California state court, EMI moved for a preliminary

2   injunction in the SDNY on July 31, 2019, seeking to enjoin West and West Brands

3   from prosecuting this action during the pendency of the SDNY Action.  (SDNY

4   Case No. 19-cv-2127, Dkts. 34, 35)

5   **III.   ARGUMENT**

6   **A.   Plaintiffs' Motion Should Be Denied Because**
    **The Court Has Diversity Jurisdiction**

7

8   The Removal demonstrates that this Court has diversity jurisdiction over this

9   Action pursuant to 28 U.S.C. § 1332.[5]  (Dkt. 1 at ¶¶ 16-28)  Among other things,

10  EMI established that, although Plaintiffs named Please Gimme as a plaintiff in an

11  effort to destroy diversity, Please Gimme has no standing to sue EMI and is a sham

12  plaintiff because it had been dissolved for nine years as of the time of filing.  (*Id.* at

13  ¶¶ 20-21)  Plaintiffs argue in the Motion that, notwithstanding Please Gimme's

14  dissolution (which they *still* refuse to acknowledge), Please Gimme nevertheless

15  destroys diversity and bars removal.  Plaintiffs' arguments are yet another example

16  of their forum shopping tactics:  they want Please Gimme in this case because they

17  want to proceed before a California state court, and avoid the reach of the Exclusive

18  New York Forum Selection Clause and New York Choice Of Law Clause in the

19  Agreements.  Regardless, Plaintiffs are wrong, and their arguments are frivolous.

20  *First*, the Department of State of the State of New York's records confirm

21  that Please Gimme has been dissolved since at least January 27, 2010.  (Dkt. 2, ¶ 6,

---

22  [5] It is undisputed that, for purposes of diversity, plaintiff West is considered a
23  citizen of California, plaintiff West Brands is considered a citizen of Delaware and
    California, and both defendant EMI entities are considered citizens of Connecticut
24  and New York.  (Dkt. 1 ¶¶ 18, 19, 24)  Although Ye World's citizenship is
    irrelevant for many of the same reasons discussed in this Section III.A (*see* Dkt. 1
25  ¶¶ 20-23), because it previously was a Delaware and California citizen, it would not
    destroy diversity even if were an extant company (which it is not).  *See* 28 U.S.C. §
26  1332(c); *see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir.
    2009) (citing 28 U.S.C. §1332(c)(1)); *Jong v. Gen. Motors Corp.*, 359 F. Supp. 223,
27  226 (N.D. Cal. 1973) ("whether diversity exists between the plaintiffs and the
    defendants for removal purposes must be made on the record as it stands at the time
28  the removal petition is filed").  Accordingly, only Please Gimme's citizenship, or
    lack thereof, is pertinent to this Court's diversity analysis.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1   Exh. E)  As Plaintiffs acknowledge, diversity jurisdiction is determined *at the time*
2   *of removal*.  (*See* Mot. 9)  Because Please Gimme did not exist at the time of
3   removal (or filing), it was and is not an independent legal entity that has the
4   capacity or standing to sue.  *See The Capital Gold Grp., Inc. v. Nortier*, 176 Cal.
5   App. 4th 1119, 1127 (2009) (corporation that lacks capacity to sue in its home state
6   based on a lack of corporate status also lacks capacity to sue in California); *Moran*
7   *Enters., Inc. v. Hurst*, 888 N.Y.S.2d 109 (App. Div. 2009) ("A dissolved
8   corporation . . . does not enjoy the right to bring suit in the courts of this state
9   [except in limited circumstances.]").

10        Irrespective of these facts, Plaintiffs suggest that EMI improperly asks the
11   Court to "disregard the Complaint's well-pleaded allegations", which purport to
12   aver that Please Gimme "is" a New York corporation (Cplt. ¶ 10).  (Mot. 10)  But
13   Plaintiffs are not entitled to rely on the Complaint's self-serving allegations that are
14   directly contradicted by verifiable – and irrefutable – facts.  Indeed, when
15   citizenship is questioned on a remand motion, the court may look beyond the
16   pleadings, and consider other evidence of citizenship.  *See, e.g.*, *Hernandez v.*
17   *ConAgra Foods Packaged Foods*, Case No. 19-cv-065, 2019 WL 1488739, at *2
18   (E.D. Cal. April 4, 2019) (denying motion to remand).  Thus, there is no question
19   that the Court can – and should – consider the Department of State of the State of
20   New York's records that conclusively demonstrate that Please Gimme has not been
21   an extant company since January 27, 2010.[6]  For this reason, the Court should reject
22   the entirety of Plaintiffs' argument.

23        *Second*, Plaintiffs' contention that Please Gimme still has the capacity to sue
24   even if it is dissolved, which they do not concede (Mot. 10-11), is contrary to

---

[6] These public records also are subject to judicial notice pursuant to Federal Rule of Evidence 201.  *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007).  Accordingly, EMI respectfully requests that the Court consider and take judicial notice of the records, which are attached as Exhibit E to the Declaration of Robert A. Jacobs, which was submitted in support of the Removal. (*See* Dkt. 2, ¶ 6, Exh. E)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

controlling New York law.  Under New York law, which Plaintiffs admit is binding here (Mot. 11), a corporation continues to exist after dissolution **only** for purposes of winding up its affairs, and may **only** "sue or be sued on its obligations, including contractual obligations and contingent claims, **until its affairs are fully adjusted**". N.Y. Bus. Corp. Law § 1006 (emphasis added).  After its obligations and claims **existing at the time of dissolution** are resolved, the corporation no longer has standing to sue or be sued, including with respect to liabilities accruing after dissolution.  *See Moran*, 66 A.D.3d at 975 ("a dissolved corporation is prohibited from carrying on new business . . . and does not enjoy the right to bring suit" on claims accruing after dissolution).  Plaintiffs attempt to distinguish *Moran* on the ground that the court "held that a dissolved corporation retained the capacity to sue".  (Mot. 11)  Plaintiffs' characterization of *Moran*'s holding is misleading.  In reality, *Moran* distinguished between claims that existed *pre*-dissolution and *post*-dissolution.  66 A.D.3d at 975.  As to the latter, the court unequivocally held that these claims do "not relate to the winding up of [the dissolved company's] affairs", and, thus, dissolved companies "lack . . . the capacity to use the courts" to pursue such claims.  *Id.* at 975-76.

Here, Plaintiffs admit that their purported Section 2855, constructive trust, and unjust enrichment claims did not accrue until October 1, 2010 – *more than eight months after Please Gimme's dissolution*.  (Cplt. ¶ 2 ("[t]he seven year period ended under this contract on October 1, 2010"); *id.* at ¶¶ 74-78 (constructive trust and unjust enrichment claims accrued on October 1, 2010)  Plaintiffs also admit that the monetary recovery on their purported constructive trust claim is limited to the four-year period prior to the filing of this lawsuit, which period *post-dates Please Gimme's dissolution by nearly five years*.  (Cplt. ¶ 78(b))  Because all of the claims at issue accrued well *after* Please Gimme's January 27, 2010 dissolution, they cannot be considered part of Please Gimme's winding up efforts.  As such, Please Gimme has no interest relating to this Action, should not have been named

1    as a plaintiff, and cannot destroy diversity.

2        The cases on which Plaintiffs rely do not warrant a different result.  In *Race*

3    *Safe Sys, Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1108 (N.D.N.Y. 2003),

4    the court confirmed that corporations only may sue following dissolution *for*

5    *purposes of winding up their affairs*.  In citing *Race Safe*, Plaintiffs leave out this

6    important limitation, because, if they acknowledge it, it dooms their diversity

7    argument for the reasons discussed above.  (*See* Mot. 11)  Plaintiffs' reliance on

8    *Briarpatch Ltd. v. Thomas*, 265 F. Supp. 2d 219 (S.D.N.Y. 2003) also is misplaced.

9    In *Briarpatch*, unlike here, the dissolved corporation continued to conduct business,

10   and engaged in post-dissolution misconduct.  *Id.* at 222.  Then, in an attempt to

11   avoid liability, the corporation falsely claimed that it was immune from the liability

12   triggered by its post-dissolution misconduct due to its dissolved corporate status.

13   *Id.* at 222-23.  The court rejected the corporation's attempt to use its dissolution as a

14   shield to liability, noting that its "dissolution does not insulate it from liability for

15   its post-dissolution misconduct".  *Id.* at 223.  *Briarpatch* is inapposite here because

16   Please Gimme's purported claims against EMI did not exist and could not have

17   existed prior to Please Gimme's dissolution; do not concern Please Gimme's

18   winding up of its affairs; and do not implicate any of Please Gimme's post-

19   dissolution conduct (because there was none).

20       *Third*, Please Gimme's citizenship is irrelevant for a separate reason:  it lacks

21   standing as a result of the company's merger into West Brands and assignment of

22   all of its rights, title, interests, assets, and obligations under the Agreements to West

23   Brands.  (Dkt. 1 at ¶ 22; Gierl Decl. ¶ 8, Exh. G at ¶¶ 2.01(a)-(b), 2.02)  Plaintiffs

24   ignore these facts altogether; however, these facts confirm that Please Gimme is an

25   improper plaintiff that is irrelevant to the determination of the parties' citizenship.

26   *See Cargo Partner AG v. Albatrans, Inc.*, 452 F.3d 41, 44-45 (2d Cir. 2003)

27   (recognizing *de facto* merger when there is, in substance, a consolidation or merger

28   of seller and purchaser); *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

301 (S.D.N.Y. 2006) (acquisition of all assets of company sufficient to establish *de facto* merger).

*Fourth*, because Please Gimme is merely a d/b/a of West Brands, it has no distinct legal existence, and, therefore, cannot sue or be sued. *See Tr. of Constr. Indus. & Laborers Health & Welfare Tr. v. C & W Enters., Inc.*, 298 F. App'x 566, 567 (9th Cir. 2008) ("The designation 'd/b/a' is merely descriptive [,] and does not create a distinct corporate entity"); *PB Farradyne, Inc. v. Peterson*, Case No. C 05-3447, 2006 WL 132182, at *5 (N.D. Cal. Jan. 17, 2006) (a d/b/a "is not a separate legal entity capable of . . . asserting any claims of infringement"); *accord Cusano v. Horipro Entm't Grp.*, 301 F. Supp. 2d 272, 277 (S.D.N.Y. 2004) ("Use of a fictitious business name [including the d/b/a designation] does not create a separate legal entity" distinct from its owner); *In re Residential Capital, LLC*, Case No. 12-12020, 2014 WL 3057111, at *3 (Bankr. S.D.N.Y. July 7, 2014) (same). Plaintiffs claim that EMI bases its argument that Please Gimme is merely a d/b/a of West Brands solely on West's and West Brands' agreement in the 2012 Modification that they would not reinstate Please Gimme as a stand-alone corporate entity. (Mot. 13) But that is inaccurate. As the Removal highlights, both the 2012 Modification and 2014 Modification confirm that Please Gimme is a d/b/a of West Brands *because the Modifications refer to Please Gimme as such*. (Dkt. 1 at ¶ 23; Dkt. 2, ¶¶ 3-4, Exhs. B-C (referring to Please Gimme as a "d/b/a" of West Brands)) Plaintiffs' cherry picking of facts notwithstanding, they cannot overcome the fact that Please Gimme simply is a d/b/a of West Brands with no independent ability to sue or be sued.

*Fifth*, Plaintiffs' attempt to escape the effects of the foregoing dispositive facts by blaming the New York Secretary of State for Please Gimme's dissolution has no basis in the law. Specifically, Plaintiffs argue that the fact that Please Gimme's dissolution "was the result of an administrative action by the New York Secretary of State" somehow immunizes them from the legal effects of dissolution.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1    (Mot. 11) Tellingly, Plaintiffs cite no authority that remotely supports that

2    proposition. To the contrary, New York law does not distinguish between the

3    reasons for dissolution in evaluating the dissolved corporation's capacity to sue.

4    *See, e.g.*, *Moran*, 66 A.D.3d at 975 (company dissolved by proclamation).

5    Similarly, Plaintiffs' reliance on their claim that Please Gimme remains registered

6    as a *foreign New York corporation in California*, and continues to file statements of

7    information in California, is irrelevant. (*See* Mot. 11) As discussed above,

8    Plaintiffs acknowledge that, pursuant to Rule 17 of the Federal Rules of Civil

9    Procedure, a corporation's capacity to sue or be sued is determined *by the laws of*

10   *the state under which it was incorporated*. (*Id.*) Please Gimme's capacity to sue is

11   based on its corporate status in New York, not on foreign filings elsewhere.[7]

12       *Sixth*, Plaintiffs similarly cannot invoke EMI's reliance on *Please Gimme's*

13   prior representations regarding its citizenship, or EMI's previous purported

14   statements concerning Please Gimme's citizenship, to overcome the fact that Please

15   Gimme was dissolved almost a decade ago. In particular, Please Gimme oddly

16   argues that "EMI did not believe Please Gimme's status as a dissolved corporation

17   made a legal difference in 2011" when the 2011 Modification was entered into.

18   (Mot. 10) Please Gimme is making an illogical leap. The 2011 Modification was

19   the result of an arms-length negotiation. Accordingly, any "knowledge" EMI had

20   in 2011 concerning Please Gimme's corporate status necessarily was based on

21   Please Gimme's representations. If anything, Plaintiffs' position merely suggests

22   that they intentionally misrepresented Please Gimme's corporate status in 2011

23   when negotiating the 2011 Modification. Regardless, Please Gimme offers no

24   explanation as to why what EMI believed in 2011 matters at all here, especially in

25   light of the incontrovertible fact that Please Gimme was dissolved no later than

26   ────────────

27   [7] It will not be lost on the Court that Please Gimme's corporate status on the
     California Secretary of State website is "FTB Forfeited", meaning that the
28   "business entity was . . . forfeited by the Franchise Tax Board for failure to meet tax
     requirements". (Jacobs Decl. ¶¶ 2-3, Exhs. A-B)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1   January 27, 2010, and controlling law clearly establishing that it has no standing to

2   sue on claims that accrued after its dissolution.  (*See* pages 7-11, *supra*)

3       The same is true with respect to Plaintiffs' attempts to rely on EMI's

4   supposed statements concerning Please Gimme's citizenship in other cases.  As an

5   initial matter, Plaintiffs overstate EMI's so-called "admissions", all of which

6   predate this litigation by years.  (Mot. 12)  The first three cases on which Plaintiffs

7   rely to show that EMI supposedly admitted that Please Gimme is an extant entity

8   are irrelevant because Broadcast Music, Inc. ("BMI"), a performing rights

9   organization ("PRO"), *not* EMI, filed them, and decided to name both Please

10   Gimme and EMI as plaintiffs.  (*Id.*; *see also* Schwartz Decl. ¶¶ 13-15, Exhs. 1-3)

11   PROs, like BMI, enter into affiliation agreements for public performance rights in

12   musical compositions controlled by their member music publishers and songwriters

13   that give it the ability to grant to music users certain performance rights.  *See*

14   *Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1130 (D. Ariz.

15   2013).  It is well-established (and presumably well-known to Plaintiffs) that PROs

16   often file lawsuits to enforce the copyrights to which they have been granted

17   licenses.  *See, e.g.*, *id.*; *see also* Sergio Bichao, *BMI Song Lawsuits Make Rounds in*

18   *Jersey Bars*, USA Today, June 10, 2015, *available at* https://www.usatoday.com/

19   story/money/business/2015/06/10/bmi-song-lawsuits-jersey-restaurants/71037378/

20   ("To this day, PROs are active in bringing lawsuits enforcing the public

21   performance rights of the copyright holders who have included their works in the

22   PRO catalogues.").  Additionally, PROs routinely name their members (such as

23   EMI) as plaintiffs in their lawsuits, regardless of their members' individual

24   knowledge of the facts underlying the dispute.  *See, e.g.*, *Broad. Music, Inc.*, 928 F.

25   Supp. 2d at 1124.  Thus, Plaintiffs have no basis in arguing that BMI's allegations

26   are in any way binding on EMI, especially in light of the fact that Please Gimme

27   was dissolved in early 2010.  The fourth case on which Plaintiffs rely was jointly

28   defended by West, Please Gimme, and EMI, so any admission in the case would

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

13

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

1  have been based on information that West's team supplied.  (Schwartz Decl. ¶ 16,

2  Exh. 4)  But again, Plaintiffs do not, and cannot, avoid the inarguable fact that

3  Please Gimme has been dissolved since at least January 27, 2010.[8]

4      For each of these reasons, Plaintiffs' position that Please Gimme is non-

5  diverse fails.  Accordingly, the dissolved company's former citizenship is irrelevant

6  and cannot destroy diversity.  As a result, this Action was properly removed, and

7  should not be remanded to California state court.

8      **B.    Plaintiffs' Motion Also Should Be Denied Because**
       **The Court Has Federal Question Jurisdiction**
9

10      As demonstrated above, this Court is vested with subject matter jurisdiction,

11  and the action should not be remanded, because the parties are completely diverse

12  and more than $75,000 is in issue.  However, even if that were not the case (and it

13  is), remand nevertheless would be improper because the Court also has federal

14  question jurisdiction.  (Dkt. 1 ¶¶ 29-38)  Plaintiffs' attack on the Court's federal

15  question jurisdiction does not withstand scrutiny.

16      As an initial matter, Plaintiffs' argument that removal is improper when

17  based on an affirmative defense of preemption is baseless.  (*See* Mot. 13)  EMI's

18  Removal does not rely on a preemption affirmative defense (or any other

19  affirmative defense), but on the claims as alleged in the Complaint.  (Dkt. 1 ¶¶ 33,

20

21  ───────────────
   [8] Each of the cases on which Plaintiffs rely for the proposition that EMI's supposed
   admissions in prior filings are fatal to "EMI's attempt to deprive Please Gimme of
22  the New York citizenship EMI previously embraced" are easily distinguishable.
   (*See* Mot. 12)  In each of them, a party sought to avoid jurisdiction despite its prior
23  admissions regarding *its own* citizenship.  *See Sports Shinko Co. v. QK Hotel, LLC*,
   486 F. Supp. 2d 1168, 1180 (D. Haw. 2007) (rejecting plaintiff's citizenship
24  argument based on plaintiff's prior judicial admissions concerning its own
   citizenship); *etradeshow.com, Inc. v. Netopia Inc.*, Case No. 03-Cv-1380, 2004 WL
25  515552, *1-2 (N.D. Tex. Jan. 30, 2004) (same; further dismissing case based on
   plaintiff's violation of forum selection clause in filing in unbargained-for forum);
26  *Tosco Corp. v. Cmtys. for a Better Env't*, 41 F. Supp. 2d 1061 (C.D. Cal. 1999)
   (rejecting plaintiff's citizenship argument based on plaintiff's prior judicial
27  admissions concerning its own citizenship).  These cases, thus, simply do not
   involve the situation before the Court here in which Plaintiffs attempt to use EMI's
28  (or BMI's) reliance on *Please Gimme's* representations as an offensive tactic to
   destroy diversity.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

35-37 (quoting the Complaint in demonstrating that Plaintiffs' constructive trust and unjust enrichment claims are preempted))  In other words, unlike in *David v. Medtronic, Inc.*, Case No. 13-cv-4441, 2013 WL 12132038, at *2 (C.D. Cal. Aug. 6, 2013), a case on which Plaintiffs rely, Plaintiffs' constructive trust and unjust enrichment claims *themselves* are preempted.  Accordingly, this case is far more like *Pizarro v. Aguilar*, Case No. CV 10-2252, 2010 WL 11598015, at *2 (C.D. Cal. July 6, 2010), in which the Court concluded that "if complete preemption under the Copyright Act is established, then a case is properly removed to federal court".

Plaintiffs acknowledge (Mot. 14) that the Copyright Act completely preempts a state law claim when "the work involved . . . fall[s] within the subject matter of the Copyright Act", and "the rights that a plaintiff asserts under state law. . . are equivalent to those protected by the Copyright Act".  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998)) (internal quotations omitted); *see also* 17 U.S.C. § 301(a) (same); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006) (same).  As to the first prong of preemption, Plaintiffs admit that West's "Compositions fall within the scope of copyright subject matter".  (Mot. 14)  Accordingly, only the second "equivalent rights" prong of preemption is at issue in the Motion.

However, Plaintiffs' explanation of the second prong of preemption is incorrect.  Plaintiffs argue that, so long as an additional element exists in the state law claim that is not required in a copyright claim, then the state law claim is not preempted.  (Mot. 14-15)  That is not the law.  "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights", and must include an "extra element" that alters the *nature* of the action. *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds*, *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011).  But "[t]he mere presence of an additional element" does

not save a claim from preemption; rather, "[t]he extra element must transform the nature of the action." *Laws*, 448 F.3d at 1144.[9]  "Although the elements of [a plaintiff's] state law claims may not be identical to the elements in a copyright claim", if the "underlying nature" of the state law claims are "part and parcel of a copyright claim", the state law claims are preempted.  *Id.*  As demonstrated below, because Plaintiffs' constructive trust and unjust enrichment causes of action seek to enforce rights that are "equivalent to those [rights] protected by the Copyright Act", each claim is preempted.[10]

### 1.   Plaintiffs' Constructive Trust Claim Is Preempted

The Removal demonstrates that Plaintiffs' constructive trust claim is preempted because it involves the same subject matter of the Copyright Act, and seeks to protect the same rights in the Compositions that the Copyright Act protects.  (Dkt. 1 ¶¶ 29-35)  Plaintiffs' efforts to avoid preemption are unavailing.

As EMI demonstrated in the Removal, through their constructive trust claim, Plaintiffs allege that EMI is withholding "the monies EMI received . . . from the exploitation of any musical composition Plaintiffs delivered to EMI ***both before and after*** October 1, 2010, less any monies EMI has already paid to Plaintiffs". (Cplt. ¶ 78 (emphasis added))  In other words, Plaintiffs seek, among other things, 100 percent of the revenues generated by EMI's exploitations of Compositions that were delivered to EMI, and in which EMI received a 50 percent ownership interest, ***before*** October 1, 2010.[11]  Indeed, Plaintiffs demand all revenues generated in the

---

[9] Although Plaintiffs attempt to distinguish *Laws* factually, they cannot distinguish or escape this legal proposition.

[10] Plaintiffs belabor that their Section 2855 claim is not preempted, and cannot form the basis of federal question jurisdiction.  (Mot. 16-17)  Plaintiffs are attempting to take down a straw man.  Although Plaintiffs' Section 2855 claim is wholly without merit and violates the Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, EMI does not contend that it is preempted.

[11] Even if Section 2855 applies (and it does not), it only restricts enforcement of personal services contracts against employees after seven years.  *See* Cal. Lab. Code § 2855(b).  It does not allow employees to rewind the clock and act as though their contracts never existed, or authorize them to recover damages.  *See id.*

last four years by exploitations of all of the Compositions that West *ever* delivered to, or granted a 50 percent ownership interest in to, EMI.  But whether Plaintiffs are entitled to *all* of the revenues generated by exploitations of the pre-October 1, 2010 Compositions (regardless of when the revenues were generated) depends on a determination of *who owns those Compositions*.  Put simply, Plaintiffs are not entitled to 100 percent of those revenues if EMI had the right to exploit (and collect revenues from) the pre-October 1, 2010 Compositions as their rightful 50 percent owner.  As a result, the October 1, 2010 demarcation is immaterial to Plaintiffs' constructive trust claim.  Accordingly, Plaintiffs have no basis whatsoever for arguing that resolution of their Section 2855 claim, which would only impact West's alleged personal service obligations *after* October 1, 2010, is an "added element" that alters the nature of the constructive trust claim, or brings it out of the ambit of preemption.  (*See* Mot. 22)

*Rogers v. Yonce*, Case No. 07-CV-704, 2008 WL 2853207 (N.D. Okla. July 21, 2008) does not alter this conclusion because it is inapposite.  In *Rogers*, plaintiff sought remedies, including those based on constructive trust, arising out of his purported status as a co-owner of various copyrights.  *Id.* at *1-2.  But that is not the situation before this Court.  As discussed above, Plaintiffs do not allege that they are entitled to any relief based on West's status as a co-owner.  Instead, they claim that they are entitled to collect all money that EMI earned based on its lawful exploitation of the Compositions *as though West is now and has always been the sole owner of the Compositions*.  (Cplt. ¶ 78)  As a result, Plaintiffs are asking the Court to determine (i) whether EMI owns 50 percent of the copyrights in the Compositions delivered *before* October 1, 2010, and (ii) if EMI is not a copyright owner (and it is), whether EMI violated West's alleged exclusive rights in those copyrights by exploiting the Compositions and retaining the revenues it earned as a result of those exploitations.  Because these allegations are cut from the same cloth as a copyright ownership claim, Plaintiffs' constructive trust claim is preempted.

1   *See Pizarro*, 2010 WL 11598015 at *2-3.[12]

2                    2.       Plaintiffs' Unjust Enrichment Claim Also Is Preempted

3           The Removal also demonstrates that Plaintiffs' unjust enrichment (*i.e.*,

4   restitution) claim is completely preempted because it is equivalent to a copyright

5   claim.  (Dkt. 1 ¶¶ 29-34, 36-37)  It is undisputed that the unjust enrichment claim

6   seeks recovery based on EMI's alleged "taking [of] assignments of Plaintiffs' rights

7   to the [C]ompositions . . . and receiving licensing and other revenues from the

8   exploitation . . . of [C]ompositions written both ***before and after*** October 1, 2010".

9   (Cplt. ¶ 75)  Thus, just as with their constructive trust claim, Plaintiffs' unjust

10  enrichment claim requires resolution of (i) who owns the copyrights in the

11  Compositions (including Compositions delivered before October 1, 2010 to which

12  EMI always has had a 50 percent copyright ownership interest); *and* (ii) whether

13  EMI had the right to exploit and receive money from the exploitation of those

14  Compositions (*i.e.*, whether it infringed the copyrights if it did not partially own

15  them).  This is precisely the nature of a copyright ownership and infringement

16  action.[13]  *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 791-93

17  (2003) (unjust enrichment claim preempted where plaintiff sought restitution based

18  on defendant's use and distribution of plaintiff's copyrightable work); *see also*

19  *Ryoo Dental, Inc. v. Han*, Case No. CV 15-308, 2015 WL 4208580, at *4 (C.D.

20

21  [12] Plaintiffs' attempt to distinguish *Pizarro* is overly simplistic and disregards their
own allegations.  (Mot. 22-23)  As Plaintiffs acknowledge, in *Pizarro*, plaintiffs

22  sought a constructive trust to "enforce their alleged exclusive right to distribute and
authorize distribution" of a show, and the resulting damages based on the allegedly

23  unauthorized distribution.  2010 WL 11598015, at *2-3.  This is closely analogous
to what Plaintiffs seek here:  Plaintiffs premise their constructive trust claim on the

24  theory that they are the exclusive owners of the copyrights in the pre-October 1,
2010 Compositions, and that EMI allegedly is violating their exclusive ownership

25  rights, entitling them to recover the monies that EMI has received from their
supposedly unauthorized exploitations of these works.  (Cplt. ¶ 78)  Thus, although

26  the subject matter of *Pizarro* is different (a television program versus musical
compositions), it is on all fours with the situation before the Court here.

27  [13] Plaintiffs' attempts to distinguish the cases upon which EMI relies are a
distraction and of no import.  EMI's cases concern unjust enrichment and

28  constructive trust claims, not Section 2855 claims.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

Cal. July 9, 2015) (unjust enrichment claim preempted where it "rests on the same facts and asserts the same rights as a copyright claim"); *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) ("where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue, the rights the plaintiff holds in the copyrighted work, and does not avoid preemption"); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1128 (N.D. Cal. 2001) (unjust enrichment claim preempted where it was based on the allegation that "defendants unfairly benefitted from their unauthorized use of" copyrightable work, which is "equivalent to the rights protected in . . . the Copyright Act").  Because Section 2855 has no impact on the ownership rights EMI has in the Compositions that were delivered to EMI, and in which EMI received a 50 percent ownership interest, ***before*** October 1, 2010, resolution of the Section 2855 claim is immaterial to Plaintiffs' unjust enrichment claim.  Nevertheless, Plaintiffs attempt to avoid this conclusion by offering a smattering of alternative "extra elements", which they argue alter the nature of their unjust enrichment claim.  None of Plaintiffs' offerings is viable.

*First*, Plaintiffs' argument that their unjust enrichment claim is analogous to a non-preempted accounting claim, which contains extra elements not present in copyright claims, is nonsensical.  (*See* Mot. 18-19)  Not only have Plaintiffs made no attempt to plead an accounting claim (presumably because they would not succeed had they done so), but the relief sought by their unjust enrichment claim is vastly different than an accounting claim.[14]  Indeed, Plaintiffs do not, as they seem

---

[14] An accounting claim has three elements:  (1) a fiduciary relationship; (2) losses in an amount that cannot be ascertained; and (3) misconduct.  *Kritzer v. Lancaster*, 96 Cal. App. 2d 1, 7 (1950).  Had Plaintiffs attempted to plead an accounting claim, they would not have been able to satisfy even the first element, because courts have held time and time again that music publishers like EMI owe no fiduciary duty to their writers or their representatives.  *See, e.g.*, *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1040-41 (C.D. Cal. 2003); *Sony Music Entm't, Inc. v. Robinson*, Case No. 01 Civ. 6415, 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002).

to suggest based on the case law they cite, seek an accounting of one co-owner's fiduciary financial obligations to another arising under a contract.  (Mot. 18)  Instead, Plaintiffs seek disgorgement of *all* of EMI's ownership rights, *and* the benefits derived therefrom, in the Compositions.  (Cplt. ¶ 75)  As discussed above, this is far more in line with a copyright ownership and infringement action.

Plaintiffs' reliance on *Dead Kennedys v. Biafra*, 37 F. Supp. 2d 1151 (N.D. Cal. 1999), in support of their attenuated accounting theory also is misplaced.  As a threshold matter, Plaintiffs misleadingly suggest that the accounting claim supposedly at issue there is similar to their unjust enrichment claim here.  (Mot. 18)  But Plaintiffs are wrong.  The "accounting" claim to which they refer was actually an unfair business practices claim, which was based on the defendant's alleged "self-dealing with respect to promotional activities and failure to pay royalties[, and which did] not attempt to mimic an infringement action by claiming unfair use of the works at issue."  *Dead Kennedys*, 37 F. Supp. 2d at 1154.  No parallel exists here.  Similarly, unlike Plaintiffs' argument here that EMI improperly took assignment of the copyrights of the Compositions (Cplt. ¶ 75), the plaintiff in *Dead Kennedys* alleged "conversion of royalties, *not* of the works themselves".  37 F. Supp. 2d at 1154 (emphasis added).  In any event, *Dead Kennedys*, and the principles on which it relies, have been seriously called into question by multiple authorities.  *See, e.g.*, *N. Star Media, LLC v. Winogradsky-Sobel*, Case No. CV 11-466, 2011 WL 13220157, *8 (C.D. Cal. May 23, 2011) (disagreeing with *Dead Kennedys* and holding that plaintiff's claim for conversion of royalties was preempted); *see id*. (citing Nimmer & Nimmer, Nimmer on Copyright, § 1.01[B](1)(i) fn.399 (rejecting plaintiff's preemption attack as "overly clever—a conversion claim is preempted, no matter how dressed up")).  Accordingly, *Dead Kennedys* is of no help to Plaintiffs.

*Second*, Plaintiffs improperly suggest that copyright ownership claims only exist in the absence of pre-existing contractual relationships, and that their allegedly

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND

contract-based unjust enrichment claim *necessarily* forecloses preemption.  (Mot. 16, 19-20)  Plaintiffs' argument is based on a false premise.  Copyright claims routinely arise in situations in which the parties had a pre-existing contractual relationship.  *See, e.g.*, *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-88 (9th Cir. 1989) ("[t]he district court erred in assuming that a license to use a copyrighted work necessarily precludes infringement").  Thus, Plaintiffs' reliance on the parties' contractual relationship to escape preemption by the Copyright Act is a non-starter.

*Third*, Plaintiffs argue that *even if* their unjust enrichment claim requires resolution of EMI's "rights to" and "ownership interest" in the Compositions, they steer clear of preemption because their unjust enrichment claim does not raise infringement issues.  (*See id.*; *see also* Cplt. ¶¶ 75, 78)  But Plaintiffs are ignoring the second part of the relief they seek – namely, that if EMI does not partially own the copyrights, then it allegedly has been improperly retaining the benefits they received from the exploitation and distribution of those copyrights.  (*See* Cplt. ¶ 75)  Because this is exactly the kind of right that the Copyright Act protects, the unjust enrichment claim is preempted.  *See* 17 U.S.C. § 106.

*Fourth*, Plaintiffs argue that although their unjust enrichment claim seeks recovery based on EMI's alleged taking of their copyrights in the Compositions, their claim cannot be preempted because this is just an *example* of the relief they seek.  (Mot. 19)  Plaintiffs are reaching, and cite no authority suggesting that allows them to escape preemption on this basis.  It makes no sense.

*Fifth*, Plaintiffs' reliance on *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858 (E.D. La. 2003), is of no help to them.  As the *Dorsey* court acknowledged, "[c]laims for unjust enrichment usually are held to be preempted by the Copyright Act."  *Id.* at 865 (quoting 1 Nimmer & Nimmer, Nimmer on Copyright § 1.01[B][1] at 1-38 (2000)).  *Dorsey* continued, "[p]reemption is appropriate in the majority of instances because the typical unjust enrichment claim is qualitatively equivalent to a cause of action for copyright infringement."  304 F. Supp. 2d at 865.  However,

the *Dorsey* court ultimately held that the Louisiana-based unjust enrichment claim at issue there was not preempted because it arose out of alleged "breaches of fiduciary duties owed by defendant". *Id.* at 866. The court specifically found that the "critical element of a fiduciary relationship renders the unjust enrichment claim qualitatively different from an infringement claim". *Id.* Accordingly, the *Dorsey* holding is far more limited than Plaintiffs suggest. At bottom, *Dorsey* does not apply here because, among other reasons, Plaintiffs do not *and cannot* allege that EMI owes any fiduciary obligations to Plaintiffs. (*See* fn.14, *supra*)

Plaintiffs cannot overcome EMI's showing that the unjust enrichment claim is preempted. For this additional reason, the Court has federal question jurisdiction. Plaintiffs' Motion should be denied.

## IV.   CONCLUSION

For all of the foregoing reasons, EMI respectfully requests that the Court deny Plaintiffs' Motion.

Dated:  August 9, 2019                           MANATT, PHELPS & PHILLIPS, LLP

                                                 By: /s/ Robert A. Jacobs
                                                     Robert A. Jacobs
                                                     Maura K. Gierl
                                                     Molly K. Wyler

                                                 *Attorneys for Defendants*
                                                 EMI APRIL MUSIC INC. and EMI
                                                 BLACKWOOD MUSIC INC.